MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Ph: (406) 247-4667; Fax: (406) 657-6058
mark.smith3@usdoj.gov

JEFFREY H. WOOD, Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
SETH M. BARSKY, Section Chief
BRIDGET KENNEDY McNEIL (CO Bar 34299)
Wildlife and Marine Resources Section
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1484, (303) 844-1376; Fax: (303) 844-1350
bridget.mcneil@usdoj.gov
luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, *et al.*,<br><br>    Plaintiffs,<br>v.<br><br>THOMAS A. SHANNON, JR., in his official capacity as Under Secretary for Political Affairs, *et al.*, | CASE NO. 4:17-CV-00031-BMM<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

|  |  |
|---|---|
| Federal Defendants, | |
| and | |
| TRANSCANADA CORPORATION, *et al.*, | |
| Intervenor-Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND ...........................................................................................2

    I.    The Issuance of Presidential Permits ............................................2

    II.    The Keystone XL Pipeline Permitting Process...................................3

LEGAL STANDARDS FOR A MOTION TO DISMISS .......................................5

ARGUMENT ...............................................................................................6

    I.    The Court Lacks Jurisdiction to Review the Issuance of a
Presidential Permit ...........................................................................6

        A.   The Issuance of a Presidential Permit Is Presidential Action That
Is Not Reviewable Under the APA................................................8

        B.   Even if the Issuance of the Presidential Permit is Deemed an
Agency Action, It Was an Action Committed to Agency
Discretion by Law, and Therefore is Not Reviewable ....................
Under the APA.......................................................................15

        C.   Plaintiffs' Alleged Injuries are Not Redressable ..........................19

    II.    Plaintiffs' Claim Against BLM Should Be Dismissed for Lack of
a Final Agency Action.......................................................................21

    III.   Plaintiffs Fail to Sufficiently Allege Standing for Their ESA
Claim ................................................................................................21

CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

Cases

*Am. Ins. Ass'n v. Garamendi,*
    539 U.S. 396 (2003) ........................................................................ 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................... 6

*ASSE Int'l, Inc. v. Kerry,*
    803 F.3d 1059 (9th Cir. 2015) ........................................................ 15

*Baker v. United States,*
    722 F.2d 517 (9th Cir. 1983) .......................................................... 22

*Bancoult v. McNamara,*
    445 F.3d 427 (D.C. Cir. 2006) ....................................................... 20

*Baur v. Veneman,*
    352 F.3d 625 (2d Cir. 2003) ........................................................... 22

*Border Power Plant Working Grp. v. Dep't of Energy,*
    260 F. Supp. 2d 997 (S.D. Cal. 2003) ........................................... 12

*CD Distribs., Inc. v. United States,*
    883 F.2d 146 (D.C. Cir. 1989) ....................................................... 18

*Chapman v. Pier 1 Imps., Inc.,*
    631 F.3d 939 (9th Cir. 2011) .......................................................... 24

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
    333 U.S. 103 (1948) ........................................................................ 10

*City of Carmel-by-the-Sea v. U.S. Dep't of Transp.,*
    123 F.3d 1142 (9th Cir. 1997) ........................................................ 18

*Claybrook v. Slater,*
    111 F.3d 904 (D.C. Cir. 1997) ....................................................... 18

*Ctr. for Biological Diversity v. Hagel,*
    80 F. Supp. 3d 991 (N.D. Cal. 2015) ............................................. 20

iv

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006) ....................................................... 21

*Dalton v. Specter*,
 511 U.S. 462 (1994) .................................................. 9, 10

*Dep't of the Navy v. Egan*,
 484 U.S. 518 (1988) ....................................................... 15

*Det. Int'l Bridge Co. v. Gov't of Can.*,
 189 F. Supp. 3d 85 (D.D.C. 2016) ......................... 12, 14

*Dist. No. 1, Coast Dist., Marine Eng'rs Beneficial Ass'n v. Mar. Admin.*,
 215 F.3d 37 (D.C. Cir. 2000) .................................... 16

*Dreyfus v. Von Finck*,
 534 F.2d 24 (2d Cir. 1976) ......................................... 11

*Franklin v. Massachusetts*,
 505 U.S. 788 (1992) ................................................. 7, 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
 528 U.S. 167 (2000) ................................................ 23, 24

*Gallo Cattle Co. v. USDA*,
 159 F.3d 1194 (9th Cir. 1998) ..................................... 6

*Greene Cty. Planning Bd. v. Fed. Power Comm'n*,
 528 F.2d 38 (2d Cir. 1975) ........................................... 8

*Heckler v. Chaney*,
 470 U.S. 821 (1985) ....................................................... 15

*Jensen v. Nat'l Marine Fisheries Serv.*,
 512 F.2d 1189 (9th Cir. 1975) ........................... 10, 16, 17

*Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*,
 104 F.3d 1349 (D.C. Cir. 1997) .................................. 16

*Leite v. Crane Co.*,
 749 F.3d 1117 (9th Cir. 2014) ....................................... 5

*Ludecke v. Watkins,*
    335 U.S. 160 (1948) ........................................................................ 11

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................... 22, 23

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ..................................................................... 6, 23

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137 (1803) .......................................................... 10

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of State,*
    658 F. Supp. 2d 105 (D.D.C. 2009) ..................................... 9, 11, 12

*No Oilport! v. Carter,*
    520 F. Supp. 334 (W.D. Wash. 1981) ..................................... 17, 19

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ............................................................................ 7

*Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n,*
    457 F.3d 941 (9th Cir. 2006) ............................................................ 6

*Pebble Ltd. P'ship v. EPA,*
    604 F. App'x 623 (9th Cir. 2015) ..................................................... 7

*Protect Our Cmtys. Found. v. Chu,*
    Civil No. 12-cv-3062 L(BGS), 2014 WL 1289444
    (S.D. Cal. Mar. 27, 2014) ......................................................... 13, 14

*Pub. Citizen v. U.S. Trade Rep.,*
    5 F.3d 549 (D.C. Cir. 1993) ............................................................ 14

*Rattlesnake Coal. v. EPA,*
    509 F.3d 1095 (9th Cir. 2007) .................................................. 13, 21

*Regan v. Wald,*
    468 U.S. 222 (1984) ........................................................................ 15

*SPRAWLDEF v. FEMA,*
    No. 15-cv-02331-LB, 2016 WL 6696046 (N.D. Cal. Nov. 15, 2016) ....... 13, 21

*Salmon Spawning & Recovery All. v. Gutierrez,*
545 F.3d 1220 (9th Cir. 2008) ........................................................... 20

*San Luis Unit Food Producers v. United States*,
709 F.3d 798 (9th Cir. 2013) ............................................................. 7

*Sierra Club v. Clinton,*
689 F. Supp. 2d 1147 (D. Minn. 2010) ........................................... 2, 13

*Sisseton-Wahpeton Oyate v. U.S. Dep't of State,*
659 F. Supp. 2d 1071 (D.S.D. 2009) ................................................ 11

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ........................................................................... 25

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ................................................................ 20, 21, 24

*U.S. Ordnance, Inc. v. U.S. Dep't of State*,
432 F. Supp. 2d 94 (D.D.C. 2006) ................................................... 16

*United States v. Curtiss-Wright Exp. Corp.,*
299 U.S. 304 (1936) ......................................................................... 10

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ............................................................ 6

*Webster v. Doe*,
486 U.S. 592 (1988) ......................................................................... 18

*White Earth Nation v. Kerry,*
Civ. No. 14-4726 (MJD/LIB), 2015 WL 8483278
(D. Minn. Dec. 9, 2015) ............................................................. 11, 12

Statutes

General authorization to delegate functions; publication of delegations
3 U.S.C. § 301 .................................................................................. 8

Administrative Procedure Act,
5 U.S.C. §§ 701-706 ................................................................. 6, 7, 15

Federal Rules of Civil Procedure

Fed. R. Civ. P. 12(b)(1) ........................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................................... 6

Other Authorities

Exec. Order No. 11,423, 33 Fed. Reg. 11,741 (Aug. 16, 1968) ...............................3

Exec. Order No. 13,337, 69 Fed. Reg. 25,299 (Apr. 30, 2004)......................*passim*

## INTRODUCTION

Pursuant to the President's inherent constitutional authority to issue permits for pipelines crossing the international border, Under Secretary of State for Political Affairs Thomas A. Shannon Jr. determined that issuing a presidential permit to TransCanada Keystone Pipeline L.P. ("TransCanada") would be in the national interest.  As multiple courts have found, because the issuance of a presidential permit for an international crossing is an exercise of the President's delegated authority over foreign affairs and national security, the exercise of that authority constitutes presidential action that is not reviewable under the Administrative Procedure Act ("APA").  As such, Plaintiffs' claims that the U.S. Department of State ("State Department") violated the National Environmental Policy Act ("NEPA") – which claim relies on the APA as the sole basis for invoking this Court's jurisdiction – must be dismissed.

Plaintiffs' claims against the U.S. Bureau of Land Management ("BLM") and the U.S. Fish and Wildlife Service ("FWS") should similarly be dismissed. BLM has not made a decision regarding a right-of-way for the pipeline, and therefore there is no final agency action for the Court to review.  With respect to the claim against FWS, Plaintiffs lack standing because they have failed to allege concrete injuries to their members caused by FWS's issuance of a Biological Opinion ("BiOp") in accordance with the Endangered Species Act ("ESA").

1

# BACKGROUND

## I.     The Issuance of Presidential Permits

The Secretary of State's delegated authority to issue a permit for various border-crossing facilities, including pipelines, derives solely from the President's constitutional authority over foreign affairs and his authority over national security. For well over a century, Presidents have exercised that inherent authority to authorize border crossing facilities in the absence of action by Congress. *See* Hackworth, *Digest of International Law*, Vol. IV, § 350, pp. 247-56 (1942), Ex. 1; President Ulysses Grant's Seventh Annual Message to Congress, *reprinted in* Papers Relating to the Foreign Relations of the United States, Vol. 1, 44th Cong. 1st Sess., H.R. Doc. No. 1, Pt. 1 (Dec. 6, 1875), Ex. 2; *Sierra Club v. Clinton*, 689 F. Supp. 2d 1147, 1163 (D. Minn. 2010); *see also*, *e.g.*, 38 U.S. Op. Att'y Gen. 163 (1935) (gas pipeline); 30 U.S. Op. Att'y Gen. 217 (1913) (electrical power); 24 U.S. Op. Att'y Gen. 100 (1902) (wireless telegraphy); 22 U.S. Op. Att'y Gen. 514 (1899) (submarine cables).  Presidents personally signed and issued permits for border crossing facilities through the 1960s.  *See* Whiteman, *Digest of International Law*, Vol. 9, pp. 17-21 (1968), Ex. 3.

In 1968, President Lyndon B. Johnson delegated the President's inherent constitutional authority to issue permits for certain types of border crossing

facilities, including oil pipelines, to the Secretary of State.  *See* Exec Order No.

("E.O.") 11,423 § 1(a), 33 Fed. Reg. 11,741 (Aug. 16, 1968).  In 2004, President

George W. Bush issued Executive Order 13,337, which revised the process for

issuing presidential permits for cross-border pipelines for oil or other fuels.  E.O.

13,337 § 1(a), 69 Fed. Reg. 25,299 (Apr. 30, 2004).  Executive Order 13,337

provides that the Secretary of State, after considering the views of certain other

agency heads, shall issue a presidential permit for border crossing facilities if he

determines that doing so would "serve the national interest."  *Id.* § 1(a)-(h).

## II.     The Keystone XL Pipeline Permitting Process

In May 2012, TransCanada applied for a presidential permit for the

construction, operation, and maintenance of pipeline facilities at the U.S.-Canada

border for the Keystone XL project, which would transport crude oil from Canada

into the United States.  *See* Department of State Record of Decision and National

Interest Determination ("ROD/NID") at 2, Ex. 4.[1]  The pipeline would extend

1,204 miles from Hardisty, Alberta to Steele City, Nebraska.  *Id.*  The project

---

[1] TransCanada initially applied for the permit in 2008, but that application was
denied in 2012 following a congressional enactment requiring the President to act
on the permit application within sixty days.  ROD/NID at 9.

3

requires a presidential permit authorizing the border crossing and corresponding operations in the 1.2-mile border segment near Morgan, Montana.  *See id.*

In considering whether the issuance of a presidential permit for the pipeline would serve the national interest, the State Department reviewed extensive input from the public, as well as from federal, state, and tribal entities.  *Id*. at 4–7.  While not required by law to evaluate the pipeline's potential environmental and cultural impacts, State as a matter of policy used procedures consistent with NEPA, the ESA, and the National Historic Preservation Act ("NHPA").  *Id.* at 3.  State released a Final Supplemental Environmental Impact Statement ("SEIS") in January 2014.  *Id.* at 3; *see also id.* at 6, 21 (FWS issued a BiOp in May 2013).  On November 6, 2015, Secretary of State Kerry denied TransCanada's application.  *Id.* at 2.

On January 24, 2017, President Donald J. Trump issued a Presidential Memorandum Regarding the Construction of Keystone XL Pipeline that invited TransCanada to re-submit an application for a presidential permit.  *Id*. at 1; *see also* Jan. 24, 2017 Mem. § 1, Ex. 5.  The President directed the Secretary of State to make a final determination within sixty days of receiving an application and to rely, to the extent permitted by law, on the analysis of environmental impacts in the SEIS.  *Id.* §§ 3(a)(i)-(ii).

4

TransCanada re-submitted its application on January 26, 2017.  ROD/NID at

2.  The application includes minor route changes but is entirely within the areas

analyzed in the SEIS.  *Id*.  On March 23, 2017, Under Secretary Shannon[2]

determined that the issuance of the permit would serve the national interest and

accordingly issued the permit.  *Id*. at 31; Presidential Permit for the Keystone XL

Pipeline ("Presidential Permit") at 5, Ex. 6.  This determination was based on

multiple factors, including foreign policy, energy security, environmental impacts,

cultural impacts, and economic impacts.  ROD/NID at 30.

## LEGAL STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss, challenging a court's jurisdiction to hear the plaintiff's

claims pursuant to Fed. R. Civ. P. 12(b)(1), may be brought either as a facial attack

on the sufficiency of the pleadings or as a factual attack contesting the complaint's

allegations.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  In a

facial attack, the court accepts factual allegations as true, as it would in resolving a

Rule 12(b)(6) motion.  *Id.*

---

[2] The Under Secretary of State for Political Affairs is one of the State Department
officials to whom the Secretary of State has further delegated the authority granted
by the President in Executive Order 13,337 to make national interest
determinations and issue presidential permits.  *See* ROD/NID at 3.

5

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court assumes the truth of the plaintiffs' allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court need not, however, accept the legal conclusions as true, and a plaintiff must "state a claim to relief that is plausible on its face."  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ARGUMENT

## I.    The Court Lacks Jurisdiction to Review the Issuance of a Presidential Permit

NEPA does not provide a private right of action, and therefore Plaintiffs must bring any claims based on NEPA pursuant to the judicial review provisions of the APA.  5 U.S.C. §§ 701-706; *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 950 (9th Cir. 2006).  Plaintiffs' claims may proceed only in accord with the right of action and the waiver of sovereign immunity provided in the APA, and those claims are subject to the APA's limitations on judicial review.  *See* 5 U.S.C. §§ 702, 704; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *Gallo Cattle Co. v. USDA*, 159 F.3d 1194, 1198 (9th Cir. 1998).

6

Among these core limits is the requirement that, in order for a suit to proceed, there must be "agency action" as defined by the APA. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). The APA definition of "agency" does not include the President and accordingly, the President's actions do not constitute "agency action" that is reviewable under the APA. *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992). Moreover, even where there is an "agency action" within the meaning of the APA, judicial review is not available "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Plaintiffs' claims against State are unreviewable because they challenge a presidential action, not an "agency" action. But even if Plaintiffs had challenged an "agency" action, the action challenged here is committed to agency discretion by law. Accordingly, the Court lacks jurisdiction to review Plaintiffs' claims.[3]

---

[3] In the Ninth Circuit, the requirements of the APA are treated as jurisdictional prerequisites to suit. *See*, *e.g.*, *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013) (treating "final agency action" requirement as jurisdictional); *but see Pebble Limited Partnership v. U.S. EPA*, 604 F. App'x 623, 625-26 (9th Cir. 2015) (Watford, J. concurring) (noting different treatment in other circuits). To the extent necessary, we move in the alternative to dismiss the claims against the State Department for failure to state a claim.

**A.    The Issuance of a Presidential Permit Is Presidential Action That Is Not Reviewable Under the APA**

No statute mandates or governs the issuance of presidential permits for oil pipelines.  Rather, the Secretary's delegated authority to issue presidential permits for cross-border activities derives solely from the President's authority under "the Constitution and the laws of the United States of America."  E.O. 13,337 at 1;[4] *see also Greene Cty. Planning Bd. v. Fed. Power Comm'n*, 528 F.2d 38, 46 (2d Cir. 1975) (finding that a similar executive order "delegates an executive function . . . rooted in the President's power with respect to foreign relations if not as Commander in Chief of the Armed Forces.").  The Secretary considers applications for cross-border pipeline facilities pursuant to the delegated constitutional authority of the President in accordance with the President's directives in Executive Order 13,337 and (in this case, in particular) the President's January 24, 2017 Memorandum.  *See Nat. Res. Def. Council, Inc. v. U.S. Dep't of State*, 658 F. Supp.

---

[4] Executive Order 13,337 also references 3 U.S.C. § 301, which provides that the President may "empower the head of any department or agency" to conduct "any function which is vested in the President by law," and that such a designation "shall be subject to such terms, conditions, and limitations as the President may deem advisable, and shall be revocable at any time by the President in whole or in part."  3 U.S.C. § 301.  The provision also provides "[t]hat nothing contained herein shall relieve the President of his responsibility in office for the acts of any such head or other official designated by him to perform such functions," thereby making clear that while authority may be delegated, the action is presidential.  *Id.*

2d 105, 111 (D.D.C. 2009) ("The State Department acts solely at the behest of the President and in accordance with the President's guidance as set forth in Executive Order 13,337.").

That is what occurred here.  In the January 24, 2017 Memorandum, the President invited TransCanada to resubmit its application for a presidential permit for the Keystone XL Pipeline and provided additional direction to the Secretary of State in processing the application.  When the Under Secretary issued the Presidential Permit to TransCanada, he acted solely pursuant to the inherent constitutional authority delegated by the President.  Because this was a presidential action, it is unreviewable under the APA.

The Supreme Court has made clear that a President's action is not an agency action that can be challenged under the APA.  *Franklin*, 505 U.S. at 800-01; *Dalton v. Specter*, 511 U.S. 462, 476 (1994) (the Secretary of Defense's recommendations to the President regarding base closures were unreviewable because the decision was within the President's discretion).  As explained by the Supreme Court:  "Out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA."  *Franklin*, 505 U.S. at 800-01; *see also Dalton*, 511 U.S. at 475 (under longstanding authority, some presidential decisions constitute "political matters beyond the competence of the courts to

9

adjudicate") (quoting *Chi. & S. Airlines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 114 (1948)).

As relevant here, the President has substantial inherent constitutional authority in the area of foreign affairs. *Am Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003); *see also Chi. & S. Airlines*, 333 U.S. at 109 ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs."). In exercising this constitutional authority, the President often acts through subordinates. *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936) (A President must rely on "agents in the form of diplomatic, consular and other officials."); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 166 (1803) ("[The President] is authorized to appoint certain officers, who act by his authority and in conformity with his order.").

When the President delegates his inherent constitutional authority to an agency head, the action remains an exercise of the President's authority and is not reviewable under the APA. *See Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975) ("For the purposes of this appeal the Secretary's actions are those of the President, and therefore by the terms of the APA the approval of the regulation at issue here is not reviewable."); *Dreyfus v. Von Finck*, 534 F.2d 24, 29 (1976) (the delegation of an executive function in the area of military and

10

foreign affairs "does not transmute it into judicially reviewable action"), *abrogated*

*on other grounds by Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980); *Ludecke*

*v. Watkins*, 335 U.S. 160, 165-66 (1948) (the delegation of a statutory

determination to the Attorney General did not render the President's war power

authority subject to judicial review).

     In prior litigation regarding other pipelines, three separate courts held that

the issuance of a presidential permit or the interpretation of a presidential permit by

State Department officials acting under the same delegated presidential authority

was presidential action and therefore not subject to review under the APA.  *See*

*Sisseton-Wahpeton Oyate v. U.S. Dep't of State*, 659 F. Supp. 2d 1071, 1082

(D.S.D. 2009); *Nat. Res. Def. Council*, 658 F. Supp. 2d at 113; *White Earth Nation*

*v. Kerry*, Civ. No. 14-4726 (MJD/LIB), 2015 WL 8483278, at *6-8 (D. Minn. Dec.

9, 2015).  In doing so, all three courts found that the delegation of the President's

constitutional authority to the State Department officials did not change the

presidential nature of the action.  *See Sisseton-Wahpeton*, 659 F. Supp. 2d at 1082

("The President is free to delegate some of his powers to the heads of executive

departments, as he has done here, and those delegation actions that are carried out

create a presumption of being as those of the President."); *Nat. Res. Def. Council*,

658 F. Supp. 2d at 111 ("[T]o challenge the issuance of a presidential permit,

whether by the President himself or by the State Department as the President's

11

delegee, is to challenge a presidential act, which is not reviewable under the APA."); *White Earth Nation*, 2015 WL 8483278, at *7 ("[T]he overwhelming authority supports a finding that the State Department's actions in this case are Presidential in nature, and thus not subject to judicial review.").

Further, subjecting such permitting decisions to judicial review "would impose an unconstitutional burden on [the President's] power to delegate that the APA does not require, let alone contemplate."  *Nat. Res. Def. Council*, 658 F. Supp. 2d at 112; *see also Detroit Int'l Bridge Co. v. Government of Canada*, 189 F. Supp. 3d 85, 101 (D.D.C. 2016) (finding that the issuance of a presidential permit for an international bridge "involved the exercise of discretionary authority committed to the President" and therefore "was presidential in nature" and unreviewable under the APA), *appeal docketed*, No. 16-5270 (D.C. Cir. Sept. 27,2016).  Accordingly, the President's delegation of his authority to issue presidential permits for cross-border pipelines does not subject those decisions to APA review.[5]

---

[5] In *Border Power Plant Working Group v. Dep't of Energy*, 260 F. Supp. 2d 997 (S.D. Cal. 2003), the court reviewed a NEPA claim regarding a presidential permit for cross-border transmission lines, but whether the court had jurisdiction over presidential action was not raised in the case.

While not expressly finding that a presidential permit is itself reviewable, two district courts have nonetheless found an environmental impact statement ("EIS") accompanying a presidential permit to be reviewable.  *Sierra Club. v. Clinton*, 689 F. Supp. 2d 1147, 1156 (D. Minn. 2010); *Protect Our Cmtys. Found. v. Chu*, Civ. No. 12-cv-3062 L(BGS), 2014 WL 1289444, at *5-6 (S.D. Cal. Mar. 27, 2014).  In *Sierra Club*, the court held that, under binding Eighth Circuit precedent, the preparation of an EIS was itself a final agency action subject to review under the APA.  689 F. Supp. 2d at 1157.  The basis for the *Chu* decision is less clear, but the court found "the reasoning in *Sierra Club* persuasive, especially in light of the fact that an agency could theoretically shield itself from judicial review under the APA for any action by arguing that it was 'Presidential,' no matter how far removed from the decision the President actually was."  *Chu*, 2014 WL 1289444, at *6.

The *Sierra Club* and *Chu* decisions are neither binding nor persuasive.  First, in the Ninth Circuit, an EIS standing alone is not a final agency action reviewable under the APA.  *See Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1104 (9th Cir. 1997) ("Absent final agency action, there was no jurisdiction in the district court to review the NEPA claim."); *SPRAWLDEF v. FEMA*, No. 15-cv-02331-LB, 2016 WL 6696046, at *6-7 (N.D. Cal. Nov. 15, 2016) (holding that a decision regarding a grant, not the supporting EIS, was the final agency action under review); *see also*

13

*Pub. Citizen v. U.S. Trade Rep.*, 5 F.3d 549, 552 (D.C. Cir. 1993) (rejecting the argument that the requirement to prepare an EIS was an "independent statutory obligation" that provided an avenue for APA review).  Thus, Plaintiffs cannot collaterally attack the Presidential Permit by separately challenging the SEIS.

Moreover, the *Chu* court's apparent concern that an agency could "theoretically shield" a wide range of actions from review by labeling them "Presidential" is unfounded.  2014 WL 1289444, at *6.  The issuance of presidential permits for cross-border infrastructure through the exercise of the President's delegated constitutional authority is limited to specific circumstances prescribed by the President.  Further, underscoring the presidential nature of the action at issue here, in the January 24, 2017 Memorandum, the President the President reaffirmed the delegation of authority to the Secretary and prescribed the procedure for the Secretary of State to follow in deciding whether to issue a presidential permit for the Keystone XL Pipeline.  Thus, the suggestion that there are no restraints on an agency's ability to characterize its actions as presidential should be rejected.  *See Detroit Int'l Bridge*, 189 F. Supp. 3d at 105 (finding the *Chu* court's reasoning unpersuasive).

Accordingly, the decision to issue the Presidential Permit, made solely under the delegated constitutional authority of the President, was a presidential action that is not reviewable under the APA.

14

**B.** **Even if the Issuance of the Presidential Permit is Deemed an Agency Action, It Was an Action Committed to Agency Discretion by Law, and Therefore is Not Reviewable Under the APA**

Even if the Court considers the issuance of the Presidential Permit to be "agency action," it still would not be reviewable because the APA excludes from judicial review actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), judicial review is unavailable if an applicable statute provides "no meaningful standard against which to judge the agency's exercise of discretion." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted); *see also Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The Under Secretary's decision to issue the Presidential Permit was an exercise of the President's delegated constitutional authority regarding foreign affairs and national security, and there is no meaningful standard to apply to that decision. Therefore, it is committed to agency discretion by law.

Courts routinely defer to the Executive Branch's exercise of its authority over foreign affairs and national security. *See Regan v. Wald*, 468 U.S. 222, 242 (1948) ("Matters relating 'to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry and interference.") (citation omitted); *Dep't of the Navy v. Egan*, 484 U.S. 518, 528-29 (1988) (decision to grant security clearance was committed to agency discretion). Thus, courts have found that the exercise of such authority

15

was committed to agency discretion by law, even where a relevant statute existed.

*See Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*, 104

F.3d 1349, 1353 (D.C. Cir. 1997) (State Department's visa processing procedures

were unreviewable); *U.S. Ordnance, Inc. v. U.S. Dep't of State*, 432 F. Supp. 2d

94, 99 (D.D.C. 2006) (State Department's determination regarding the revocation

of a license to export arms was not reviewable), *vacated as moot*, 231 F. App'x 2

(D.C. Cir. 2007); *Dist. No. 1, Pac. Coast Dist. Marine Eng'rs Beneficial Ass'n v.*

*Maritime Admin.*, 215 F.3d 37, 41 (D.C. Cir. 2000) (an order based on "national

defense, the adequacy of the merchant marine, foreign policy, and the national

interest" was not reviewable).

Judicial deference to the Executive Branch in the area of foreign affairs is

illustrated by the *Jensen* case, which involved an APA challenge to fishing

regulations issued by an international commission created by a treaty between the

United States and Canada.  *See* 512 F.2d at 1190.  The President had the authority

to approve the regulations based on his authority over foreign affairs, but he

delegated that authority to the Secretary of State.  *Id.* at 1191.  The Ninth Circuit

found that, in approving the regulations, "the Secretary's actions [were] those of

the President" and that "presidential action in the field of foreign affairs is

committed to presidential discretion by law."  512 F.2d at 1191 (citing *Chi. & S.*

*Air Lines*, 333 U.S. at 109-10, and *Curtiss-Wright Exp. Corp.*, 299 U.S. at 319-22).

16

Thus, the court concluded, "the APA does not apply to the action of the Secretary in approving the regulation here challenged." *Jensen*, 512 F.2d at 1191.[6]

Likewise here, the Under Secretary's determination that the issuance of the Presidential Permit was in the national interest was made pursuant to the President's delegated constitutional authority over foreign affairs and national security.  *See* E.O. 13,337 at 1; *see also* Jan. 24, 2017 Mem. § 1.  In making this determination, the Under Secretary weighed a number of factors, including the project's contribution to energy security, Canada's role as a trading partner and ally, foreign policy implications, economic benefits, and environmental and cultural impacts.  *See* ROD/NID at 27-31.  None of these factors is dictated by statute; indeed, there is no governing statute or any other meaningful standard for the Court to apply to the review of the Under Secretary's decision.  The Under Secretary's balancing of purely discretionary factors relating to foreign affairs and national security pursuant to the delegated authority of the President is clearly not reviewable under the APA.  *See Jensen*, 512 F.2d at 1191; *cf. No Oilport! v. Carter*, 520 F. Supp. 334, 352 (W.D. Wash. 1981) (the President's finding, based

---

[6] The Ninth Circuit further noted in *Jensen* that "the Supreme Court has held that such decisions are political in nature and therefore do not present a justiciable 'case or controversy' within the meaning of Article III of the Constitution."  512 F.2d at 1191 (quoting *Chi. & S. Air Lines*, 333 U.S. at 111-12).

on foreign policy and national security concerns, that a pipeline would be in the
national interest was unreviewable).

Further, even if Executive Order 13,337 could be construed as supplying the
relevant standard to the Under Secretary's decision,[7] it requires only that the
decision be made based on the "national interest" and therefore provides no
meaningful standard for the court to apply. *See Webster v. Doe*, 486 U.S. 592, 600
(1988) (decision to terminate an employee if "necessary or advisable in the
interests of the United States" was unreviewable); *CD Distribs., Inc. v. United
States*, 883 F.2d 146, 153-56 (D.C. Cir. 1989) (same); *Claybrook v. Slater*, 111
F.3d 904, 908-09 (D.C. Cir. 1997) (determination regarding the "public interest"
was unreviewable). A determination of the "national interest" exercising the
President's delegated foreign affairs authority similarly leaves no judicially
familiar standard to apply, and therefore is committed to agency discretion by law.

The lack of any meaningful standard to apply is illustrated by the *No
Oilport!* case. In that case, the plaintiffs challenged the construction of a domestic

---

[7] Even aside from the fact that Executive Order 13,337 is not a statute and can be
revised or revoked by the President at any time, it expressly provides that it does
not "create any right . . . enforceable at law or in equity by any party against the
United States, its departments, agencies, instrumentalities, or entities, its officers or
employees, or any other person." E.O. 13,337 § 6. Thus, Executive Order 13,337
creates no enforceable rights. *See City of Carmel-by-the-Sea v. U.S. Dep't of
Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997).

18

pipeline from the North Slope of Alaska to Minnesota.  520 F. Supp. at 344.

Under the Public Utility Regulatory Policies Act ("PURPA"), the President was

required to select a west to east pipeline route based on the President's

determination that the selected project would be "in the national interest." *Id.* at

350.  The court found that, in making the national interest determination, the

President considered "the national security and foreign policy impacts of each

proposal." *Id.* at 352.  The court concluded that it was "beyond the competence of

the judiciary to review decisions based on such considerations" and "no standards

exist by which to review such a decision." *Id.* (citing *Chi. & S. Air Lines*, 333 U.S.

103).  The circumstances here are similar, except that no statute binds the

President's or his delegee's exercise of authority.  There is simply no meaningful

standard for the Court to apply to the Under Secretary's determination that the

issuance of the permit would serve the national interest.

　　In sum, even if the Under Secretary's decision to issue the Presidential

Permit is considered to be agency action, it was committed to the Under

Secretary's discretion by law and therefore is not reviewable under the APA.

## C.　　Plaintiffs' Alleged Injuries are Not Redressable

　　In any event, Plaintiffs lack standing to challenge the issuance of the

Presidential Permit because their alleged injuries are not redressable.  In order to

establish standing, Plaintiffs must demonstrate that their alleged injuries are likely

19

to be redressed by a favorable court decision.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Plaintiffs' alleged injuries are not redressable because the remedy that they seek—an order enjoining the Presidential Permit—is not within the Court's authority to grant.

The Under Secretary issued the Presidential Permit pursuant to the delegated constitutional authority of the President over foreign affairs and national security. *See* ROD/NID at 27-31.  Such decisions are the prerogative of the Executive Branch, and courts should not "bind the executive's hands" in matters involving national security and foreign policy.  *Bancoult v. McNamara,* 445 F.3d 427, 437 (D.C. Cir. 2006).  An order enjoining the Presidential Permit would impermissibly infringe on the President's authority and violate the separation of powers doctrine, and therefore no such order is available to redress Plaintiffs' alleged injuries.  *See Ctr. for Biological Diversity v. Hagel*, 80 F. Supp. 3d 991, 1015-19 (N.D. Cal. 2015) (challenge to the approval of a military base was not redressable); *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1227-29 (9th Cir. 2008) (challenge to a biological opinion prepared in connection with the United States' entry into a treaty was not redressable).

Accordingly, the claims against the State Department should be dismissed for lack of jurisdiction.

## II.    Plaintiffs' Claim Against BLM Should Be Dismissed for Lack of a Final Agency Action

Plaintiffs' Second Claim is a NEPA challenge to a purported decision by

BLM to grant a right-of-way relating to the Keystone XL Pipeline.  *See* Am.

Compl. ¶¶ 147-152 (ECF No. 38).  BLM has made no decision regarding a right-

of-way, and it could be several months until BLM makes that decision.  Because

no right-of-way has been authorized, the NEPA claim against BLM should be

dismissed for lack of a final agency action.  *See Rattlesnake Coal.*, 509 F.3d at

1104 (finding no jurisdiction to review NEPA claim absent a final agency action);

*SPRAWLDEF*, 2016 WL 6696046, at *6-7 (N.D. Cal. Nov. 15, 2016) (the agency

action, not the supporting EIS, was the action under review).

## III.   Plaintiffs Fail to Sufficiently Allege Standing for Their ESA Claim

In the Fourth Claim for Relief, Plaintiffs allege that FWS's BiOp violates the

ESA and the APA.  Plaintiffs lack standing to pursue this claim.

To establish Article III standing, the Plaintiffs must demonstrate an "'injury

in fact" that is "fairly traceable to the challenged action," and is likely to be

redressed by a favorable court decision.  *Summers*, 555 U.S. at 493 (citation

omitted).  "[A] plaintiff must demonstrate standing separately for each form of

relief sought."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation

omitted).  Standing must be supported "with the manner and degree of evidence

21

required at the successive stages of the litigation," which at the pleading stage, may rest on "general factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992). Thus, "[t]he facts to show standing must be clearly apparent on the face of the complaint." *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) (citations omitted). "While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003) (citing *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002)). Plaintiffs' complaint falls short with respect to all three of the required elements.

To show injury-in-fact, a plaintiff must show "an invasion of a legally-protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). While the desire to observe a particular listed species generally is a cognizable interest, the complaint here is utterly devoid of allegations that any member of any of the plaintiff groups has a personal interest in either the whooping crane, interior least tern, or piping plover. Nor do Plaintiffs allege that any of their members have concrete plans to visit the project area or other areas affected by the project in order to observe species. Instead, the closest

22

the complaint comes are vague allegations that "some" of Plaintiffs' members

"own property on and near the proposed pipeline route" and that some of their

members live or recreate in places impacted by the project.  Am. Compl. ¶ 25.

　　　These generalized interests are insufficient to establish injury-in-fact for

Plaintiffs' ESA claim.  The relevant showing for purposes of Article III standing

"is not injury to the environment but injury to the plaintiff."  *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).  As such, a

general interest in the "ecosystem" is not sufficient to establish injury to a concrete

interest in particular listed species.  *Lujan*, 504 U.S. at 565-66 (rejecting

"ecosystem nexus" theory to support standing for ESA claims).  Nor is it enough

that Plaintiffs' members reside somewhere in the States in which the project is

located or use resources impacted somewhere by the project.  *Lujan,* 497 U.S. at

887-89 ("bare allegation of injury" that plaintiff used land "in the vicinity" of the

action failed to show standing).

　　　More problematically, Plaintiffs fail to identify any of their members who

even possess an interest in the three listed species at issue or, even if they did, plan

to recreate in areas near the project in order to observe those species.  Am. Compl.

¶¶ 19-25.  There is simply no connection between Plaintiffs' generalized

environmental interests and the challenge to the sufficiency of the consultation.

Especially for the narrow route of the pipeline, across mostly private land in three

large Western states, the Court cannot assume there is a "likelihood" that
Plaintiffs' members will chance upon an area of the project supporting the species
for which the consultation was allegedly insufficient. *Summers*, 555 U.S. at 495.

Plaintiffs' flawed standing allegations are thus parallel to those found
insufficient in *Chapman*, where even though the complaint referenced various
barriers to full and equal access, the Ninth Circuit found the complaint failed to
connect the alleged violation of the Americans with Disabilities Act with the
plaintiffs' own access experiences.  *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d
939, 954 (9th Cir. 2011) (*en banc*).  Plaintiffs' standing allegations here are
similarly vague and conclusory.  Because they fail to allege any of their members'
interest in the listed species, they cannot show an injury to any such interests from
the alleged deficiencies in the consultation analysis.

Plaintiffs also falter on the causation and redressability inquiry, which
requires Plaintiffs to show that their alleged injury is "fairly traceable to the
challenged action of the defendant" and that it is "likely, as opposed to merely
speculative, that the injury will be redressed by a favorable decision." *Laidlaw*,
528 U.S. at 180–81.  Here, because Plaintiffs fail to allege an interest in any ESA-
listed species, they cannot identify a causal link between the BiOp's alleged
infirmities and any injury to a personal interest of their members, nor could
invalidation of the BiOp provide redress for the missing injury.  *Steel Co. v.*

24

*Citizens for a Better Env't,* 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.").  Accordingly, the Court should dismiss the ESA claim for lack of standing.

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims should be dismissed for lack of jurisdiction or, in the alternative, for failure to state a claim.

Respectfully submitted this 9th day of June, 2017.

JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

SETH M. BARSKY, Section Chief

*/s/ Bridget Kennedy McNeil*_____
BRIDGET KENNEDY McNEIL (CO Bar 34299)
Senior Trial Attorney
Wildlife and Marine Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1484; Fax: (303) 844-1350
bridget.mcneil@usdoj.gov

*/s/ Luther L. Hajek*_____
LUTHER L. HAJEK (CO Bar 44303)
Trial Attorney
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1376; Fax: (303) 844-1350

25

luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points, and contains 5,817 words, excluding the caption, table of contents, table of authorities, certificate of compliance, certificate of service, and exhibit index.