Jeffery J. Oven
Mark L. Stermitz
Jeffrey M. Roth
CROWLEY FLECK PLLP
490 North 31st Street, Ste. 500
P.O. Box 2529
Billings, MT  59103-2529
Telephone: 406-252-3441
Email: joven@crowleyfleck.com
        mstermitz@crowleyfleck.com
        jroth@crowleyfleck.com

Peter R. Steenland
Lauren C. Freeman
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
Telephone: 202-736-8000
Email: psteenland@sidley.com
        lfreeman@sidley.com

*Counsel for TransCanada Keystone Pipeline, LP
   and TransCanada Corporation*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, BOLD ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, FRIENDS OF THE EARTH, NATURAL RESOURCES DEFENSE COUNCIL, INC., and SIERRA CLUB,<br><br>             Plaintiff,<br>vs.<br><br>THOMAS A. SHANNON, JR., in his Official Capacity as Under Secretary of State for Political Affairs, UNITED STATES DEPARTMENT OF STATE, RYAN ZINKE, in his official Capacity as Secretary of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; and BUREAU OF LAND MANAGEMENT,<br><br>             Defendants, | Cause No. 4:17-cv-00031-BMM<br><br><br>**MEMORANDUM IN SUPPORT OF MOTION BY TRANSCANADA KEYSTONE PIPELINE, LP AND TRANSCANADA CORPORATION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), OR, 12(b)(6)** |

and

TRANSCANADA KEYSTONE
PIPELINE, LP and TRANSCANADA
CORPORATION,

              Defendant-Intervenors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

STATEMENT OF FACTS ............................................................................... 1

    I.    TransCanada's Proposed Keystone XL Pipeline and the Presidentially-Delegated Process for Permitting the Keystone XL Pipeline ............................................................................................ 3

    II.    Federal Defendants' Issuance of a Presidential Permit and the Record of Decision/National Interest Determination (ROD/NID) .................................................................................... 8

    III.    Other Federal Actions Regarding Keystone XL ................................... 9

    IV.    Plaintiffs' Complaint ........................................................................ 10

STANDARDS FOR A MOTION TO DISMISS ..................................................... 12

ARGUMENT ................................................................................................ 12

    I.    This Court Lacks Jurisdiction to Adjudicate Any Challenge to the State Department's Compliance with NEPA or Its Issuance of the Presidential Permit Because the Permit Is Not Agency Action ............................................................................................ 12

        A.    No Cause of Action Exists Under General Federal Jurisdiction Statutes ................................................................ 13

        B.    Plaintiffs Cannot Establish a Private Right of Action under NEPA or the APA to Challenge the State Department's Exercise of Presidentially Delegated Authority .................................................................................. 15

    II.    This Court Lacks Jurisdiction to Adjudicate Any Claim that Defendants Acted Illegally Regarding a Right-Of-Way for the Keystone XL Pipeline Because There Has Been No Final Decision Granting or Denying the Application for That Right-Of-Way .................................................................................... 18

i.

III.    This Court Lacks Jurisdiction to Review the Merits of Whether
TransCanada Should Receive this Presidential Permit .......................19

IV.    Plaintiffs' Fourth Claim Should Be Dismissed Because They
Lack Standing and Have Not Stated Any Claim for Which
Relief Can Be Granted ........................................................................21

CONCLUSION .........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................21, 23

*C&S Air Lines v. Waterman S.S. Corp.*,
  333 U.S. 103 (1948)..........................................................................21

*Cal-Almond, Inc. v. U.S. Dep't of Agric.*,
  14 F.3d 429 (9th Cir. 1993) .............................................................17

*Dalton v. Specter*,
  511 U.S. 462 (1994)..........................................................................15

*DeVilbiss v. Small Bus. Admin.*,
  661 F.2d 716 (8th Cir. 1981) ...........................................................13

*FDIC v. Meyer*,
  510 U.S. 471 (1994)..........................................................................14

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)..........................................................................15

*Jensen v. Nat'l Marine Fisheries Svc.*,
  512 F.2d 1189 (9th Cir. 1975) ....................................................16, 17

*Lane v. Pena*,
  518 U.S. 187 (1996)..........................................................................14

*Lehman v. Nakshian*,
  453 U.S. 156 (1981)..........................................................................14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..........................................................................22

*Nat. Res. Def. Council v. U.S. Dep't of State (NRDC)*,
  658 F. Supp. 2d 105 (D.D.C. 2009)...........................4, 13, 15, 17, 18

*Salmon River Concerned Citizens v. Robertson*,
    32 F.3d 1346 (9th Cir. 1994) ...............................................................15

*Schilling v. Rogers*,
    363 U.S. 666 (1960)...........................................................................14

*Sisseton-Wahpeton Oyate v. U.S. Dep't of State*,
    659 F. Supp. 2d 1071 (D.S.D. 2009) ...............................12, 15, 17, 18

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ..........................................................23

*United States v. Mitchell*,
    463 U.S. 206 (1983)...........................................................................14

*Webster v. Doe*,
    486 U.S. 592 (1988)...........................................................................20

*White Earth Nation v. Kerry*,
    No. 14-4726, 2015 WL 8483278 (D. Minn. Dec. 9, 2015) ...............13

**Statutes**

Pub. L. No. 112-78, title V, subtitle A .....................................................5

5 U.S.C. §§ 701-706..........................................................2, 11, 12, 18

5 U.S.C. § 702 ........................................................................................15

5 U.S.C. § 704 ........................................................................................19

15 U.S.C. §§ 717 *et seq.*......................................................................17

16 U.S.C. §§ 1531 *et seq.*..............................................................2, 10

28 U.S.C. § 1331 .........................................................................11, 13, 14

28 U.S.C. § 1361 ....................................................................................11

28 U.S.C. §§ 2201-2202 ...................................................................11, 14

30 U.S.C. § 185 ......................................................................................10

33 U.S.C. § 408.......................................................................................10

33 U.S.C. § 1344 ............................................................................................10

42 U.S.C. §§ 4321 *et seq.*...............................................................1, 12, 18

**Other Authorities**

69 Fed. Reg. 25,299 (May 5, 2004) ...............................................................4

73 Fed. Reg. 11,456 (Mar. 3, 2008)...............................................................4

76 Fed. Reg. 55,155 (Sept. 6, 2011) ..............................................................5

82 Fed. Reg. 8663 (Jan. 30, 2017) .................................................................7

## STATEMENT OF FACTS

<u>Introduction</u>:  Acting on behalf of the President of the United States, the Department of State ("State Department" or "the Department") has determined that the issuance of a Presidential Permit for the Keystone XL Pipeline to cross the border between the United States and Canada serves the national interest of the United States.  In its March 23, 2017, Record of Decision and National Interest Determination ("ROD/NID"), the State Department found that the Keystone XL Pipeline has the "potential to bolster U.S. energy security," that it will support a significant number of U.S. jobs and provide increased revenues to local communities, that the pipeline will reinforce our bilateral relationship with Canada and will otherwise serve the national interest.  ROD/NID, § 6.

Plaintiffs Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council and Sierra Club (collectively "Northern Plains" or "Plaintiffs") brought this action against Federal Defendants[1] to invalidate the Presidential Permit.  Plaintiffs assert the Department of State violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, by producing a Final Supplemental

---

[1] Thomas A. Shannon, Jr., in his Official Capacity as Under Secretary of State for Political Affairs, United States Department of State, Ryan Zinke, in his official Capacity as Secretary of the Interior, United States Department of the Interior, Bureau of Land Management, and U.S. Fish and Wildlife Service (collectively, the "Federal Defendants").

1

Environmental Impact Statement ("FSEIS") they proclaim is inadequate.  Northern

Plains also contends that the actual decision to issue this Presidential Permit

violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  Further,

Plaintiffs assert that the Bureau of Land Management ("BLM") is about to violate

NEPA and the APA if and when that agency approves TransCanada's application

for a right-of-way across federal land in Montana.  Finally, Plaintiffs assert that the

Fish and Wildlife Service ("FWS") has also violated the Endangered Species Act

("ESA"), 16 U.S.C. §§ 1531 *et seq.*, by failing to ensure that protected species are

not harmed when various electric utility providers make decisions on where and

how to provide electricity to operate this pipeline.

TransCanada Corporation and its subsidiary TransCanada Keystone

Pipeline, LP ("Keystone") (collectively "TransCanada") build and operate energy

infrastructure.  The Keystone XL Pipeline ("Keystone XL" or "the Project") is a

proposed multi-billion dollar oil pipeline from Hardisty, Alberta to Steele City,

Nebraska,[2] that will contribute to America's economic strength and energy

security.

---

[2] At Steele City, Nebraska, the Keystone XL Pipeline would connect to the existing
Keystone Pipeline System, for which TransCanada Keystone Pipeline, LP, a
wholly owned subsidiary of TransCanada Corporation, obtained a Presidential
Permit in 2008.  The original Keystone Pipeline System extends from Hardisty,
Alberta, across the U.S.-Canadian border, through Steele City, Nebraska, to an oil
refinery and an oil terminal in Illinois, and to Cushing, Oklahoma.  The Keystone
Pipeline System also includes the Gulf Coast Project and the Houston Lateral

**I.     TransCanada's Proposed Keystone XL Pipeline and the Presidentially-Delegated Process for Permitting the Keystone XL Pipeline**

In 2008, TransCanada proposed the Keystone XL Pipeline as an expansion to its existing Keystone Pipeline System.  It would transport up to a nominal 830,000 barrels per day of crude oil produced in Alberta and Montana to Illinois, Oklahoma and Texas.  TransCanada proposed making available approximately 100,000 barrels of that daily capacity to transporting crude oil extracted in Montana.  As proposed, the Project included a Canadian segment of some 327 miles from Hardisty, Alberta to the U.S.-Canada border, as well as three principal segments in the United States:  (i) a segment from the U.S.-Canadian border to Steele City, Nebraska, connecting with the Keystone Pipeline (approximately 850 miles); (ii) the Gulf Coast segment (approximately 478 miles extending from Cushing, Oklahoma to Nederland, Texas); and (iii) the "Houston Lateral" pipeline segment (approximately 47 miles long, extending from Liberty, Texas to Houston, Texas).  *See supra* at n.2.

In September, 2008, TransCanada applied to the State Department for a permit to construct facilities on and near the border, specifically the 1.2 mile

---

Project, which in combination extend from Cushing, Oklahoma to Houston, Texas.
Another wholly owned TransCanada Corporation subsidiary, TC Oil Pipeline
Operations, Inc., operates and maintains the Keystone Pipeline System.
Hereinafter, references to "Keystone" include both TransCanada Keystone
Pipeline, LP and TC Oil Pipeline Operations, Inc., and references to
"TransCanada" include both those subsidiaries and their parent TransCanada
Corporation.

segment from the U.S.-Canada border to the first pipeline isolation valve in Montana.  Because this segment would cross the U.S.-Canada border, TransCanada's subsidiary needed a Presidential Permit authorizing the border crossing as part of the overall construction and operation of the entire facility.  *See* Declaration of Tony Palmer, ¶ 7, ("Palmer Decl.") (Dkt. 22, Exhibit A).  The permit was required because the President historically has interpreted his inherent Constitutional powers over foreign affairs to include the power to authorize the construction, operation and maintenance of border crossing facilities such as oil pipelines that cross international borders.  *See Nat. Res. Def. Council v. U.S. Dep't of State (NRDC)*, 658 F. Supp. 2d 105, 109 (D.D.C. 2009).  For oil pipeline projects, the President has delegated this authority to the State Department.  More specifically, the State Department is authorized to issue a border-crossing permit if the project is found to serve the "national interest."  *See* Exec. Order 13,337, 69 Fed. Reg. 25,299 (May 5, 2004) ("E.O. 13337").[3]

As a matter of policy and in order to inform the Department's determination regarding the national interest, the State Department coordinated an extensive,

---

[3]  TransCanada obtained a Presidential Permit in 2008 to construct the existing Keystone Pipeline, after the State Department conducted extensive environmental reviews and concluded that "the Keystone Pipeline Project [serves] the national interest."  U.S. Dep't of State, Record of Decision (Feb. 28, 2008), 73 Fed. Reg. 11,456 (Mar. 3, 2008).  Thereafter, TransCanada expended approximately $6.2 billion to construct the existing Keystone Pipeline, which became operational in 2010 and currently can deliver up to 591,000 barrels of crude oil per day ("bpd").

multi-year review of the environmental impacts of the entire Keystone XL Project in a manner consistent with NEPA.  This process resulted in a Final Environmental Impact Statement issued by the State Department in August 2011.  *See* 76 Fed. Reg. 55,155 (Sept. 6, 2011).

In November 2011, the State Department decided that before making a national interest determination on the Keystone XL application, it would prepare a supplement to the FEIS after controversy arose over the proposed pipeline route within Nebraska.  *See* Palmer Decl. ¶ 8.  TransCanada reinitiated consultation with state and federal officials regarding alternative routes in Nebraska.

As the events involving the pipeline route in Nebraska were unfolding, President Obama, on December 23, 2011, signed tax legislation that included a provision requiring him to grant a permit for the Keystone XL Project within 60 days, unless he determined that the Project would not serve the national interest. Pub. L. No. 112-78, title V, subtitle A.  In response, on January 18, 2012, President Obama denied the Keystone XL Project application, explaining that the 60-day timeframe was not long enough to assess the then-unresolved issues concerning an alternative route in Nebraska.

Shortly after that action by President Obama, TransCanada made two important decisions.  First, TransCanada decided that it would go forward with the Gulf Coast segment as a separate, stand-alone project because that segment had

5

immediate utility, independent of the segment between Hardisty, Alberta and Steele City.  TransCanada informed the State Department of this conclusion by letter of February 27, 2012.  The Gulf Coast Pipeline was completed and placed in service in January 2014.  TransCanada also built the Houston Lateral Project, a 47-mile pipeline extension from the Gulf Coast Pipeline to the Houston refining market.

Second, in May 2012, TransCanada submitted a renewed application to the State Department for a Presidential permit for the proposed Keystone XL Pipeline. The facility still would cross the border in Phillips County, Montana and interconnect with the Keystone Pipeline at Steele City, Nebraska.  Palmer Decl. ¶ 11.  The pipeline route proposed in the May 2012 application would transit the same route as originally proposed through Montana and South Dakota. TransCanada also stated that it would supplement the application, once an alternative route through Nebraska was selected.

For its part, the Nebraska Department of Environmental Quality ("NDEQ") conducted a year-long public process to consider proposed alternative routes through Nebraska.  In December 2012, that state agency submitted a report to the Governor evaluating a route that would avoid the NDEQ-defined Sandhills areas.

The Governor approved the route in January 2013, and advised the President as well as the Secretary of State of his approval by letter dated January 22, 2013.[4]

In March 2013, the State Department released a Draft SEIS ("DSEIS"), reflecting the new route through Nebraska. The State Department issued its Final Supplemental Environmental Impact Statement ("SEIS") in January 2014. However, on November 6, 2015, the Obama Administration denied the border crossing permit for the Keystone XL Pipeline, based on the premise that approval would undermine U.S. climate leadership in the international arena.

On January 24, 2017, President Trump invited TransCanada to re-submit its application for a presidential permit. President Trump directed the Secretary of State to receive TransCanada's application, if submitted, and "take all actions necessary and appropriate to facilitate its expeditious review," including reaching a final permitting determination within 60 days. Memorandum of January 24, 2017: Construction of the Keystone XL Pipeline, 82 Fed. Reg. 8663, § 3(i) (Jan. 30, 2017). The President also declared the January 2014 SEIS as satisfying to the maximum extent permitted by law all applicable requirements of NEPA. *Id.* at § 3(ii).

---

[4] Due to legal uncertainty regarding the Nebraska statute that authorized the Governor's approval of an alternate route, TransCanada filed an application for route approval with the Nebraska Public Service Commission ("PSC") on February 16, 2017. By statute, the PSC has until November 23, 2017 to rule on that application. For this and other reasons, TransCanada is not in a position to begin construction of the Keystone XL Pipeline this year.

On January 26, 2017, TransCanada re-submitted its application for a border crossing permit for the Keystone XL Pipeline.  The route proposed in the re-submitted application is essentially the same route.

## II.  Federal Defendants' Issuance of a Presidential Permit and the Record of Decision/National Interest Determination (ROD/NID)

On March 23, 2017, more than eight years after TransCanada filed its original application, Thomas A Shannon, Jr., Under Secretary of State for Political Affairs, signed TransCanada's Presidential permit and a ROD/NID that expressly determined issuance of this permit to TransCanada for the Keystone XL Pipeline would serve the national interest.  The ROD/NID stated that although the State Department's review of TransCanada's Presidential permit application was conducted "in a manner consistent with NEPA," the determination to issue the permit "is Presidential action, made through the exercise of Presidentially delegated authorities, and therefore the requirements of [NEPA], the National Historic Preservation Act of 1966 (NHPA), the [ESA], the Administrative Procedure Act (APA), and other similar laws and regulations that do not apply to Presidential actions are also inapplicable here."  ROD/NID, § 1.0.  Although it found NEPA inapplicable, the State Department said that the March 2017 ROD/NID was informed by the January 2014 SEIS and the "Department has reviewed the potential impacts of the proposed Project on the environment and cultural resources."  ROD/NID, § 5.0

8

The State Department identified several "key topics" that arose throughout the NEPA process as it explained in the ROD/NID why the SEIS "continues to inform the Department's national interest determination."  ROD/NID, § 5.0.  After a review of these topics and events that occurred since the SEIS was issued, the State Department concluded that these changes "do not represent substantial changes, do not present significant new information, and do not affect the continued reliability of the [SEIS]."  *Id.*  As such, the State Department determined there was no need to supplement the existing SEIS.

The March 2017 ROD/NID went on to explain its "Basis for Decision." The State Department concluded after "weigh[ing] multiple policy considerations," the proposed Keystone XL Pipeline's

> "potential to bolster U.S. energy security by providing additional infrastructure for the dependable supply of crude oil, its role in supporting, directly and indirectly, a significant number of U.S. jobs and provide increased revenues to local communities that will bolster the U.S. economy, its ability to reinforce our bilateral relationship with Canada, and its limited impact on other factors considered by the Department, all contribute to a determination that issuance of a Presidential permit for this proposed Project serves the national interest."  ROD/NID, § 6.0.

## III.   Other Federal Actions Regarding Keystone XL

In 2013, as the Department of State was releasing its Draft Supplemental EIS, it also issued a Biological Assessment and then engaged in consultation with

9

FWS according to the terms of Section 7(b) of the ESA, 16 U.S.C. §§ 1531 *et seq.*
That process concluded with the adoption of a Biological Opinion in May 2013.

TransCanada is awaiting final decisions by the U.S. Army Corps of
Engineers on applications involving sections 404 and 408(a) the Clean Water Act
("CWA"), 33 U.S.C. §§ 408(a), 1344.  Also, because the Keystone XL route
crosses approximately 46 miles of federal land administered by the Bureau of Land
Management ("BLM") in Montana, including the border crossing facilities from
Milepost 0.0 to Milepost 0.93, TransCanada must obtain a right-of-way and
authorization from BLM under the Mineral Leasing Act of 1920, as amended, 30
U.S.C. § 185(a).  TransCanada's BLM application is also pending.  Palmer Decl.
¶ 16.

## IV.    Plaintiffs' Complaint

After first filing suit on March 30, 2017, Plaintiffs filed their First Amended
Complaint for Declaratory and Injunctive Relief (Dkt. 38) on May 24, 2017 against
the United States Department of State, United States Department of the Interior,
and BLM, FWS, and individual officials (collectively, "Federal Defendants") to
challenge federal agency approvals for the Keystone XL Pipeline.

Plaintiffs make four claims for relief:  (1) Defendants State Department and
Under Secretary Shannon violated NEPA and the APA by preparing an inadequate
environmental analysis and by issuing the cross-border permit to Keystone XL

(Complaint, ¶¶ 140-146); (2) Defendants Interior Department, BLM, and Secretary Zinke "will be in violation of NEPA" and the Administrative Procedure Act by relying on the 2014 SEIS for the expected right of way for Keystone XL that BLM "could grant . . . within the next few months" (Complaint, ¶¶ 147-152); (3) Defendants State Department and Under Secretary Shannon violated the APA by issuing the March 23 cross-border permit and supporting ROD/NID without providing a reasoned explanation (Complaint, ¶¶ 153-157); and (4) Defendants Interior Department, FWS, and Secretary Zinke violated the Endangered Species Act ("ESA") and APA by concurring in the Biological Assessment determination and issuing a Biological Opinion that contained a "not likely to adversely affect" determination (Complaint, ¶¶ 158-166).

Plaintiffs seek declaratory and injunctive relief that would invalidate Keystone XL's federal permits and approvals and prevent TransCanada from performing any activity in furtherance of construction or operation of Keystone XL.  Plaintiffs assert that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus), 28 U.S.C. §§ 2201-2202 (declaratory judgment), and 5 U.S.C. §§ 701-706 (APA).  For the reasons stated below, Plaintiffs' claims should be dismissed pursuant to the Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6).

## STANDARDS FOR A MOTION TO DISMISS

The Federal Defendants' discussion at pages 5-6 of their Motion to Dismiss correctly sets forth the appropriate criteria for this Court to employ in ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) or Rule 12(b)(6).

## ARGUMENT

**I.**     **This Court Lacks Jurisdiction to Adjudicate Any Challenge to the State Department's Compliance with NEPA or Its Issuance of the Presidential Permit Because the Permit Is Not Agency Action**

Plaintiffs' first claim for relief alleges violations of NEPA, 42 U.S.C. §§ 4321 *et seq*., and the APA, 5 U.S.C. §§ 701-706.  Complaint, ¶¶ 140-146.  However, this Court does not have jurisdiction over this claim, and therefore, Plaintiffs' first claim should be dismissed pursuant to Rule 12(b)(1).[5]

The Plaintiffs did not write their complaint on a blank slate.  In the recent past, three different U.S. District Courts have found that a claim of NEPA violations in the context of the issuance of a Presidential permit for a trans-border oil pipeline is Presidential action and therefore not reviewable under the APA.  In *Sisseton-Wahpeton Oyate v. U.S. Dep't of State,* 659 F. Supp. 2d 1071, 1082 (D.S.D. 2009), the court held that issuance of a Presidential permit was presidential action, not "agency action" subject to judicial review under the APA.  Similarly, in

---

[5] Alternatively, Plaintiffs' failure to demonstrate a right to judicial review could be dismissed under 12(b)(6).

*NRDC*, many of the same plaintiffs as here learned that "agency action pursuant to a delegation of the President's inherent constitutional authority over foreign affairs is tantamount to an action by the President himself" and therefore, "presidential action is not subject to judicial review [under the APA].  658 F. Supp. 2d at 113. Also, in *White Earth Nation v. Kerry,* No. 14-4726, 2015 WL 8483278 (D. Minn. Dec. 9, 2015), the court found that the State Department's interpretation of its Presidential permits for another trans-border oil pipeline was in fulfillment of Presidential authority delegated to the Department in E.O. 13337, and therefore was beyond the reach of the APA.  For the reasons that follow, the Plaintiffs cannot surmount this unanimous body of precedent blocking their access to the Federal Courthouse.

As the United States asserted in its June 9 Motion to Dismiss (Dkt. 42-1, p. 6), because NEPA does not itself create a private right of action, Plaintiffs must identify another statute to establish this Court's jurisdiction to review the claim that the State Department's actions violate NEPA and the APA.  Although Plaintiffs invoke the federal question statute, the declaratory judgment statute, and the APA, none of these statutes provides a source of jurisdiction.

## A.    No Cause of Action Exists Under General Federal Jurisdiction Statutes

The federal question statute, 28 U.S.C. § 1331, does not by itself provide a cause of action.  *See, e.g.*, *DeVilbiss v. Small Bus. Admin.*, 661 F.2d 716, 718 (8th

13

Cir. 1981) (section 1331 is "merely jurisdictional" and does "not create any substantive right enforceable against the United States") (*citing United States v. Testan*, 424 U.S. 392, 400-02 (1976) (remaining citations omitted)).  Similarly, the declaratory judgment statute, 28 U.S.C. §§ 2201-2202, "is not an independent source of federal jurisdiction" but rather a grant of an additional remedy "the availability of [which] presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citation omitted).

Moreover, because the Complaint raises claims against the United States and federal officials acting in their official capacity, Plaintiffs must demonstrate that the United States, as sovereign, has consented to being sued.  *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("the United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction."); *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *FDIC v. Meyer*, 510 U.S. 471 (1994).  A waiver of sovereign immunity must be explicit and is to be construed strictly and narrowly.  *See, e.g.*, *Lane v. Pena*, 518 U.S. 187, 192 (1996) (a waiver of "sovereign immunity must be unequivocally expressed in statutory text" and will be "strictly construed, in terms of scope, in favor of the sovereign").  This requirement is independent from establishing subject matter jurisdiction.  Neither Section 1331, the declaratory judgment statute, NEPA, the APA, nor E.O. 13337 provide a waiver applicable to Plaintiffs' claims.  Thus,

Plaintiffs' failure to articulate a relevant waiver of sovereign immunity acts as an additional, independent barrier to establishing subject matter jurisdiction in this Court.

**B.     Plaintiffs Cannot Establish a Private Right of Action under NEPA or the APA to Challenge the State Department's Exercise of Presidentially Delegated Authority**

NEPA and the APA fail to provide Plaintiffs with a private right of judicial review.  It is well established that NEPA does not provide a private cause of action. *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1353 n.13 (9th Cir. 1994); *see also NRDC*, 658 F. Supp. 2d at 108; *Sisseton*, 659 F. Supp. 2d at 1079. Therefore, in order to enforce NEPA in this case, Plaintiffs must bring their NEPA challenges under the APA.  *See id.*

The APA authorizes review only of "final *agency* action" – but it is Presidential, not agency, action that is at issue in this case.  5 U.S.C. § 702.  It is well-settled that the President is not an "agency" within the meaning of the APA. *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992).  As a result, Presidential actions are not subject to APA review.  *See, e.g.*, *Dalton v. Specter*, 511 U.S. 462, 470 (1994); *NRDC*, 658 F. Supp. 2d at 111.  Thus, for example, APA Section 702 would not authorize judicial review of Plaintiffs' claims even if the President himself (rather than the State Department) made the national interest determination and issued the Presidential Permit.

15

The March 23, 2017 Record of Decision and National Interest Determination ("ROD/NID") explicitly stated as much, noting that although the State Department conducted its review of TransCanada's Presidential Permit application "in a manner consistent with NEPA," the determination to issue the permit "is Presidential action, made through the exercise of Presidentially delegated authorities, and therefore the requirements of [NEPA], [. . .], the [APA], and other similar laws and regulations that do not apply to Presidential actions are also inapplicable here."  ROD/NID, § 1.0.

Unlike some Executive Orders, E.O. 13337 is not tied to any statute, but is, instead, a delegation by the President of his inherent constitutional authority to manage foreign affairs.  Absent this Executive Order, the State Department would have no authority to issue a Presidential Permit for the Keystone Pipeline. Therefore, all of the actions undertaken pursuant to the Executive Order can only be subject to judicial review if the order creating these legal rights and responsibilities contemplates a private right of action to enforce its terms.  *See Jensen v. Nat'l Marine Fisheries Svc.*, 512 F.2d 1189, 1191 (9th Cir. 1975) (holding that the APA does not provide a jurisdictional basis for judicial review of agency action taken pursuant to an executive order delegating Presidential foreign affairs power).

16

In fact, E.O. 13337 expressly provides that it does "not[] create any right . . . substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, instrumentalities, or entities, its officers or employees, or any other persons." 69 Fed. Reg. at 25,301.  This disclaimer is consistent with settled judicial treatment of executive orders.  *See, e.g.*, *Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 14 F.3d 429, 445 (9th Cir. 1993) (finding nearly identical language "evinces clear and unequivocal intent that agency compliance with [the Executive Order] not be subject to judicial review") (quotations and citations omitted).  Moreover, because the Executive Order was not promulgated pursuant to statute and because Congress has not enacted a statutory scheme governing federal permitting for cross-border oil pipelines[6], the State Department's actions in issuing the ROD/NID and Presidential Permit fall within the set of cases where neither the APA nor any other statute provides a right of judicial review for the agency's compliance with NEPA.  *See NRDC*, 658 F. Supp. 2d at 111-12; *Sisseton*, 659 F. Supp. 2d at 1081.

Simply put, the issuance of the Presidential Permit and the Department's compliance with NEPA are unreviewable Presidential actions.  *See, e.g.*, *Jensen*,

---

[6] Unlike the construction of natural gas pipelines, which must be approved by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, Congress has not created a federal regulatory scheme for the construction of oil pipelines.  Nor has Congress acted to provide statutory authority for any federal agency to approve construction of oil pipelines that cross international borders.

17

512 F.2d at 1191 ("[f]or the purposes of this [case] the Secretary [of State]'s

actions are those of the President, and therefore by the terms of the APA the

[action] at issue here is not reviewable"); *NRDC*, 658 F. Supp. 2d at 111-13 ("to

challenge the issuance of a presidential permit, whether by the President himself or

by the State Department as the President's delegee, is to challenge a presidential

act, which is not reviewable under the APA"); *Sisseton*, 659 F. Supp. 2d at 1082

("[t]he court finds that the actions taken pursuant to [E.O.] 13337 are presidential

in nature, and therefore, do not confer upon the plaintiffs a private right of action

under the APA").

Because Plaintiffs' Complaint fails to articulate an applicable private right of

action, and therefore a basis for subject matter jurisdiction, this Court should

dismiss with prejudice Plaintiffs' first claim for relief.

## II.     This Court Lacks Jurisdiction to Adjudicate Any Claim that Defendants Acted Illegally Regarding a Right-Of-Way for the Keystone XL Pipeline Because There Has Been No Final Decision Granting or Denying the Application for That Right-Of-Way

Agency action is also missing from Plaintiffs' second claim for relief, which

alleges different violations of NEPA, 42 U.S.C. §§ 4321 *et seq*., and the APA, 5

U.S.C. §§ 701-706, than the first claim, basing it on conduct by the Bureau of Land

Management ("BLM").  Here, Plaintiffs allege that the BLM must undertake its

own independent review of the SEIS before granting any rights of way.

Complaint, ¶ 149 (citing 40 C.F.R. §§ 1508.5, 1506.3(c)).

Plaintiffs' second claim should be dismissed because there has been no final agency action that would make it susceptible to review under the APA.  Section 704 of the APA provides that "[a]gency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704 (emphasis added).  As Plaintiffs do not dispute, BLM has yet to reach a determination on rights of way for the proposed Keystone XL route across federal lands administered by BLM.  *See* Complaint, ¶¶ 150-151.  In the absence of such a final agency action by BLM, it is premature for Plaintiffs to bring this claim.  *See* 5 U.S.C. § 704.  Any decision by this Court would be purely advisory in nature.

## III. This Court Lacks Jurisdiction to Review the Merits of Whether TransCanada Should Receive this Presidential Permit

Northern Plains' third count alleges that the Department of State and its officials violated the APA and NEPA when, "[o]n March 23, the State Department reversed course and issued TransCanada a cross-border permit for Keystone XL, pursuant to a new record of decision and national interest determination in which the Department found that the pipeline would 'serve the national interest.'" (Complaint, ¶ 155).  Plaintiffs assert that the Department failed to explain its reasoning, particularly since the Department had come to a different conclusion in 2015, and that these failures violated both the APA and NEPA.

19

In essence, Northern Plains asks the Court to adjudicate a question of foreign relations that the President has delegated to a subordinate executive agency with expertise in this area.  There is no statute defining the "national interest" for approving a trans-border pipeline, and E.O. 13337 fails to provide decisional criteria for either the State Department or a reviewing court.  Thus, this process is one in which, as provided by Section 701(a)(2) of the APA, there is no law to apply.

The national interest determination at issue here requires Executive Branch consideration of factors that are often beyond the scope of judicial cognizance and are generally ill-suited for judicial review.  Thus, "even when Congress has not affirmatively precluded judicial oversight, 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"  *Webster v. Doe,* 486 U.S. 592, 599-600 (1988).

Plaintiffs' invocation of NEPA does not make judicial review more palatable.  Any procedural NEPA review this Court might undertake would necessarily be intertwined with the substantive rationale of the delegated Presidential determination and the national interest determination.  Northern Plains seeks to set the permit aside, even if doing so puts this Court in a position of directing the State Department to act contrary to its determination that the

Keystone XL Pipeline is in the national interest.  But Plaintiffs have provided no reason to second-guess the Department of State, based on "certain factors relating to our broad national welfare and other matters for which the Chief Executive has special responsibility" and involve "decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and [which has] long been held to belong in the domain of political power not subject to judicial intrusion or inquiry."  *C&S Air Lines v. Waterman S.S. Corp.,* 333 U.S. 103, 111 (1948).

## IV.   Plaintiffs' Fourth Claim Should Be Dismissed Because They Lack Standing and Have Not Stated Any Claim for Which Relief Can Be Granted

In its fourth claim for relief, Northern Plains argues that the FWS's concurrence with the State Department's "not likely to adversely affect" determination for whooping cranes, interior least terns, and piping plovers is a final agency action reviewable under the APA, and seeks to set aside the concurrence (Complaint, ¶¶ 159-166).  Whether viewed through the prism of constitutional standing or pursuant to *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) in a Rule 12(b) motion to dismiss, it is clear that Plaintiffs' highly generalized claims of harm lack the requisite specificity that would make them justiciable in federal court.

As argued by the Federal Defendants at pages 21-25 of their Motion to Dismiss, Plaintiffs lack standing to bring their fourth claim.  Indeed, Plaintiffs fail

to demonstrate all three elements of standing – injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992). First, Plaintiffs' generalized allegations are insufficient to demonstrate injury-in-fact. Plaintiffs fail to establish that any of their members possess an interest in the species at issue. (Complaint, ¶¶ 19-25). As Federal Defendants explain, "[t]here is simply no connection between Plaintiffs' generalized environmental interests and the challenge to the sufficiency of the consultation." (Dkt. 42-1, p. 23). Second, as Plaintiffs have failed to establish injury-in-fact, they cannot demonstrate causality between the Biological Opinion's alleged deficiencies and an injury to one of their members. Third, invalidation of the Biological Opinion cannot redress an injury that does not exist.

Moreover, the vague and generalized allegations in Northern Plains Count Four do not identify either the actual conduct alleged to be in violation of the Endangered Species Act or the location or timing of this conduct with sufficient specificity to state a claim under Rule 12(b)(6). Northern Plains' apprehensions are exactly that – generalized concerns about future events involving unnamed parties at unspecified locations over an unidentified time frame. This claim lacks the particularity and detail about the potential source of injury that would adversely affect these species. Thus, the complaint fails to include sufficient information to apprise the FWS of the claim asserted against it.

22

Under the holdings of the Supreme Court in *Iqbal* and *Twombly*, Northern Plains must do more than merely state that the law has been violated – it must plead sufficient facts to show that it has a plausible claim for relief. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . [are] not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

For the foregoing reasons, the Court should dismiss Plaintiffs' fourth claim against the FWS.

## CONCLUSION

WHEREFORE, TransCanada moves and respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Dated this 16th day of June, 2017.

CROWLEY FLECK PLLP

By ___/s/ Jeffery J. Oven_____
      Jeffery J. Oven
      Mark L. Stermitz
      Jeffrey M. Roth
490 North 31st Street, Ste 500
P.O. Box 2529
Billings, MT 59103-2529

SIDLEY AUSTIN LLP

By ___/s/  Peter R. Steenland, Jr._____
      Peter R. Steenland, Jr.
      Lauren C. Freeman
1501 K Street, N.W.
Washington, D.C.  20005
*Counsel for TransCanada Keystone Pipeline, LP
and TransCanada Corporation*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2) of the United States Local Rules, I certify that

this Brief contains 5,460 words, excluding caption and certificates of service and

compliance, printed in at least 14 points and is double spaced, including for

footnotes and indented quotations.

DATED this 16th day of June, 2017.

By     /s/ Jeffery J. Oven

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the following

counsel of record, by the means designated below, this 16th day of June, 2017:

| | |
|---|---|
| 1 - 9 | CM/ECF |
| _____ | Hand Delivered |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-mail |

1.    Clerk of U.S. District Court

2.    Cecilia D. Segal
NATURAL RESOURCES DEFENSE COUNCIL - San Francisco
111 Sutter Street, Floor 21
San Francisco, CA 94104
*Attorneys for Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council, Sierra Club*

3.    Selena Kyle
NATURAL RESOURCES DEFENSE COUNCIL - Chicago
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
*Attorneys for Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council*

4.    Timothy M. Bechtold
BECHTOLD LAW FIRM
PO Box 7051
Missoula, MT 59807-7051
*Attorneys for Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council, Sierra Club*

26

5.     Amy R. Atwood
       CENTER FOR BIOLOGICAL DIVERSITY - PORTLAND
       PO Box 11374
       Portland, OR 97211-0374
       *Attorneys for Bold Alliance, Center for Biological Diversity, Friends of the
       Earth, Natural Resources Defense Council, Sierra Club*

6.     Douglas P. Hayes
       SIERRA CLUB
       1650 38th Street
       Suite 102W
       Boulder, CO 80301
       *Attorneys for Sierra Club*

7.     Eric E. Huber
       SIERRA CLUB
       Environmental Law Program
       1650 38th St.
       Suite 102W
       Boulder, CO 80301
       *Attorneys for Sierra Club*

8.     Luther L. Hajek
       U.S. DEPARTMENT OF JUSTICE - DENVER
       South Terrace, Suite 370
       999 18th Street
       Denver, CO 80202
       *Attorneys for Thomas A. Shannon, Jr., US Department of State, Ryan Zinke,
       US Department of the Interior and Bureau of Land Management*

9.     Mark Steger Smith
       U.S. ATTORNEY'S OFFICE - BILLINGS
       2601 Second Avenue North
       Suite 3200
       Billings, MT 59101
       *Attorneys for Thomas A. Shannon, Jr., US Department of State, Ryan Zinke,
       US Department of the Interior and Bureau of Land Management*

                                    By    /s/ Jeffery J. Oven