Timothy M. Bechtold (Montana Bar No. 4376)
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net
Attorney for Plaintiffs
(additional counsel listed on signature pages)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, BOLD ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, FRIENDS OF THE EARTH, NATURAL RESOURCES DEFENSE COUNCIL, INC., and SIERRA CLUB, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS A. SHANNON, JR., in his official capacity; U.S. DEPARTMENT OF STATE; RYAN ZINKE, in his official capacity; U.S. DEPARTMENT OF THE INTERIOR; U.S. FISH AND WILDLIFE SERVICE, <br><br> Defendants, <br><br> TRANSCANADA CORPORATION and TRANSCANADA KEYSTONE PIPELINE LP, <br><br> Intervenor-Defendants. | CV 17-31-GF-BMM <br><br> **Plaintiffs' Combined Opposition to Defendants' Supplemental Motions to Dismiss** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ...............................................................................................2

STANDARD OF REVIEW .................................................................................3

ARGUMENT .....................................................................................................3

I.      The State Department is not immune to Plaintiffs' ESA claim ......................3

        A.      The ESA's waiver of sovereign immunity for agency actions
                applies because the State Department, not the President, issued the
                cross-border permit for Keystone XL ...............................................4

        B.      Even if the State Department's decision to issue the cross-border
                permit could be characterized as presidential, sovereign immunity
                is still waived under the ESA .........................................................9

II.     Plaintiffs have standing to bring their ESA claim against the State
        Department ................................................................................14

        CONCLUSION ...................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Ancient Coin Collectors Guild v. U.S. Customs & Border Protection*,
  801 F. Supp. 2d 383 (D. Md. 2011)................................................................11

*Armstrong v. Bush*,
  924 F.2d 282 (D.C. Cir. 1991)......................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................16

*Bates v. United States*,
  522 U.S. 23 (1997)..................................................................................12, 13

*Bennett v. Spear*,
  520 U.S. 154 (1997)......................................................................................10

*Cantrell v. City of Long Beach*,
  241 F.3d 674 (9th Cir. 2001) .......................................................................16

*Cascadia Wildlands v. Kitzhaber*,
  911 F. Supp. 2d 1075 (D. Or. 2012).............................................................17

*Center for Biological Diversity v. Environmental Protection Agency*,
  No. 11-CV-00293-JCS, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013)........17

*Center for Biological Diversity v. Mattis*,
  No. 15-15695, 2017 WL 3585638 (9th Cir. Aug. 21, 2017).........................22

*Churchill County v. Babbitt*,
  150 F.3d 1072 (9th Cir. 1998),
  *amended on denial of reh'g*, 158 F.3d 491...................................................19

*Ecological Rights Foundation v. Pacific Lumber Co.*,
  230 F.3d 1141 (9th Cir. 2000) .................................................................17, 19

*Environmental Protection Information Center v. Simpson Timber Co.*,
  255 F.3d 1073 (9th Cir. 2001) ......................................................................12

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)....................................................................................11

*Karuk Tribe of California v. U.S. Forest Service*,
    681 F.3d 1006 (9th Cir. 2012) .......................................................................7

*Lane County Audubon Society v. Jamison*,
    958 F.2d 290 (9th Cir. 1992) ..........................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................15, 16, 18

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990).............................................................................18, 19

*National Association of Home Builders v. Defenders of Wildlife*,
    551 U.S. 644 (2007)..............................................................................6, 7, 8

*National Wildlife Federation v. Burford*,
    835 F.2d 305 (D.C. Cir. 1987).......................................................................18

*Natural Resources Defense Council v. Jewell*,
    749 F.3d 776 (9th Cir. 2014) .............................................................7, 15, 21

*Pacific Rivers Council v. Thomas*,
    30 F.3d 1050 (9th Cir. 1994) ..........................................................................6

*Palila v. Hawaii Department of Land & Natural Resources*,
    471 F. Supp. 985 (D. Haw. 1979)....................................................10, 13, 14

*Russello v. United States*,
    464 U.S. 16 (1983)........................................................................................13

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ..........................................................20, 21, 22

*South Yuba River Citizens League v. National Marine Fisheries Service*,
    629 F. Supp. 2d 1123 (E.D. Cal. 2009) .........................................................14

*Tennessee Valley Authority v. Hill,*
      437 U.S. 153 (1978)..................................................................6, 8, 9, 13

*U.S. Department of Energy v. Ohio,*
      503 U.S. 607 (1992).......................................................................13

*Washington Toxics Coalition v. Environmental Protection Agency,*
      413 F.3d 1024 (9th Cir. 2005) .......................................................11

*Western Watersheds Project v. Kraayenbrink,*
      632 F.3d 472 (9th Cir. 2011) .........................................................10

**Statutes**

Administrative Procedure Act

5 U.S.C. § 701(b)(1)...............................................................................11

5 U.S.C. § 706(2)(A)..............................................................................10

Endangered Species Act

16 U.S.C. § 1532(a)(2)..............................................................................8

16 U.S.C. § 1532(13) .............................................................................10

16 U.S.C. § 1532(15) .............................................................................12

16 U.S.C. § 1536 (1976 ed.) .....................................................................6

16 U.S.C. § 1536(a) ..................................................................................2

16 U.S.C. § 1536(a)(2)...........................................................................2, 6

16 U.S.C. § 1536(b)(4)(C)......................................................................21

16 U.S.C. § 1536(e)(3)(G) ......................................................................13

16 U.S.C. § 1536(o)(2)............................................................................21

16 U.S.C. § 1536(p) ..................................................................13

16 U.S.C. § 1540(g)(1)(A) ....................................................*passim*

16 U.S.C. § 1540(g)(1)(C) ........................................................12

16 U.S.C. § 1540(g)(2)(A) ..........................................................3

Comprehensive Environmental Response, Compensation, and Liability Act

42 U.S.C. § 9659(a)(1) ..............................................................11

42 U.S.C. § 9659(a)(2) ..............................................................12

## Regulations

50 C.F.R. § 402.02 ....................................................................8

50 C.F.R. § 402.02(c) ................................................................6

50 C.F.R. § 402.02(d) ................................................................6

50 C.F.R. § 402.03 ....................................................................6

50 C.F.R. § 402.12(k) ..............................................................20

50 C.F.R. § 402.13(a) ................................................................2

50 C.F.R. § 402.14(a) ..............................................................20

50 C.F.R. § 402.14(b) ..............................................................20

50 C.F.R. § 402.14(h)(3) ..........................................................21

50 C.F.R. § 402.14(i)(1) ............................................................21

## Other Authorities

January 24, 2017 Trump Memorandum ............................................................5, 7, 8

March 23, 2017 Permit for Keystone XL ..........................................................8, 20

**INTRODUCTION**

The construction and operation of Keystone XL will harm three bird species protected under the Endangered Species Act (ESA): the whooping crane, the interior least tern, and the piping plover. Plaintiffs' fifth claim for relief challenges the U.S. Department of State's and Under Secretary Shannon's (collectively, the State Department's) biological assessment, which erroneously concludes that the project is "not likely to adversely affect" these species, and the Department's resulting failure to formally consult with the U.S. Fish and Wildlife Service (Service). That consultation could have led the State Department to deny the permit altogether, or to condition the permit on specific and enforceable mitigation measures to protect the birds.

Defendants' jurisdictional arguments are unavailing. The ESA waives sovereign immunity for agency actions, such as the State Department's discretionary decision to approve the cross-border permit for Keystone XL. It makes no difference that the Department's authority to grant the permit stems from an executive order. And even if the decision could somehow be characterized as "presidential," the ESA waives sovereign immunity for claims against "any person," a broad waiver that encompasses the President.

Plaintiffs have also adequately pleaded standing. They have described, in detail, how their members who enjoy observing and studying the bird species at

issue would be harmed by Keystone XL. Nothing more is required at this stage.

Furthermore, Plaintiffs' injuries are redressable. The Court has the power to set

aside the permit authorizing Keystone XL, and even if it did not, it could

nonetheless order the State Department to prepare an adequate biological

assessment and formally consult with the Service regarding the project's impacts

on the birds. Accordingly, Defendants' supplemental motions to dismiss should be

denied.

## BACKGROUND

Plaintiffs incorporate by reference the background set forth in their

combined opposition to Defendants' original motions to dismiss. *See* Pls.'

Combined Opp'n to Defs.' Mots. to Dismiss (Combined Opp'n), ECF No. 51, at

13-17.[1]

On August 4, Plaintiffs amended their complaint to add a fifth claim for

relief against the State Department for erroneously determining that Keystone XL

is "not likely to adversely affect" the critically endangered whooping crane,

endangered interior least tern, and threatened piping plover, in violation of ESA

section 7(a)(2). *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.13(a). Because this

claim arises under the ESA's citizen suit provision, Plaintiffs were required to

provide Defendants with at least sixty days' written notice of their intent to file

---

[1] Citations to filed documents use the ECF page numbering.

such a claim. *See* 16 U.S.C. § 1540(g)(2)(A)(i). Plaintiffs provided Defendants the required notice on May 24, 2017; a copy of the notice letter is attached to the Third Amended Complaint. Third Am. Compl., ECF No. 58, ¶ 16; *id.*, Ex. A, ECF No. 58-1.

Defendants filed supplemental motions to dismiss the fifth claim on August 18, 2017. TransCanada Mem. in Supp. of Suppl. Mot. to Dismiss (TransCanada Suppl. Mem.), ECF No. 60; Fed. Defs.' Mem. in Supp. of Suppl. Mot. to Dismiss (Fed. Suppl. Mem.), ECF No. 62.

## STANDARD OF REVIEW

Plaintiffs incorporate by reference the standard of review set forth in their combined opposition to Defendants' original motions to dismiss, Combined Opp'n at 17-18, and agree with the federal Defendants' characterization of the relevant legal standards, Fed. Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 42-1, at 13-14.

## ARGUMENT

### I. The State Department is not immune to Plaintiffs' ESA claim

Plaintiffs challenge the State Department's determination that Keystone XL is "not likely to adversely affect" three bird species protected under the ESA. This determination was erroneous, made without sufficient support, and failed to rely on the best available science, in violation of ESA section 7(a)(2). Third Am. Compl.

¶¶ 173-78. Plaintiffs' claim is properly brought under the ESA's citizen suit provision, which allows suits against "any person, including the United States and any other governmental instrumentality or agency." 16 U.S.C. § 1540(g)(1)(A).

In an attempt to insulate the State Department's inadequate analysis and unlawful approval from review, Defendants now argue that sovereign immunity bars any citizen ESA claims against the State Department for issuing the cross-border permit for Keystone XL. Defendants' arguments are contrary to the spirit and language of the ESA and its implementing regulations. First, Defendants' argument that the ESA does not waive sovereign immunity for presidential actions is irrelevant because there is no presidential action here. The State Department issued this permit. Second, even if there were presidential action, the ESA's waiver of sovereign immunity would still apply to this suit.

### A. The ESA's waiver of sovereign immunity for agency actions applies because the State Department, not the President, issued the cross-border permit for Keystone XL

Defendants contend that the ESA's citizen suit provision does not waive sovereign immunity for claims against the President. There is, however, a glaring problem with Defendants' position: Plaintiffs have not brought any claims against the President. Rather, Plaintiffs' claims are against the State Department regarding a decision made entirely by that agency. Defendants do not dispute that the ESA's waiver of sovereign immunity applies to "agencies," including the State

Department. *See* 16 U.S.C. § 1540(g)(1)(A); TransCanada Suppl. Mem. at 5 (conceding that "[i]f agency action were at issue here, the ESA citizen suit provision might supply the appropriate jurisdictional basis").[2] Yet Defendants have failed to cite a single case where that waiver did not apply to an agency simply because the agency acted pursuant to an executive order.

As detailed in Plaintiffs' combined opposition to Defendants' original motions to dismiss, the State Department's decision to issue a cross-border permit for Keystone XL was final agency action. Combined Opp'n at 18-41. The State Department, not the President, took the last, discretionary step in deciding whether to issue the permit. *See id.* In fact, President Trump's January 24, 2017, memorandum on Keystone XL specifically instructed the State Department to make the final decision on TransCanada's permit application, and waived the provision that would have allowed for referral of that decision to the President. *Id.* at 22-23, 25-26; *see also* Trump Memorandum, ECF No. 42-7, § 3(a)(i), (iv). Accordingly, the State Department's review and approval of Keystone XL cannot be characterized as presidential, regardless of the source of the agency's authority.

That the State Department's decision to issue the cross-border permit was agency action is all the more apparent in the context of the ESA. Section 7 of the

---

[2] Defendants also do not appear to dispute that the waiver generally applies to "person[s]" other than the President, such as defendant Under Secretary Shannon.

ESA "affirmatively command[s] all federal agencies 'to *insure* that actions *authorized, funded,* or *carried out* by them do not *jeopardize* the continued existence'" of listed species. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 173 (1978) (quoting 16 U.S.C. § 1536 (1976 ed.)); *see also* 16 U.S.C. § 1536(a)(2). The definition of agency "action" includes "the granting of . . . permits," as well as "actions directly or indirectly causing modifications to the land, water, or air." 50 C.F.R. § 402.02(c), (d). As the Ninth Circuit has repeatedly recognized, Congress intended this definition to be construed broadly. *See, e.g.*, *Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1054 (9th Cir. 1994); *Lane Cty. Audubon Soc'y v. Jamison*, 958 F.2d 290, 294 (9th Cir. 1992). Here, the State Department's issuance of the cross-border permit for Keystone XL meets the ESA's broad definition of agency action, and therefore the Department's action falls within the scope of the ESA's sovereign immunity waiver. 16 U.S.C. § 1540(g)(1)(A).

The ESA's implementing regulations also make clear that agencies must comply with section 7 for "all actions in which there is discretionary Federal involvement or control." 50 C.F.R. § 402.03. Consistent with this provision, the Supreme Court has held that the ESA "applies to every discretionary agency action—regardless of the expense or burden its application might impose." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661 (2007) (emphasis omitted). The Court reasoned that, where an agency has the discretion to prevent a

particular effect, and can therefore be considered a "legally relevant cause" of that effect, the agency's actions are subject to ESA section 7. *Id*. at 667-68 (internal quotation marks omitted). The Ninth Circuit has further explained that "Section 7(a)(2)'s consultation requirement is triggered so long as a federal agency retains 'some discretion' to take action for the benefit of a protected species." *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 784 (9th Cir. 2014) (en banc); *see also Karuk Tribe of Cal. v. U.S. Forest Serv*., 681 F.3d 1006, 1026-27 (9th Cir. 2012) ("Under our established case law, there is 'agency action' sufficient to trigger the ESA consultation duty whenever an agency makes an affirmative, discretionary decision about whether, or under what conditions, to allow private activity to proceed."). An agency lacks such discretion "only if another legal obligation makes it impossible for the agency to exercise discretion for the protected species' benefit." *Jewell*, 749 F.3d at 784.

Here, there can be no doubt that the State Department retained full discretion over the decision of whether, and how, to issue the cross-border permit for Keystone XL. The Trump Memorandum directed the State Department to "reach [the] final permitting determination, including a final decision as to any conditions on issuance of the permit," and waived the provision that would have allowed for final review by the President himself. Trump Memorandum § 3(a)(i), (iv). The State Department unquestionably had the discretion not only to issue the permit,

but also to condition that permit to protect listed species and to avoid unlawful take or jeopardy. *Id.*; *see also* Cross-Border Permit, ECF No. 42-8, at 5. The State Department's decision to issue the permit is therefore a "legally relevant cause" of the project's harm to listed species. *See Nat'l Ass'n of Home Builders*, 551 U.S. at 667 (internal quotation marks omitted). As such, the decision was discretionary agency action within the meaning of the ESA.

That the State Department issued the permit pursuant to delegated presidential authority does not change this conclusion. Nothing in the ESA refers to the source of the agency's powers or implies that the source might be relevant. *See* 16 U.S.C. §§ 1532(a)(2), 1540(g)(1)(A); 50 C.F.R. § 402.02. And Defendants have not identified a single case holding that the applicability of the ESA's citizen-suit provision and waiver of sovereign immunity depends on the source of the agency's powers.

Requiring the State Department to comply with the ESA in permitting this massive oil pipeline furthers the purpose and spirit of the statute. In enacting the ESA, "Congress intended endangered species to be afforded the highest of priorities." *Tenn. Valley*, 437 U.S. at 174. The legislative history underlying section 7 likewise "reveals an explicit congressional decision to require agencies to afford first priority to the declared national policy of saving endangered species," *id.* at 185, and makes clear that the provision "would, on occasion, require agencies

to alter ongoing projects in order to fulfill the goals of the Act," *id.* at 186. To effectuate these goals, section 7(a)(2) and its implementing regulations set forth a detailed process that agencies must follow before taking or approving actions that might jeopardize listed species. Third Am. Compl. ¶¶ 51-61. Shielding the State Department's decision to issue a permit for Keystone XL based on the source of the agency's authority would undermine the purpose and goals of the ESA and set a dangerous precedent.

Because the State Department's issuance of the cross-border permit for Keystone XL was agency—not presidential—action, the ESA's waiver of sovereign immunity applies and this Court has jurisdiction over Plaintiffs' fifth claim for relief.

### B. Even if the State Department's decision to issue the cross-border permit could be characterized as presidential, sovereign immunity is still waived under the ESA

This Court need not decide whether the ESA citizen suit provision's sovereign immunity waiver applies to the President, because no claims have been brought against him. But even if this Court were to find that the issuance of the cross-border permit was a "presidential action," the ESA's sovereign immunity waiver still would apply.

The ESA's citizen suit provision is broad: it allows a plaintiff "to enjoin *any person*, including the United States and any other governmental instrumentality or

agency (to the extent permitted by the eleventh amendment to the Constitution),

who is alleged to be in violation" of the Act. 16 U.S.C. § 1540(g)(1)(A) (emphasis

added). "Person," in turn, includes "*any officer, employee, agent*, department, or

instrumentality of the Federal Government." *Id.* § 1532(13) (emphasis added).

Congress "spoke[] clearly": the provision "expressly authorizes private citizens to

bring suit enjoining a general class of defendants who violate the Act." *Palila v.

Haw. Dep't of Land & Nat. Res.*, 471 F. Supp. 985, 997 (D. Haw. 1979). By its

plain terms, the ESA's citizen suit provision encompasses all federal government

actors, including the President and agencies acting under his authority. Defendants

cite no case that holds otherwise.

Defendants' reliance on cases construing the APA definition of "agency" is

misplaced. Fed. Suppl. Mem. at 6-7; TransCanada Suppl. Mem. at 5. The APA is

irrelevant here because Plaintiffs' fifth claim against the State Department is

brought under the ESA citizen suit provision, not the APA.[3] Several courts have

recognized this distinction. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 173-77

(1997); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495-96 (9th Cir.

---

[3] ESA claims are, however, governed by the APA's standard of review. *See* 5 U.S.C. § 706(2)(A) (allowing the court to set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). Although this has been the source of some confusion, the Ninth Circuit has made clear that the application of the APA's review standard does not subject ESA citizen suit claims to other APA-based limitations (i.e., record review). *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495-97 (9th Cir. 2011).

2011) ("Because Plaintiffs'[] claim is available under the ESA, this court looks to the ESA and not to the APA."); *Wash. Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("Because [the ESA] independently authorizes a private right of action, the APA does not govern the plaintiffs' claims."). Therefore, *Franklin v. Massachusetts*, 505 U.S. 788 (1992), *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991), and *Ancient Coin Collectors Guild v. U.S. Customs & Border Protection*, 801 F. Supp. 2d 383 (D. Md. 2011), are distinguishable; those out-of-Circuit decisions merely reiterate that the President is not an "agency" within the meaning of the APA, and have no bearing on whether the President is subject to the ESA's citizen suit provision authorizing suits against "any person." *Compare* 5 U.S.C. § 701(b)(1), *with* 16 U.S.C. § 1540(g)(1)(A).

Defendants' reliance on the citizen suit provision in the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) is similarly unpersuasive. That CERCLA's citizen suit provision specifically names the President simply reflects the structure of that act as compared to the ESA. Both CERCLA and the ESA allow citizen suits against "any person" in "violation of" the respective acts. 42 U.S.C. § 9659(a)(1); 16 U.S.C. §1540(g)(1)(A). Both statutes separately provide for maladministration suits against the *administrators* of the acts: the President and the Administrator of the U.S. Environmental Protection Agency for CERCLA, and the Secretary of the Interior and the Secretary of

Commerce for the ESA. 42 U.S.C. § 9659(a)(2); 16 U.S.C. §§ 1532(15), 1540(g)(1)(C). Subsection (a)(2) of CERCLA's citizen suit provision specifically mentions the President only because the President is an administrator of that statute. 42 U.S.C. § 9659(a)(2). It is no wonder, then, that the President is not mentioned in the ESA citizen suit provision, as the President has no such role.

Furthermore, that Congress named a specific defendant in one subsection of a citizen suit provision has no implication for the other subsections. For example, the Ninth Circuit has recognized that citizens can sue the Fish and Wildlife Service, a subagency of the Department of the Interior, under either 16 U.S.C. § 1540(g)(1)(A) (direct violation by "any person") or 16 U.S.C. § 1540(g)(1)(C) (maladministration by the "Secretary"), depending on the agency's role, even though the Secretary of the Interior is mentioned only in the latter subsection. *See Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001). In sum, CERCLA's specific mention of the President in subsection (a)(2) of the act's citizen suit provision does not evince an intent to bar suits against the President under subsection (a)(1) of that act, let alone under any section of the ESA, an entirely separate statute.

In any event, the canon of statutory interpretation regarding omitted language applies only where the omission appears in the "same Act." *Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("[W]here Congress includes particular

language in one section of a statute but omits it in another section of the *same Act*, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (emphasis added) (internal quotation marks omitted)); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) (same); TransCanada Suppl. Mem. at 6 (quoting *Bates*). Defendants' comparison to CERCLA is therefore inapposite. And while the ESA mentions the President in sections regarding disaster relief and the "God Squad," *see* 16 U.S.C. § 1536(e)(3)(G), (p), those sections have nothing to do with sovereign immunity or citizen suits, and do not imply an intent to exclude the President from the ESA's broad waiver for "any person." Instead, these other references to "the President" show that if Congress had intended to exclude the President from the Act's explicit waiver of immunity for "any person," it could have done so.

To allow Defendants to shield "presidential" action under sovereign immunity would frustrate the ESA's goals and contravene that statute's plain language. While courts have found that sovereign immunity must be interpreted "strictly in favor of the sovereign," *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992), they have also sought to balance this principle against Congress's intent to make endangered species protection "the highest of priorities," *Tenn. Valley*, 437 U.S. at 174. For example, in *Palila*, 471 F. Supp. 985, the court held that the ESA citizen suit provision's reference to the Eleventh Amendment does

not create a "blanket sovereign immunity exception to the private enforcement of the Endangered Species Act" because that "would seriously impair the achievement of the broad Congressional purposes underlying the Act and would lead to a right without an effective remedy." *Id.* at 997. And in *South Yuba River Citizens League v. National Marine Fisheries Service*, 629 F. Supp. 2d 1123 (E.D. Cal. 2009), the court rejected Defendants' "plausible" interpretation of the ESA citizen suit provision, which would have narrowed the scope of that provision's waiver of sovereign immunity, in order to "give greater weight to the protective purpose of the ESA and to the Ninth Circuit's history of application and interpretation of the statute." *Id.* at 1135.

In sum, no law supports Defendants' argument that the President is excluded from the ESA's broad waiver of sovereign immunity. Defendants' argument that sovereign immunity extends to agency actions whenever the President *delegates* authority to that agency is even more tenuous. For all these reasons, the Court should reject Defendants' attempt to apply sovereign immunity here.

## II.    Plaintiffs have standing to bring their ESA claim against the State Department

Plaintiffs' fifth claim alleges that the State Department violated ESA section 7 by making an erroneous "not likely to adversely affect" finding for the whooping crane, interior least tern, and piping plover, and failing to ensure that these

protected species will not be jeopardized by Keystone XL.[4] Third Am. Compl. ¶¶ 173-78. Plaintiffs have pleaded—with particularity far exceeding what is required by law—the three elements of standing: injury, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Indeed, because Plaintiffs claim a procedural injury, their burden to show causation and redressability is relaxed. *Jewell*, 749 F.3d at 783 ("[V]iolations of [ESA] Section 7(a)(2)'s consultation requirement constitute a procedural injury for standing purposes."). Plaintiffs therefore have standing to bring their fifth claim.

As to injury, Plaintiffs have explained how the State Department's violations of the ESA would harm their members. The Third Amended Complaint states that Plaintiffs have members who study and enjoy observing the whooping crane, interior least tern, and piping plover. Third Am. Compl. ¶ 27. One member "has visited crane, tern, and plover habitat in South Dakota and Nebraska, including habitat along major rivers the pipeline would cross (such as the Missouri and Platte)" and has "seen terns and plovers there." *Id.* This member "plans to return to

---

[4] Plaintiffs allege that both the Service (fourth claim) and the State Department (fifth claim, added in the Third Amended Complaint because of the sixty-day notice letter requirement) violated section 7 of the ESA. Third Am. Compl. ¶¶ 164-78. Although Defendants' supplemental motions to dismiss address the fifth claim against the State Department, the federal Defendants reference similar arguments made in their original motion. Fed. Suppl. Mem. at 9. Likewise, Plaintiffs' standing arguments in this brief and their previous opposition brief, Combined Opp'n at 42-47, apply to both the fourth and fifth claims.

these areas to continue observing the[se] birds" in the future. *Id.* Another member "has devoted his career to studying the whooping crane and other migratory birds in Nebraska, South Dakota, and Montana," and plans to continue to do so. *Id.* Keystone XL and its supporting power lines would threaten the species' survival and recovery and, by extension, the professional, recreational, conservational, and aesthetic interests of Plaintiffs' members. *Id.* ¶ 30.[5] Courts routinely recognize these types of harms as injuries supporting standing. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. at 562-63; *Cantrell v. City of Long Beach*, 241 F.3d 674, 680-82 (9th Cir. 2001).

Plaintiffs' injuries are also traceable to the State Department's ESA violations. The pipeline would cross the birds' migratory routes. Third Am. Compl. ¶ 27. Its construction (including the construction of associated power lines) would threaten the bird species' survival and recovery by creating new collision hazards, and by fragmenting and polluting habitat. *Id.* ¶¶ 77-89. Indeed, power line collisions are the primary cause of death for whooping cranes, of which there are fewer than 350 in the main surviving wild population—a number far below viability. *Id.* ¶¶ 78, 80.

---

[5] In deciding a motion to dismiss, a court assumes the truth of the plaintiffs' factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

TransCanada asserts that Plaintiffs have provided only a "formulaic recitation of the elements" of standing, TransCanada Suppl. Mem. at 10-11, but the Third Amended Complaint goes far beyond simply reciting the elements. It includes numerous facts linking the State Department's inadequate analysis under the ESA to the resulting harm to Plaintiffs' members. *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) (finding standing when there was "no attenuated chain of conjecture" necessary to "link" violations of law to injuries). The agency's failure to implement appropriate conservation measures through formal consultation means that the construction of Keystone XL is much more likely to harm cranes, terns, and plovers, which in turn means that the members who enjoy viewing and studying those species will be harmed. Third Am. Compl. ¶¶ 27, 30-31, 138, 173-178.

TransCanada cites *Cascadia Wildlands v. Kitzhaber* to argue that Plaintiffs' allegations are too vague, TransCanada Suppl. Mem. at 11, but in that case the plaintiffs alleged broad categorical claims against unspecified agency "defendants," 911 F. Supp. 2d 1075, 1083-84 (D. Or. 2012). Here, Plaintiffs' fifth claim is solely against the State Department. This case is also distinguishable from *Center for Biological Diversity v. Environmental Protection Agency*, No. 11-CV-00293-JCS, 2013 WL 1729573, at *13 (N.D. Cal. Apr. 22, 2013), where the plaintiffs failed to allege sufficient facts for each of the nearly 400 separate

pesticide approval decisions challenged. Here, Plaintiffs have alleged sufficient facts for each State Department action at issue: the issuance of the permit and the preparation of the inadequate biological assessment (and the resulting failure to formally consult).

The federal Defendants argue that alleging that members recreate "near" the project path is not specific enough, but both *Lujan* decisions they rely on involved motions for summary judgment, not motions to dismiss. Fed. Suppl. Mem. at 7 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. at 561); Fed. Reply in Supp. of Mot. to Dismiss, ECF No. 56, at 30 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-84 (1990)). Allegations that organization's members use resources "in the 'vicinity' of the land" affected by the challenged agency action "are sufficiently specific for purposes of a motion to dismiss." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 313 (D.C. Cir. 1987). As the Supreme Court later explained, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 889).

Further, given the specific facts of this case, recreating near the proposed project is more than sufficient. Plaintiffs need not show that their members recreate

within the fifty-foot right of way corridor for the pipeline (or within the wider construction corridor, or space that will be occupied by the supporting pump stations and power lines) because the birds are not confined to those areas—they migrate over that land to other areas nearby. Likewise, an oil spill would not be confined to the right of way, but could enter rivers and streams and affect a much broader area. This is unlike *Lujan v. National Wildlife Federation*, where the alleged injury was based on harm to the land itself. 497 U.S. at 886-89. As the Ninth Circuit later put it, "*National Wildlife Federation* did not hold that all plaintiffs have to use the lands directly affected by the challenged action. Rather, it held that vague allegations of injury were insufficient for standing when unsupported by any specific showing that the plaintiffs' use of land was affected by the challenged decision." *Churchill Cty. v. Babbitt*, 150 F.3d 1072, 1080 (9th Cir. 1998), *amended on denial of reh'g*, 158 F.3d 491; *see also Ecol. Rights Found.*, 230 F.3d at 1148 (distinguishing the *Lujan* decisions as involving "extremely vague" or "extremely speculative" allegations that "failed to show any tangible, continuing connection to any particular location affected by the challenged decision").[6] Plaintiffs have therefore sufficiently pleaded facts showing

---

[6] Although it is not required at this pleading stage, Plaintiffs are prepared to submit their member declarations should the Court find that additional information is required. *See* Combined Opp'n at 47.

that the State Department's actions will cause specific harm to the interests of Plaintiffs' members.

Plaintiffs' injuries are also redressable. As explained above and in Plaintiffs' Combined Opposition, the Court can set aside the cross-border permit because the issuance of that permit is a State Department, not presidential, action. *See supra* section I.A.; Combined Opp'n at 18-41. The permit says that it is unilaterally revocable by State Department officials. Cross-Border Permit at 3 ("This permit may be terminated or amended at any time at the discretion of the Secretary of State or the Secretary's delegate or upon proper application therefor."). This case is therefore unlike *Salmon Spawning*, in which the Ninth Circuit found that the plaintiffs lacked standing for two of their ESA claims because the court could not order the State Department to set aside a treaty with Canada. *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225-27 (9th Cir. 2008); *see also* Combined Opp'n at 41-42.

Furthermore, Plaintiffs' harms would be redressable even if Defendants were correct that this Court could not set aside the cross-border permit. The State Department's biological assessment incorrectly and arbitrarily concluded that the pipeline and its associated facilities, such as power lines, were "not likely to adversely affect" the crane, tern, and plover. A court order setting aside that determination as unlawful would compel the State Department to engage in formal

consultation with the Service. *See* 50 C.F.R. §§ 402.14(a)-(b), 402.12(k). If, after preparing a biological opinion, the Service determined that the project would likely jeopardize the protected species, it would prescribe "reasonable and prudent alternatives" to avoid such a result. *Id.* § 402.14(h)(3). Alternatively, if the Service concluded that the project was not likely to jeopardize listed species, it would issue an incidental take statement authorizing the project's expected take and set forth "reasonable and prudent measures" to minimize harm to the species. 16 U.S.C. § 1536(b)(4)(C)(ii), (iv); *id.* § 1536(o)(2); 50 C.F.R. § 402.14(i)(1)(ii), (iv). Either way, formal consultation would redress harms that Plaintiffs and their members will suffer absent the State Department's compliance with ESA section 7. *See Jewell*, 749 F.3d at 784-85 (adequate consultation could lead to better protections for delta smelt).

Defendants cite *Salmon Spawning* for the proposition that Plaintiffs' claims are not redressable, but that case supports Plaintiffs. The Ninth Circuit found that the plaintiffs lacked standing for two causes of action because the injuries stemmed from an international treaty the court had no power to set aside. 545 F.3d at 1228-29. As discussed above, however, this Court has authority to revoke the cross-border permit for Keystone XL. Furthermore, the court in *Salmon Spawning* went on to find standing for plaintiffs' third claim, alleging that the State Department failed to re-initiate ESA consultation after new information came to light. *Id.* at

1229. The court held that the claim was "a forward-looking allegation whose remedy rests in the hands of federal officials and does not hinge on upsetting the Treaty," and therefore the State Department had to comply with the ESA even though the Court was unable to set aside the treaty. *Id*.; *see also Ctr. for Biological Diversity v. Mattis*, No. 15-15695, 2017 WL 3585638, at *10 (9th Cir. Aug. 21, 2017) (citing *Salmon Spawning* and holding that plaintiffs had standing on a "forward-looking" claim because the court could order the government to comply with a "statutory procedural requirement" without invalidating the government's underlying decision).

Likewise, even if the Court were to determine that it could not set aside the cross-border permit at issue here, there is still forward-looking relief that the Court could order. Setting aside the State Department's biological assessment and requiring formal consultation with the Service could result in more effective, enforceable measures to mitigate impacts to protected species. In short, the Court has the power to set aside the cross-border permit, but even if it does not, the Court nonetheless retains power to order effective relief. Plaintiffs therefore have standing on their fifth claim for relief.

//

//

//

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' supplemental

motions to dismiss. If the Court is nonetheless inclined to grant the motions for any

reason, Plaintiffs respectfully request leave to amend their complaint.

Respectfully submitted,

Dated:     September 8, 2017     /s/ Doug Hayes
Doug Hayes (*pro hac vice*)
/s/ Eric Huber
Eric Huber (*pro hac vice*)
Sierra Club Environmental Law Program
1650 38th Street, Suite 102W
Boulder, CO 80301
(303) 449-5595
doug.hayes@sierraclub.org
huber@sierraclub.org

*Attorneys for Sierra Club and Northern
Plains Resource Council*

/s/ Cecilia Segal
Cecilia Segal (*pro hac vice*)
Natural Resources Defense Council
111 Sutter Street, Floor 21
San Francisco, CA 94104
(415) 875-6184
jprange@nrdc.org
csegal@nrdc.org

*Attorneys for Bold Alliance and Natural
Resources Defense Council*

/s/ Jared Margolis
Jared Margolis (*pro hac vice*)
/s/ Amy Atwood
Amy R. Atwood (*pro hac vice*)

Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(971) 717-6401
jmargolis@biologicaldiversity.org
atwood@biologicaldiversity.org

*Attorneys for Center for Biological Diversity
and Friends of the Earth*

/s/ Timothy M. Bechtold
Timothy M. Bechtold
(Montana Bar No. 4376)
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT59807
(406) 721-1435
tim@bechtoldlaw.net

*Attorney for all Plaintiffs*

## WORD COUNT CERTIFICATION

I certify that the foregoing brief contains 5,336 words, as counted with

Microsoft Word's "word count" tool, and excluding material Local Civil Rule

7.1(d)(2)(E) omits from the word-count requirement.


/s/ Cecilia Segal

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing brief on all counsel of record via the

Court's CM/ECF system.


<u>/s/ Cecilia Segal</u>