Jeffery J. Oven
Mark L. Stermitz
Jeffrey M. Roth
CROWLEY FLECK PLLP
490 North 31st Street, Ste. 500
P.O. Box 2529
Billings, MT 59103-2529
Telephone: 406-252-3441
Email: joven@crowleyfleck.com
    mstermitz@crowleyfleck.com
    jroth@crowleyfleck.com

Peter R. Steenland
Lauren C. Freeman
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: 202-736-8000
Email: psteenland@sidley.com
    lfreeman@sidley.com

*Counsel for TransCanada Keystone Pipeline, LP*
   *and TransCanada Corporation*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, BOLD ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, FRIENDS OF THE EARTH, NATURAL RESOURCES DEFENSE COUNCIL, INC., and SIERRA CLUB,<br><br>    Plaintiffs,<br>vs.<br><br>THOMAS A. SHANNON, JR., in his Official Capacity as Under Secretary of State for Political Affairs, UNITED STATES DEPARTMENT OF STATE, RYAN ZINKE, in his official Capacity as Secretary of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; and BUREAU OF LAND MANAGEMENT, | CV 17-31-GF-BMM<br><br>**TRANSCANADA KEYSTONE PIPELINE, LP AND TRANSCANADA CORPORATION'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS** |

1

|  Defendants, |
| and |
| TRANSCANADA KEYSTONE PIPELINE, LP and TRANSCANADA CORPORATION, |
|  Defendant-Intervenors. |

## ARGUMENT

Plaintiffs Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council and Sierra Club (collectively, "Northern Plains") amended their complaint on August 4, 2017, and added a claim alleging that the Department of State ("State Department") had violated the Endangered Species Act section 7(a)(2), 16 U.S.C. § 1536(a)(2) ("ESA"), and Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), when it declared that the Keystone XL Pipeline was not likely to adversely affect species protected under the ESA. In response, both the Federal Defendants and TransCanada moved to dismiss this new claim because it contains the same jurisdictional infirmities as those identified in the earlier-filed Motions to Dismiss. Northern Plains has responded, raising many of the same arguments it presented in the first round of briefing on the Motions to Dismiss. As we now demonstrate, the same jurisdictional defects that doom Northern Plains' original

complaint are also manifest in its latest amended version, and therefore, the Plaintiffs' case must be dismissed in its totality.

## I. The State Department's Exercise of Delegated Presidential Authority Is Presidential Action, not "Agency Action."

Northern Plains first argues that because the State Department, not the President, issued the Presidential Permit for Keystone XL, the State Department's issuance of the permit was "agency action" under both the ESA and APA. To Northern Plains, presidential authority is irrelevant. That is not the law.

In issuing the Presidential Permit to TransCanada, Under Secretary Shannon acted pursuant to delegated authority from the President under Executive Order 13337 ("E.O. 13337"). The President's authority to issue E.O. 13337 is not grounded in any statute. It is, instead, an exercise of the President's inherent constitutional powers over foreign affairs. As such, the President's delegation of the power to act pursuant to E.O. 13337 must also be considered presidential action. Indeed, the Ninth Circuit has found in analogous circumstances – where the Secretary approved fishing regulations pursuant to a treaty between the United States and Canada – that "the Secretary's actions are those of the President." *Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975).

As we argued earlier, if the Keystone XL Pipeline had been proposed to transport crude oil from one point in the United States to another place in this country, the State Department would have no role in these actions because there

3

would be no crossing of the United States border and no need for a presidential permit. (ECF No. 57 at 3).[1] In such a case, there would have been no involvement by the State Department whatsoever. Issues of State's compliance with NEPA, ESA, or other statutes triggered by "federal action" would have never arisen. It is only TransCanada's need for a presidential border crossing permit and the State Department's exercise of delegated presidential authority that gives the State Department a measure of responsibility for Keystone XL. Critically, the sole source of that responsibility is the inherent constitutional authority of the President, a power neither created nor constrained by statute.

In contrast, the Bureau of Land Management ("BLM") has been involved in the Keystone XL regulatory approval process because it has a *statutory* mandate to do so. Under the Mineral Leasing Act, 30 U.S.C. § 185(a), TransCanada is required to apply to the BLM to obtain a right-of-way permit for the pipeline to cross over federal lands.[2] Once BLM receives such an application, BLM carries out a review process that includes the application of applicable environmental statutes (*e.g.*, NEPA, ESA). BLM has a duty to carry out this review process, as Congress prescribed in the Mineral Leasing Act, and this duty applies to BLM

---

[1] Citations to ECF documents use ECF page numbering.

[2] The Keystone XL Pipeline, as currently proposed, will cross approximately 46 miles of federal lands in Montana. (ECF No. 44 at 17).

whether an international or domestic pipeline is at issue. BLM's role is very different from that of the State Department, factually and as a matter of law.

Three district courts have recognized in well-reasoned cases that the State Department's issuance of a presidential permit is presidential action. *Sisseton-Wahpeton Oyate v. U.S. Dep't of State*, 659 F. Supp. 2d 1071, 1081 (D.S.D. 2009), *Nat. Res. Def. Council, Inc. v. U.S. Dep't of State (NRDC)*, 658 F. Supp. 2d 105, 109 (D.D.C. 2009); and *White Earth Nation v. Kerry*, Civ. No. 14-4726 (MJD/LIB), 2015 WL 8483278 at *6-8 (D. Minn. Dec. 9, 2015). In each of these cases, the courts clearly found the permit issuance to be presidential action, even though the inherent presidential power to issue cross-border permits is delegated to the State Department. It is the delegation in E.O. 13337 of the President's constitutional power that keeps the ultimate discretion with the President and maintains the presidential nature of the decision to issue a permit. Plaintiffs completely ignore this fact in their attempt to characterize the action as "agency action."

Looking at the issue through this framework is imperative because Northern Plains brings its ESA claim under the APA and the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1)(A). The ESA citizen suit provision's waiver of sovereign immunity allows a citizen to challenge agency action. Plaintiffs' attempt to characterize the State Department's permit as agency action in order to fit within

5

the citizen suit provision might work if agency action were at issue here, but it is not. The action being challenged by Plaintiffs is the State Department's actions made pursuant to delegated presidential authority. Further, Northern Plains' reliance on the authorization in the ESA citizen suit provision to sue "any person" does it no good when the underlying action that is the subject of the claim is presidential conduct rather than routine agency decision-making.

Northern Plains asserts that reliance on APA cases construing the definition of "agency" is misplaced, but this distracts from the issue. The question is whether the citizen suit provision provides an explicit waiver of sovereign immunity when the challenge is to delegated presidential action. Not only is there no explicit waiver of sovereign immunity regarding the President, but it would be irrational to make such a leap.

Where the President is explicitly mentioned in section 7, Congress created a separate judicial review provision for challenging decisions of the "God Committee." *See* discussion at ECF No. 60 at 7. Because this established a separate mechanism for suits challenging the "God Committee's" decisions, this obviates any need to interpret "person" as including the President.

Plaintiffs final effort to demonstrate that State's permit issuance is really agency action relies on the President's January 24, 2017 Memorandum to the Secretary of State and others ("January 24 Memorandum") where the President

cancelled a 15-day interagency review process that would have otherwise applied to this application. As detailed in TransCanada's August 4, 2017 reply, this minor adjustment in the E.O. 13337 administrative process did not transform the President's inherent, Constitutional authority over international border crossings into routine administrative agency decision-making that is subject to judicial review. (ECF No. 57 at 5-8). In other words, the January 24 Memorandum did not cede any of the President's ultimate authority. Northern Plains, again, cites to no factual or legal authority to support its claim that the January 24 Memorandum's elimination of the interagency review process equates to a cession of presidential authority over TransCanada's permit.

Ultimately, this is a bizarre argument, for it calls on the parties and the Court to suspend both common sense and knowledge of the recent past. It is a fact that prior to the 2016 election, the President castigated his predecessor for having denied a Presidential Permit to Keystone XL in 2015. Prior to his election, the President often declared that granting such a permit would be one of first deeds of his new Administration. But, Northern Plains now contends that when the President issued his Memorandum on the Keystone XL Pipeline on January 24, he used that Memorandum to surrender all Presidential decision-making authority. This defies common sense; Plaintiffs' argument would constitute a novel approach to rewriting constitutional authority given to the President.

7

## II. Northern Plains' Attempts to Cure Multiple Standing Deficiencies Fail.

TransCanada and Federal Defendants demonstrated in their supplemental motions to dismiss that Northern Plains' fifth claim also must be dismissed because Northern Plains has not satisfied any of the three elements of constitutional standing: injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). As such, Northern Plains' fifth claim should be dismissed for lack of standing.

First, Northern Plains' vague and general claims of injury fail to meet the standard for injury-in-fact. Northern Plains' assertions of its members interests in the whooping crane, interior least tern, and piping plover lack specifics regarding claims of harm and do not amount to concrete and particularized interests. *Lujan*, 504 U.S. at 560.

Second, Northern Plains cannot sufficiently demonstrate that the alleged deficiencies in Federal Defendant's Biological Assessment will cause an injury to even one of its members.

Third, this Court cannot redress an injury that does not exist. But even if this court finds that Northern Plains' members indeed suffer an injury-in-fact, that injury cannot be redressed by invalidating the Biological Assessment. *Lujan*, 504 U.S. at 560-61. This is because the President retains ultimate discretion over the decision to issue the Presidential Permit. As TransCanada explained in its

8

Supplemental Motion to Dismiss (ECF No. 60 at 8 & n.1), Plaintiffs must show that there is a "direct relationship between the alleged injury" they seek to remedy "and the claim sought to be adjudicated." *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973). There is no such direct relationship here.

Even if the court were to set aside the Biological Assessment and order Federal Defendants to prepare a new "adequate" Biological Assessment, this is not the ultimate injury that Northern Plains seeks to remedy. Northern Plains seeks to reverse the issuance of the Presidential Permit and its alleged impacts on listed species – a remedy unavailable from this Court. The decision to issue the Presidential Permit is one committed to the discretion of the President. *See, e.g.*, *Earth Island Inst. v. Christopher*, 6 F.3d 648, 652-53 (9th Cir. 1993) (deciding not to enforce a statute that required the Executive Branch to negotiate with foreign nations, as that branch alone has the exclusive power to conduct foreign relations); *see also NRDC*, 658 F. Supp. 2d at 111 ("[T]he President has complete, unfettered discretion over the permitting process. No statute curtails the President's authority to direct whether the State Department . . . issues a presidential permit.").

Northern Plains claims that *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225-27 (9th Cir. 2008), is distinguishable, but that is not the case. There, the Ninth Circuit found that plaintiffs lacked standing to sue for two out of three claims because that court found it had no authority to set aside

the international treaty that indirectly caused the alleged injuries. Northern Plains attempts to distinguish this key point by simply stating that, here, "this Court has authority to revoke the cross-border permit for Keystone XL." This is not so. *See supra* at Section I. For the third claim, *the Salmon Spawning* court found standing because new information had come to light, such that reinitiation of ESA consultation might "ultimately benefit the groups." *Id.* at 1229. Here, however, Northern Plains alleges no new information warranting re-initiation of ESA consultation. In fact, all of Northern Plains' ESA concerns were addressed and found to lack merit. (*See* ECF No. 57 at 15-16).

Northern Plains also relies on *Center for Biological Diversity v. Mattis*, No. 15-15695, 2017 WL 3585638 (9th Cir. Aug. 21, 2017), in support of its redressability argument. This case, too, is distinguishable from the case at hand. In *Mattis*, the Ninth Circuit found redressability because the plaintiffs there had not challenged decisions committed to the Executive Branch, in contrast to *Salmon Spawning*. *Mattis*, at *10. Thus, *Mattis* provides no benefit to Northern Plains; indeed, as the *Mattis* decision recognized, "*Salmon Spawning* suggests that to the extent CBD seeks declaratory relief aimed at challenging the 2006 Roadmap, or the decision to initiate the FRF Project, CBD lacks standing". *Mattis*, at *10. It follows that Northern Plains cannot have standing to challenge its ultimate remedy

10

– a Presidential Permit issuance that is committed to the Executive Branch – because this link in the chain cannot be redressed by a court.

Because of these limits to federal judicial review, particularly in cases of foreign policy and national security concerns, Northern Plains' fifth claim cannot be redressed by this court.

## CONCLUSION

WHEREFORE, TransCanada respectfully requests that this Court dismiss Northern Plains' Third Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b).

Dated this 22nd day of September, 2017.

        CROWLEY FLECK PLLP


        By   /s/ Jeffery J. Oven
              Jeffery J. Oven
              Mark L. Stermitz
              Jeffrey M. Roth
        490 North 31st Street, Ste 500
        P.O. Box 2529
        Billings, MT 59103-2529
        *Counsel for TransCanada Keystone Pipeline, LP and TransCanada Corporation*

        SIDLEY AUSTIN LLP


        By   /s/ Peter R. Steenland, Jr.
              Peter R. Steenland, Jr.
              Lauren C. Freeman

1501 K Street, N.W.
Washington, D.C. 20005
*Counsel for TransCanada Keystone Pipeline, LP and TransCanada Corporation*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2) of the United States Local Rules, I certify that this Reply Brief contains 2117 words, excluding caption and certificates of service and compliance, printed in at least 14 points and is double spaced, including for footnotes and indented quotations.

DATED this 22nd day of September, 2017.

By   /s/ Jeffery J. Oven

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the following counsel of record, by the means designated below, this 22nd day of September, 2017:

<u>1 - 9</u>        CM/ECF
_____        Hand Delivered
_____        Mail
_____        Overnight Delivery Service
_____        Fax
_____        E-mail

1. Clerk of U.S. District Court

2. Cecilia D. Segal
   NATURAL RESOURCES DEFENSE COUNCIL - San Francisco
   111 Sutter Street, Floor 21
   San Francisco, CA 94104
   *Attorneys for Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council, Sierra Club*

3. Selena Kyle
   NATURAL RESOURCES DEFENSE COUNCIL - Chicago
   20 North Wacker Drive, Suite 1600
   Chicago, IL 60606
   *Attorneys for Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council*

4. Timothy M. Bechtold
   BECHTOLD LAW FIRM
   PO Box 7051
   Missoula, MT 59807-7051
   *Attorneys for Northern Plains Resource Council, Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council, Sierra Club*

5. Amy R. Atwood
   CENTER FOR BIOLOGICAL DIVERSITY - PORTLAND
   PO Box 11374
   Portland, OR 97211-0374
   *Attorneys for Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council, Sierra Club*

6. Douglas P. Hayes
   SIERRA CLUB
   1650 38th Street
   Suite 102W
   Boulder, CO 80301
   *Attorneys for Sierra Club*

7. Eric E. Huber
   SIERRA CLUB
   Environmental Law Program
   1650 38th St.
   Suite 102W
   Boulder, CO 80301
   *Attorneys for Sierra Club*

8. Luther L. Hajek
   U.S. DEPARTMENT OF JUSTICE - DENVER
   South Terrace, Suite 370
   999 18th Street
   Denver, CO 80202
   *Attorneys for Thomas A. Shannon, Jr., US Department of State, Ryan Zinke, US Department of the Interior and Bureau of Land Management*

9. Mark Steger Smith
   U.S. ATTORNEY'S OFFICE - BILLINGS
   2601 Second Avenue North
   Suite 3200
   Billings, MT 59101
   *Attorneys for Thomas A. Shannon, Jr., US Department of State, Ryan Zinke, US Department of the Interior and Bureau of Land Management*

By  /s/ Jeffery J. Oven