MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Ph: (406) 247-4667; Fax: (406) 657-6058
mark.smith3@usdoj.gov

JEFFREY H. WOOD, Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
SETH M. BARSKY, Section Chief
BRIDGET KENNEDY McNEIL (CO Bar 34299)
Wildlife and Marine Resources Section
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1484, (303) 844-1376; Fax: (303) 844-1350
bridget.mcneil@usdoj.gov
luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, *et al.*,<br><br>  Plaintiffs,<br>v.<br><br>THOMAS A. SHANNON, JR., in his official capacity as Under Secretary for Political Affairs, *et al.*, | CASE NO. 4:17-CV-00031-BMM<br><br>**REPLY IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS** |

|  |  |
|---|---|
| Federal Defendants, | |
| and | |
| TRANSCANADA CORPORATION, *et al.*, | |
| Intervenor-Defendants. | |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................1

I. Issuance of the Permit Is a Presidential Action for Which the ESA Citizen-
   Suit Provision Does Not Waive Sovereign Immunity. ......................................1

    A.    Issuance of the Permit Is a Presidential Action ....................................1

    B.    The ESA Does Not Waive the President's Sovereign Immunity .........4

II. Plaintiffs Do Not Sufficiently Allege Standing for the Fifth Claim. .............10

CONCLUSION ..................................................................................................14

i

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE

*Am. Bird Conservancy v. FCC*,
   545 F.3d 1190 (9th Cir. 2008) .................................................................................4

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991)............................................................................6, 7

*Center for Biological Diversity v. Mattis*,
   868 F.3d 803, (9th Cir. 2017) ................................................................................13

*Corus Grp. PLC. v. Int'l Trade Comm'n.*,
   352 F.3d 1351 (Fed. Cir. 2003) ..............................................................................7

*Detroit Intl. Bridge Co. v. Canada*,
   189 F. Supp. 3d 85 (D.D.C. 2016).........................................................................2

*FAA v. Cooper*,
   566 U.S. 284 (2012) ................................................................................................9

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ............................................................................... 3, 6, 7, 8

*Friends of the Earth v. U.S. Dep't of Interior*,
   478 F. Supp. 2d 11 (D.D.C. 2007)............................................................... 10, 11

*Hallstrom v. Tillamook Cty.*,
   493 U.S. 20 (1989) ..................................................................................................9

*Jensen v. Nat'l Marine Fisheries Serv.*,
   512 F.2d 1189 (9th Cir. 1975)...............................................................................3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..............................................................................................11

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................11

*Nat. Res. Def. Council v. State*,
   658 F. Supp. 2d 105 (D.D.C. 2009) .............................................2, 3

*Natural Resources Defense Council v. Jewell*,
   749 F.3d 776 (9th Cir. 2014) ........................................................12

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) .........................................................................6

*Palila v. Haw. Dep't of Land & Nat.*,
   *Res.*, 471 F. Supp. 985 (D. Haw. 1979).......................................5, 9

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*,
   962 F.2d 27 (D.C. Cir. 1992).........................................................4

*Robertson v. Methow Valley Citizens Council*,
   490 U.S. 332, (1989) ......................................................................4

*S. Yuba River Citizens League v. National Marine Fisheries Serv.*,
   629 F. Supp. 2d 1123 (E.D. Cal. 2009) .........................................9

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
   545 F.3d 1220 (9th Cir. 2008) ................................................ 12, 13

*Sisseton-Wahpeton Oyate v. State*,
   659 F. Supp. 2d 1071 (D.S.D. 2009) ..............................................2

*United States v. City of Rancho Palos Verdes*,
   841 F.2d 329 (9th Cir. 1988) .......................................................5, 6

*White Earth Nation v. Kerry*,
   Civ. No. 14-4726 (MJD/LIB), 2015 WL 8483278 (D. Minn. Dec. 9, 2015).........2

## STATUTES

16 U.S.C. § 1536(a)(2)..............................................................................13
16 U.S.C. § 1540(g)(1)(A)...........................................................................9
28 U.S.C. § 1581(i) ...................................................................................7
42 U.S.C. § 9659(a)(1)...........................................................................8, 9

## FEDERAL REGULATIONS

50 C.F.R § 402.16 ....................................................................................13

## EXECUTIVE ORDERS

E.O. 13,337 ................................................................................................2

**INTRODUCTION**

Plaintiffs' Fifth Claim for Relief must be dismissed. Issuance of the permit for the transborder crossing of the Keystone XL pipeline is a Presidential action. Without an explicit indication from Congress that the Endangered Species Act ("ESA") citizen-suit provision also waives the sovereign immunity of the President, there is no jurisdiction here. Alternatively, while Plaintiffs fail to sufficiently allege injury in fact, the Presidential nature of the underlying action also means there is no redressability for their claim.

**ARGUMENT**

I. **Issuance of the Permit Is a Presidential Action for Which the ESA Citizen-Suit Provision Does Not Waive Sovereign Immunity.**

    A. **Issuance of the Permit Is a Presidential Action**

Plaintiffs' primary response to our showing that the ESA does not waive sovereign immunity to bring a challenge against Presidential action is to claim that the action here – issuance of a Presidential permit pursuant to Executive Order – is simply a run-of-the-mill agency action taken by the Department of State. This is not the case. Plaintiffs' response overlooks that the Under Secretary's issuance of the Presidential permit is not taken pursuant to any statute or Congressional authority. Rather, contrary to a typical agency action where the agency acts pursuant to statutory authority, the only source of authority for the Under

Secretary's action is Executive Order ("E.O.") 13,337. The authority delegated by that Executive Order derives solely from the President's constitutional authority over foreign affairs and his authority over national security. This is why numerous courts have found that permits issued under this delegation are not subject to judicial review under the Administrative Procedure Act ("APA") for alleged violation of environmental statutes. *Nat. Res. Def. Council v. State*, 658 F. Supp. 2d 105 (D.D.C. 2009) ("*NRDC*"); *Sisseton-Wahpeton Oyate v. State*, 659 F. Supp. 2d 1071, 1082 (D.S.D. 2009); *White Earth Nation v. Kerry*, Civ. No. 14-4726 (MJD/LIB), 2015 WL 8483278, at *6-*8 (D. Minn. Dec. 9, 2015); *see also Detroit Intl. Bridge Co. v. Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016) (an agency's action on behalf of the President, involving discretionary authority committed to the President, is Presidential action).

Plaintiffs nonetheless insist that the issuance of the Presidential permit was transformed into "agency action" because the President's January 24, 2017 memorandum waived certain interagency review and resolution procedures established in E.O. 13,337. Plaintiffs' Combined Opposition to Defendants' Supplemental Motion to Dismiss ("Pls.' Opp.") (ECF 65) at 12. The waiver of those procedures, however, in no way curtailed the "complete, unfettered discretion" the President possessed over the permit process here. *NRDC,* 658 F. Supp. 2d at 111. As previously discussed, the January 24, 2017 memorandum did

2

not limit the President's authority to further modify the process or subsequently overturn the Under Secretary's decision. ECF 56 at 7-8. Thus, the waiver of the interagency review procedures did not require the President to "adhere to the policy decisions of the agency." *NRDC,* 658 F. Supp. 2d at 111 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 799 (1992)).

The question is not, as Plaintiffs frame it, whether the Under Secretary engaged in an action that would, if taken under a different source of authority, be considered an agency action. Indeed, in *Jensen*, the challenged action was the enactment of a regulation, a prototypical agency action, which was nonetheless unreviewable because of the constitutional commitment to the President's discretion. *Jensen v. Nat'l Marine Fisheries Serv*., 512 F.2d 1189, 1191 (9th Cir. 1975). Thus, Plaintiffs' reference to the ESA's definition of "agency action" is immaterial, as is their argument that the action at issue is "discretionary". Pls.' Opp. at 13-14. Similarly, Plaintiffs' argument that the ESA does not turn on the source of the agency's authority, *id.* at 15, is a red herring. In *NRDC* and other cases that dismissed environmental challenges to Presidential permits, the courts found the source of the authority for the underlying action, *i.e.*, the President's delegated constitutional authority, to be determinative, despite the otherwise broad application of those environmental statutes to agency action.

For similar reasons, the Court should reject Plaintiffs' argument that the

purpose of the ESA counsels in favor of ignoring the Presidential nature of the permit. Pls.' Opp. at 15-16. The purpose of the ESA cannot be used as an interpretive tool to convert an inherently Presidential action into a Federal agency action. For example, there is no debate that the National Environmental Policy Act ("NEPA") reflects a "broad national commitment to protecting and promoting environmental quality." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 348, (1989). Nevertheless, the *NRDC, Sisseton-Wahpeton,* and *White Earth Nation* courts all correctly found that this important statutory purpose does not override the fact that the APA did not waive sovereign immunity to challenge Presidential actions. The result is no different for the ESA.[1]

## B. The ESA Does Not Waive the President's Sovereign Immunity

Plaintiffs first argue that, because they have not specifically named the President as a defendant, the Court should reject the sovereign immunity argument. The Court should not accept such evasions. *Am. Bird Conservancy v. FCC*, 545

---

[1] Nor can Plaintiffs claim that the Presidential permit constitutes State Department action pursuant to the ESA. The ESA does not expand the powers conferred on an agency by its organic statutory authority. *See Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 34 (D.C. Cir. 1992). Thus, the Court cannot rely on sweeping statements about the ESA's purpose to fill gaps in the agency's underlying statutory authority – a holding even more relevant here where the permit was not issued pursuant to any statutory authority possessed by State, but only under the President's constitutional authority.

4

F.3d 1190, 1194 (9th Cir. 2008) (a plaintiff cannot avoid jurisdictional infirmities through artful pleading). The relevant question is the nature of the action subject to the citizen-suit claim. Alleged violations of the ESA's consultation duty do not exist in a vacuum, they are directly tied to the underlying actions. Here, since the underlying action is a Presidential action, in order to determine that it has jurisdiction, the Court must satisfy itself that the ESA citizen-suit waiver of sovereign immunity extends to the discretionary exercise of the President's constitutional authority. It does not.

Plaintiffs argue that the ESA term "person" clearly encompasses "all federal government actors, including the President . . ." Pls.' Opp. at 17. In support, they rely on *Palila v. Haw. Dep't of Land & Nat. Res.*, 471 F. Supp. 985, 997 (D. Haw. 1979). The question before the *Palila* court was whether the ESA citizen-suit provision waived the state entities' Eleventh Amendment immunity – a question irrelevant to whether Congress subjected the President to ESA citizen-suit claims and potential liability and remedy.

Even if *Palila* were applicable, it does not support Plaintiffs' overreach. Despite that district court's statement that the citizen-suit provision authorizes suit against "a general class of defendants who violate the Act," the Ninth Circuit has strictly construed the citizen-suit provision, even in the same Eleventh Amendment context. *Id.* In *United States v. City of Rancho Palos Verdes*, 841 F.2d 329 (9th Cir.

5

1988), the Court evaluated whether the citizen-suit waiver of sovereign immunity extends to municipal corporations. While recognizing that Congress intended the scope of the ESA to be broader than its preceding statute by expanding the definition of 'person,' the Court found no legislative history indicating that "municipal corporations were either included in or excluded from" that definition. *Id.* at 331. It therefore declined to read the term to include municipal corporations, stating:

> Our task is to give to the words of the statute their plain meaning. We have done this. If Congress intended a different construction, the statute is easily amended.

*Id.*

This applies with even more force in the context of potential claims for relief against the President, where the Supreme Court has stated that it would require an express statement by Congress before assuming that it intended the President to be subject to suit. *Franklin*, 505 U.S. at 801; *Nixon v. Fitzgerald*, 457 U.S. 731, 748, n.27 (1982) (Court would require an explicit statement by Congress before assuming Congress had created a damages action against the President). As the D.C. Circuit has stated, "[w]hen Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear." *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991). In the "absence" of evidence that Congress considered the "serious practical, political, and

constitutional questions" raised by regulating Presidential action, the Court refused to hold that the President is subject to suit under the APA. *Id.*

Contrary to Plaintiffs' contentions, Pls.' Opp. at 17-18, these holdings are not limited to the APA or explicitly tied to the APA definition of "agency."[2] In *Corus Grp. PLC. v. Int'l Trade Comm'n.*, 352 F.3d 1351 (Fed. Cir. 2003), the Federal Circuit evaluated whether the jurisdictional authorization of suits in the Court of International Trade extended to the President. The relevant language conferred jurisdiction over certain civil actions commenced against "the United States, its agencies, or its officers." *Id.* at 1359 (quoting 28 U.S.C. § 1581(i)). In concluding that these terms do not include the President, the Court relied on the reasoning in *Franklin* that waivers of sovereign immunity should be construed to exclude the President "'[o]ut of respect for the separation of powers and the unique constitutional position of the President.'" *Id.* (*quoting Franklin*, 505 U.S. at 800.) In light of the notable similarity between 28 U.S.C. § 1581(i) and the ESA – both refer to "officers" of the United States – this Court should likewise reject any

---

[2] Plaintiffs also argue that the APA cases are distinguishable because two Ninth Circuit decisions have presented some confusion about whether the ESA citizen-suit provision imports the APA's standard and scope of review, limiting judicial review of citizen-suit claims to the administrative record. Pls.' Opp. at 17-18. These cases are wholly inapposite as neither addresses whether the President is subject to suit under the ESA.

assumption that Congress subjected the President's actions to judicial review under the ESA citizen-suit provision.

To hold otherwise would be to subject the President to suit for any number of Presidential actions—not just the presidential permit at issue here—for the alleged failure to engage in ESA consultation with subordinate federal wildlife agency officials before exercising his constitutional powers. This imposition on the President's authority cannot be squared with the authority granted to the by Article II of the Constitution. *Franklin,* 505 U.S. at 800-801 ("Out of respect for the separation of powers and the unique constitutional position of the President", courts will not find President subject to suit absent express congressional statement).

Plaintiffs also seek to distinguish the Congressional treatment of the President in the similar citizen-suit provision of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Pls.' Opp. at 18-21. Plaintiffs argue that the use and exclusion of "President" in CERCLA is irrelevant because the statutory interpretation principle applies only when the omission is in the same Act. The application of the principle to CERCLA indicates that the omission of "President" in 42 U.S.C. § 9659(a)(1), when contrasted with its specific use in the following subsection, is purposeful, indicating that "any person (including the United States and any other governmental instrumentality or

agency...)" does not extend to the President. This provision uses a nearly identical formulation as the relevant ESA citizen-suit subsection at issue here. *Compare* 42 U.S.C. § 9659(a)(1) *with* 16 U.S.C. § 1540(g)(1)(A). As recognized numerous times, the similarity of these environmental citizen-suit provisions informs their respective interpretations, *Hallstrom v. Tillamook Cty*., 493 U.S. 20, 23 & n.1 (1989), meaning that the purposeful omission of the President from the first CERCLA citizen-suit provision subsection informs this Court's interpretation of its sister subsection in the ESA.

Plaintiffs' last argument returns to advocating a broad interpretation of the citizen-suit provision against the President based on the importance of the statutory goals. Pls.' Opp. at 20-21. This is directly contrary to the Court's obligation to narrowly interpret a statute's waiver of sovereign immunity. The *Palila* case is irrelevant to this question, speaking only to the waiver of states' Eleventh Amendment immunity. Furthermore, the rationale in *Palila* and *S. Yuba River Citizens League v. National Marine Fisheries Serv.,* 629 F. Supp. 2d 1123 (E.D. Cal. 2009), is off base here. Waivers of sovereign immunity must be "unequivocally expressed" in statutory text and any ambiguities in the statutory language are to be construed in favor of immunity. *FAA v. Cooper*, 566 U.S. 284, 290 (2012). Ambiguity exists if there is a plausible interpretation of the statute that would not authorize the particular claim against the Government. *Id.*at 291. Here,

the absence of the President in the text as among those subject to suit at a minimum creates ambiguity, especially in view of the Supreme Court's admonition that it usually requires an express statement by Congress to allow suit against the President. Neither of these canons can be overcome by Plaintiffs' policy arguments regarding enforceability of the ESA.

## II.     Plaintiffs Do Not Sufficiently Allege Standing for the Fifth Claim.

Our supplemental motion to dismiss showed that Plaintiffs' vague allegations about recreation "near" the Project are insufficient to support a claim of injury in fact to any interest in whooping cranes, interior least terns, and piping plovers that may be impacted by the Project. ECF 62 at 7. In response, Plaintiffs argue that, at the motion to dismiss stage, their case may go forward on such insufficient allegations of injury in fact, especially because the species in which they are interested are not limited to the Project area.

As an initial matter, while "a court may presume that a general factual allegation embraces the different, specific facts that are necessary to render the major premise true," "a court cannot supply an entirely new, completely absent major premise that is necessary to establish standing." *Friends of the Earth v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 21 (D.D.C. 2007). In *Friends of the Earth*, the Court granted a motion to dismiss for claims concerning off-road vehicle policies adopted in particular National Parks when the plaintiffs failed to

sufficiently connect their members' use of national parks with harm from off-road vehicle usage. The Court strongly disagreed with the argument that it could assume the more specific facts from the general, stating that "when the constitutional authority of this Court to hear a case is at issue," a plaintiff must "take the time to find and allege jurisdictional facts, or we go no further." *Id.* at 22.

Second, Plaintiffs argue that they do not have to allege that they have concrete plans to recreate in an area actually impacted by the Project because they are interested in listed bird species that are mobile. Pls.' Opp. at 26. If this were the case, then there is no limiting principle – a plaintiff in Texas, with no plans to visit the Project area, could assert standing based on an interest in whooping cranes as they migrate south for the winter. But this would be akin to the "ecosystem nexus" theory rejected by the Supreme Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 (1992). Because Plaintiffs need to allege concrete interests in species in the Project area, not roughly "in the vicinity" of the species, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-84 (1990), their claim should be dismissed for failure to sufficiently allege injury in fact.

Finally, Plaintiffs insist that their injuries are redressable. Pls.' Opp. at 27-29. Plaintiffs first assert that the Court can redress the injury because issuance of the permit was a State Department action, which the Court could vacate. As previously explained, the Under Secretary's issuance of the Presidential Permit

was a delegated action of the President, *not* an action of the State Department, and the Court cannot disturb the permit without infringing on the President's authority over foreign affairs and national security. *See* ECF 42-1 at 20. Vacatur of the Under Secretary's action would not prevent the President himself from reissuing the Permit the next day. Further, the fact that, under the terms of the Presidential Permit, the Secretary of State or his delegee could terminate or amend the permit, *see* Pls.' Opp. at 27, merely confirms that the action is not a State Department action, but one that is limited to the specific officials, exercising the President's Constitutional authority. *See* ECF No. 42-8 at 2-3.

Plaintiffs next assert that additional ESA consultation would redress their injury, citing *Natural Resources Defense Council v. Jewell*, 749 F.3d 776 (9th Cir. 2014). But in *Jewell,* the underlying action consulted upon was a run-of-the-mill agency action and subject to the Court's jurisdiction. Whereas here, whether the Presidential Permit is issued and under what terms is ultimately up to the President, regardless of any consultation between the State Department and FWS.

Indeed, despite the attempts to distinguish it, the situation here is nearly identical to the challenge to the biological opinion dismissed in *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220 (9th Cir. 2008). It is of no matter that the Court there also found that the plaintiffs' reinitiation claim could proceed –

Plaintiffs here do not have a reinitation claim.[3] They have pled, just as the

*Gutierrez* plaintiffs did, a challenge to the ESA consultation that was conducted.

And, like here, the Ninth Circuit found the claim not to be redressable because it

could not order the State Department to reopen the underlying action. *Id.* at 1229.

   For this reason, Plaintiffs' reliance on *Center for Biological Diversity v.*

*Mattis*, 868 F.3d 8032017 (9th Cir. 2017), likewise fails. The *Mattis* court

seemingly recognized that if redressability would require re-visitation of the two

underlying decisions, then the plaintiffs would lack standing. *Id.* at 819. However,

the panel appeared to find that because there remained additional planning in

connection with the project, the "forward-looking" aspect of the National Historic

Preservation Act analysis could redress Plaintiffs' alleged injuries. *Id.* at 818 ("In a

project with many moving pieces, as well as several stops and starts, the details of

the base's *construction* and *operation* are susceptible to potential alteration and

modification by the take-into-account process."). Here, in contrast, Plaintiffs

---

[3] Even if they did, the distinction drawn by the *Gutierrez* court on this point is, respectfully, internally inconsistent and unclear. Both the statutory duty to consult and the regulatory duty to reinitiate apply to the same underlying agency "action." 16 U.S.C. § 1536(a)(2), 50 C.F.R § 402.16. The *Gutierrez* court fails to explain why reinitiation of consultation, resulting in additional environmental analysis of the <u>impacts of the Treaty</u>, would redress the plaintiffs' harms when it previously recognized that the challenge to the original analysis was not redressable because it could not order the State Department to renegotiate the Treaty.

challenge the past issuance of the Presidential Permit for an allegedly insufficient ESA consultation. Just as in *Gutierrez*, this Court cannot issue an order requiring reopening of that permit, even if there were additional ESA consultation, and Plaintiffs' alleged injury therefore is not redressable.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Fifth Claim for Relief should be dismissed for lack of jurisdiction, as should all of the claims in the Third Amended Complaint, as briefed in our original motion to dismiss.

Respectfully submitted this 22nd day of September, 2017,

JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

SETH M. BARSKY, Section Chief

*/s/ Bridget K. McNeil*_____
BRIDGET KENNEDY McNEIL (CO Bar 34299)
Senior Trial Attorney
Wildlife and Marine Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1484; Fax: (303) 844-1350
bridget.mcneil@usdoj.gov

LUTHER L. HAJEK (CO Bar 44303)
Trial Attorney
Natural Resources Section

14

999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1376; Fax: (303) 844-1350
luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points, and contains 3,207 words, excluding the caption, signature, certificate of compliance, and certificate of service.

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2017, a copy of the foregoing Reply

In Support of Supplemental Motion to Dismiss was served on all counsel of record

via the Court's CM/ECF system.

*/s/ Bridget K. McNeil*
BRIDGET KENNEDY McNEIL
U.S. Department of Justice