MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
FAX: (406) 657-6058
mark.smith3@usdoj.gov

JEFFREY H. WOOD, Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
SETH M. BARSKY, Section Chief
BRIDGET KENNEDY McNEIL (CO Bar 34299)
Wildlife and Marine Resources Section
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, Colorado 80202
Ph: 303-844-1484; 303-844-1376
bridget.mcneil@usdoj.gov
luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK, *et al.*, <br><br> and <br><br> NORTHERN PLAINS RESOURCE COUNCIL, *et al.*, <br><br>　　　　Plaintiffs, <br> v. | CV 17-29-GF-BMM <br> CV 17-31-GF-BMM <br><br> **OPPOSITION TO NPRC'S MOTION TO COMPLETE THE ADMINISTRATIVE RECORDS AND LIFT THE CONFIDENTIALITY DESIGNATION FOR CERTAIN FILES** |

UNITED STATES DEPARTMENT OF STATE, *et al.,*

         Federal Defendants,
and

TRANSCANADA CORPORATION, *et al.*,

Intervenor-Defendants.

## **TABLE OF CONTENTS**

PAGE

INTRODUCTION ...................................................................................................1

STANDARD OF REVIEW .....................................................................................3

ARGUMENT ..........................................................................................................5

I.   PLAINTIFFS' MOTION TO COMPLETE THE RECORDS FAILS ...............5

   A.   The Agencies Here Are Entitled to the Presumption of Regularity..............6

   B.   The Agencies Properly Excluded Deliberative Documents........................9

   C.   The Agencies Are Not Required to Log Deliberative Materials ...............16

II.  THE COURT SHOULD RETAIN THE CONFIDENTIALITY
     DESIGNATION FOR THE GIS DATA ........................................................20

CONCLUSION......................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                          <u>PAGE</u>

*Am. Petroleum Tankers Parent, LLC v. United States*,
  952 F. Supp. 2d 252 (D.D.C. 2013) ....................................................................16

*Animal Legal Def. Fund v. FDA.*,
  836 F.3d 987 (9th Cir. 2016) ............................................................................21

*ASSE Int'l v. Kerry*, 8:14-cv-00534-CJC-JPR, Order Deny. Pls.' Mot.
  to Enforce Compl. with the Court's June 21, 2017, Order
  (C.D. Cal. Jan. 3, 2018).................................................................................13, 17

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*,
  462 U.S. 87 (1983) ............................................................................................3

*Bar MK Ranches v. Yuetter*,
  994 F.2d 735 (10th Cir. 1993) ............................................................................4

*Blue Ocean Inst. v. Gutierrez*,
  503 F. Supp. 2d 366 (D.D.C. 2007) ...................................................................18

*California v. U.S. Dep't of Labor*, No. 2:13-cv-2069-KJM-DAD,
  2014 WL 1665290 (E.D. Cal. Apr. 24, 2014) .............................................. 13, 17

*Camp v. Pitts*,
  411 U.S. 138 (1973) .........................................................................................12

*Carlsson v. U.S. Citizenship & Immigration Servs.*, No. 2:12-cv-7893-
  CAS(AGRx), 2015 WL 1467174 (C.D. Cal. Mar. 23, 2015) .............................13

*Church of Scientology v. U.S. Dep't of Army*,
  611 F.2d 738 (9th Cir. 1979) ............................................................................21

*Citizens to Pres. Overton Park v. Volpe*,
  401 U.S. 402 (1971) ....................................................................... 3, 11, 12, 19

*City of Duluth v. Jewell*,
  968 F. Supp. 2d 281 (D.D.C. 2013) .....................................................................5

*Cook Inletkeeper v. EPA*,
    400 F. App'x 239 (9th Cir. 2010) .................................................................. 14, 17

*Ctr. for Biological Diversity v. U.S. Dep't of State*,
    No. 1:17-cv-937 (TSC) (filed May 18, 2017) ......................................................21

*Dist. Hosp. Partners, L.P. v. Burwell*,
    786 F.3d 46 (D.C. Cir. 2015) ..................................................................................9

*Dist. Hosp. Partners, L.P. v. Sebelius*,
    971 F. Supp. 2d 15 (D.D.C. 2013) .........................................................................9

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990) .............................................................................21

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ..............................................................................23

*Friends of the Earth v. Hintz*,
    800 F.2d 822 (9th Cir. 1986) ..................................................................................3

*Glenmede Trust Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995) ...................................................................................22

*Great Am. Ins. Co. v. United States*,
    No. 12-C-9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013) ............................16

*In re Adobe Sys. Sec. Litig.*,
    141 F.R.D. 155 (N.D. Cal. 1992) .........................................................................25

*In re Roman Catholic Archbishop of Portland Or.*,
    661 F.3d 417 (9th Cir. 2001) .......................................................................... 22, 25

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
    156 F.3d 1279 (D.C. Cir. 1998) ...........................................................................12

*In re United States*,
    875 F.3d 1200 (9th Cir. 2017) ..............................................................................11

*Kamakana v. City & Cty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ...............................................................22

*McCrary v. Gutierrez*,
   495 F. Supp. 2d 1038 (N.D. Cal. 2007)........................................ 4, 5, 6

*Milner v. Dep't of Navy*,
   562 U.S. 562 (2011) ...............................................................25

*Morgan v. United States*,
   304 U.S. 1 (1938) ........................................................... 10, 15

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................9

*Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*,
   631 F. Supp. 2d 23 (D.D.C. 2009)........................................ 13, 16, 17

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
   551 U.S. 644 (2007) ..............................................................19

*Oceana, Inc. v. Locke*,
   634 F. Supp. 2d 49 (D.D.C. 2009).......................................................12

*Oceana, Inc. v. Pritzker*,
   217 F. Supp. 3d 310 (D.D.C. 2016) ...................................... 13, 16, 18

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*,
   No. CV ELH-16-1015, 2017 WL 3189446 (D. Md. July 27, 2017)...................16

*Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
   448 F. Supp. 2d 1 (D.D.C. 2006) ..........................................................4

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ........................................... 22, 23

*Pinnacle Armor v. United States*,
   923 F. Supp. 2d 1226 (E.D. Cal. 2013) .........................................5, 9

*Portland Audubon Soc'y v. Endangered Species Comm.*,
984 F.2d 1534 (9th Cir. 1993) .............................................................................13

*San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-cv-01290-LJO-GSA,
2016 WL 3543203 (E.D. Cal. June 23, 2016) ................................................. 4, 17

*San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission*,
789 F.2d 26 (D.C. Cir. 1986) ........................................................................ 11, 14

*Seattle Time Co. v. Rhinehart*,
467 U.S. 20 (1984) ...............................................................................................24

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .................................................................................................9

*Stand Up for Cal. v. U.S. Dep't of Interior*,
71 F. Supp. 3d 109 (D.D.C. 2014) ........................................................................12

*Stonehill v. IRS*,
558 F.3d 534 (D.C. Cir. 2009) ..............................................................................21

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
100 F.3d 1443 (9th Cir. 1996) ................................................................................5

*Tafas v. Dudas*,
530 F. Supp. 2d 786 (E.D. Va. 2008) ...................................................................16

*Takata v. Hartford Comprehensive Emp. Benefit Serv. Co.*,
283 F.R.D. 617 (E.D. Wash. 2012) ......................................................................24

*Thompson v. U.S. Dep't of Labor*,
885 F.2d 551 (9th Cir. 1989) ........................................................................... 4, 10

*Todd v. Tempur-Sealy Int'l*, No. 13-cv-04984-JST (MEJ),
2015 WL 1006534 (N.D. Cal. Mar. 6, 2015) ................................................. 24, 26

*TOMAC v. Norton*,
193 F. Supp. 2d 182 (D.D.C. 2002) ............................................................... 5, 13

*Unilin Beheer B.V. v. NSL Trading Corp.*, No. CV 14-2210 BRO (SSx),
   2015 WL 12659918 (C.D. Cal. Jan. 8, 2015)......................................................24

*United States v. Morgan*,
   313 U.S. 409 (1941) .............................................................................. 10, 12, 15

## STATUTES

5 U.S.C. § 552............................................................................................................3

5 U.S.C. § 701............................................................................................................1

5 U.S.C. § 706............................................................................................................3

16 U.S.C. § 1531, *et seq.*........................................................................................2

42 U.S.C. § 4321, *et seq.*........................................................................................2

## FEDERAL REGULATIONS

Federal Rule of Civil Procedure 26(b)(1) ................................................................5

**INTRODUCTION**

Defendants United States Department of State ("State Department");

Thomas A. Shannon, Jr., in his official capacity as Under Secretary of State;

United States Fish and Wildlife Service ("FWS"); James W. Kurth, in his official

capacity as Acting Director of the U.S. Fish and Wildlife Service; and Ryan Keith

Zinke, in his official capacity as Secretary of the Interior, hereby oppose the

Northern Plains Plaintiffs' Motion to Complete the Administrative Records and

Lift the Confidentiality Designation for Certain Files (ECF No. 125) ("Pl. Mot.").

Plaintiffs ask this Court to order both agencies to expand their respective

administrative records to include unspecified internal and deliberative

communications and to require each agency to file a privilege log. Plaintiffs'

requests should be denied because they apply the wrong standard to cases brought

under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*. Although

styled as a motion to "complete" the record, Plaintiffs ask this Court to order a

fishing expedition for internal and preliminary deliberations concerning agency

decisions that are amply supported by the current administrative records.

The agencies filed their administrative records with the Court on December

8, 2017. The State Department record reflects the contents over 4.5 million

documents either submitted by the public during relevant comment periods or

prepared by Department officials,[1] which contain the evidence and information

considered indirectly or directly by Under Secretary Shannon in issuing the 2017

Presidential Permit, including the environmental analyses challenged by Plaintiffs

under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*

and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq.* The FWS

record consists of 166 documents, totaling over 2,800 pages, considered indirectly

or directly by its decisionmaker concurring in 2013 with the "not likely to

adversely affect" determinations, the 2013 biological opinion, and FWS'

subsequent concurrences for reinitiated consultation on later-listed species. There

is simply no merit to Plaintiffs' arguments that, without internal drafts and

predecisional, deliberative communications, the tens of thousands of pages of the

existing administrative records are insufficient to permit judicial review.

The other portion of Plaintiffs' request improperly seeks to lift the

protections of the Court's January 4, 2018 Protective Order (ECF No. 122) with

respect to the GIS data for the Keystone XL Pipeline route, despite Plaintiffs'

---

[1] The main section of the State Department record includes almost 900 documents – approximately 31,500 pages of analysis, assessment, and support for the issuance of the Presidential Permit. In addition, the record includes the 815 references listed for the 2011 Environmental Impact Statement ("EIS"), the 2,810 references listed for the 2014 Supplemental EIS, and over 1.5 million public comments received on the 2014 Supplemental EIS (reflected in 16,853 unique public comments reproduced in Volumes 5 and 6 of the Supplemental EIS) and over 3 million public comment received on the national interest determination.

2

agreement to the production of this data under a protective order. The Court should not lift the protections for those data for several reasons. First, the same data are subject to suit brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in the U.S. District Court for the District of Columbia. Out of comity, this Court should not require public production of the GIS data that could waive the applicable FOIA exemptions and thus effectively resolve the FOIA claims pending before the District of Columbia. However, even if the Court reaches the issue, Plaintiffs have not shown that public and private interests in disclosing the documents outweigh the need to keep the information confidential in accordance with the Protective Order.

## **STANDARD OF REVIEW**

Judicial review of final agency action under the APA is "narrow;" a court is prohibited from engaging in *de novo* fact-finding or substituting its judgment for that of the agency. *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971); *Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986). A court's "only task is to determine whether the [agency] has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 105 (1983) (citations omitted). In undertaking this review, a court is directed to "review the whole record or those parts of it cited by a party," 5 U.S.C. § 706. The Ninth

Circuit has interpreted "the whole administrative record" to mean all documents and materials that the agency decisionmaker considered directly or indirectly. *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted).

Each agency is entitled to a presumption of regularity that the agency's public officials properly discharged their official duties when designating the record. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citation omitted); *San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-cv-01290-LJO-GSA, 2016 WL 3543203, at *2 (E.D. Cal. June 23, 2016). The presumption derives from recognition "that the agency determines what constitutes the whole administrative record, because it is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it – namely, were directly or indirectly considered." *Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (quotation marks and citation omitted).

The party seeking to supplement the record must overcome this presumption by producing clear evidence to the contrary. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *McCrary*, 495 F. Supp. 2d at 1041. To overcome the presumption, a movant must present "clear evidence" that an agency withheld documents that its decisionmakers considered, for example, by applying the wrong

standard in compiling the record or omitting information required to be included.

*McCrary*, 495 F. Supp. 2d at 1041-42; *see Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). This evidence must be reasonable, non-speculative, and concrete, "identif[ied] . . . with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist." *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 288 (D.D.C. 2013). A "plaintiff must do more than imply that the documents at issue were in the [agency's] possession." *Pinnacle Armor v. United States*, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013) (alteration in original, citation omitted).

## **ARGUMENT**

## I.     **PLAINTIFFS' MOTION TO COMPLETE THE RECORDS FAILS**

Plaintiffs interpret an agency's obligation to produce the administrative record as akin to the scope of discovery under Federal Rule of Civil Procedure 26(b)(1) or an agency's obligation to respond to FOIA requests. *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002) (administrative records are distinguished from "FOIA's emphasis on every scrap of paper that could or might have been created." (citation omitted)), *aff'd*, 433 F.3d 852 (D.C. Cir. 2006). Plaintiffs' motion, although styled as one to complete the record, as a practical matter seeks disclosure of every internal document in the agencies' files that is relevant to the decisions at issue. But as discussed below, Plaintiffs fail to

overcome the presumption of regularity attached to the administrative records.

Furthermore, Plaintiffs apply the wrong standard in asserting that deliberative

documents should be included in the administrative record and cite no binding

cases that support their position that an administrative record should include

deliberative materials of the type sought here. Because such documents are not part

of administrative records, the request for a privilege log is also misplaced.

### A.     The Agencies Here Are Entitled to the Presumption of Regularity

The agencies' designation and certification of the administrative records are

treated like other established administrative procedures, and thus entitled to a

presumption of administrative regularity. *McCrary*, 495 F. Supp. 2d at 1041

(citations omitted). Here, each administrative record contains a certification from

agency personnel that these records contain "a true, accurate, and complete listing

of the documents and materials" considered by the respective decisionmakers

when making the decisions challenged in this litigation. *See* Certification of the

U.S. Department of State's Administrative Record (ECF No. 112-2), ¶ 2;

Declaration of Eliza Hines, FWS Field Office Supervisor (ECF No. 112-4), ¶ 3.

The State Department record spans 9 years, containing correspondence and

documentation of meetings between Department officials and members of

Congress, tribal representatives, State and local officials, the applicant,

contractors, advocacy groups, and other Federal agencies. Declaration of Jerry

Drake, ¶ 9. The Department's record also includes final briefing papers used to inform Department officials as well as final internal memoranda and outside studies. *Id.* The FWS record, dating back to 2009, includes talking points, briefing papers, and final consultation documents, as well as documents from state fish and game agencies and power providers. *See* Second Declaration of Eliza Hines, ¶ 4. Despite Plaintiffs' attempts to misconstrue the agencies' record certifications, or statements from counsel, it is clear the thousands of pages in the administrative records contain all material directly or indirectly considered by the decisionmaker. Plaintiffs' arguments to the contrary rest upon a misapplication of the term "indirectly before the decisionmaker" to include deliberative materials properly excluded from the records.

Besides broad categories of internal documents or properly excluded drafts and other deliberations, the only specific document that Plaintiffs' brief discusses is an April 2013 letter from the U.S. Environmental Protection Agency ("EPA") to the State Department. Pl. Mot. at 8. However, EPA's comments from this April 22, 2013 letter were reproduced verbatim in Volume 5 of the FEIS in the administrative record. DOSKXLDMT0007726-33.[2] Furthermore, Federal Defendants engaged in good-faith efforts with Plaintiffs to supplement the

---

[2] At Plaintiffs' request, Government Defendants have already agreed to supplement the record with a copy of the entire letter.

7

Administrative Record with any other relevant documents (or specific categories of documents) that Plaintiffs identified as missing from the record.[3]

As shown by the letter exchange attached to Plaintiffs' motion, Plaintiffs made a blanket request that Federal Defendants supplement their records with hundreds of documents listed on a spreadsheet that contains, in many cases, only cursory and unclear descriptions of documents. Upon review of the spreadsheet, Federal Defendants quickly determined that the first several documents listed were already contained in the record, see ECF No. 125-5 at 5, and also established that many additional letters listed are already contained in the FWS record. Informing Plaintiffs of these issues, Federal Defendants reiterated a willingness to discuss supplementation of particular documents. *Id.*

Plaintiffs instead filed the instant motion, simply requesting a blanket order for Federal Defendants to "complete" the record with unidentified documents that they assert may have been considered by the decisionmaker. Plaintiffs only guess at broad categories of documents that may exist and presume may have been considered by the relevant decisionmakers. Such conclusory allegations do not overcome the presumption that the administrative records are complete. Plaintiffs must "identify the materials allegedly omitted from the record with sufficient

---

[3] State Department supplemented its record with three draft EIS and has agreed to add specific comments from the Sierra Club. Before lodging with the Court on December 8, 2017, FWS also supplemented its record. *See* ECF No. 125-5.

specificity." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 20–21

(D.D.C. 2013) (citation omitted), *aff'd sub nom.*, *Dist. Hosp. Partners, L.P. v.

Burwell*, 786 F.3d 46 (D.C. Cir. 2015). Furthermore, Plaintiffs "must identify

reasonable, non-speculative grounds for its belief that the documents were

considered by the agency and not included in the record," and demonstrate that the

documents were before the actual decision makers involved in the determination.

*Pinnacle Armor*, 923 F. Supp. 2d at 1239 (citations omitted). They have not done

so here.

### B.     The Agencies Properly Excluded Deliberative Documents

As discussed above, Plaintiffs cannot meet their burden to overcome the

presumption of regularity by simply pointing to broad categories of internal,

deliberative, and predecisional documents. Such documents are not properly part

of an administrative record. Contrary to Plaintiffs' insinuation, Pl. Mot. at 8-9, the

agencies' candid statements that these documents were excluded from the records

filed with this Court does not mean that the records were "cherry-picked,"

improperly certified, or that the presumption of regularity is undermined.

It is long settled that agency action should be judged on the basis of the

agency's stated reasons for its decision. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88

(1943) (judicial review is confined to "a judgment upon the validity of the grounds

upon which the Commission itself based its action"); *see also Motor Vehicle Mfrs.*

*Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (citations omitted). It is "not the function of the court to probe the mental processes" of the agency. *Morgan v. United States*, 304 U.S. 1, 18 (1938) ("*Morgan I*").

The administrative record includes "all documents and materials directly or indirectly considered by agency decision-makers." *Thompson*, 885 F.2d at 555 (emphasis omitted). But Plaintiffs' approach conflates these materials - information considered by the decisionmakers and the grounds for their decisions, all of which are in the records - with the deliberations themselves or other preparatory steps taken by agency employees. The bare fact that predecisional, deliberative materials were generated during the decisionmaking processes, does not transform those materials into documents that were before the decisionmaker in any relevant sense and therefore part of the administrative record, any more than documents reflecting a trial court's predecisional deliberations, such as bench memos, other communications between judges and their staff, and drafts of decisions, are part of the trial record.

"Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected." *United States v. Morgan*, 313 U.S. 409, 422 (1941) ("*Morgan II*") (citations omitted). Accordingly, "such

inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Overton Park*, 401 U.S. at 420 (citation omitted). Where, as here, administrative findings are made at the time of the decision and have been included in the administrative record, *Overton Park* provides that "there must be a strong showing of bad faith or improper behavior before such inquiry may be made." *Id.* No such determination of bad faith or improper behavior was made here.

Applying these teachings, the D.C. Circuit, the only circuit to have squarely addressed the question,[4] holds that deliberative materials are outside the scope of APA review and not part of the administrative record. In *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission*, 789 F.2d 26, 44-45 (D.C. Cir. 1986),

---

[4] Plaintiffs rely heavily on *In re United States*, 875 F.3d 1200 (9th Cir. 2017), which is inapposite for several reasons. First, the decision was vacated by the Supreme Court less than five weeks later. *See* 138 S. Ct. 443 (2017). Plaintiffs assert the decision was vacated on "other grounds," Pl. Mot. at 8 n.3, but this is not quite accurate. In assessing the district court's order to provide internal communications and deliberations, the Supreme Court stated that the government "makes serious arguments that at least portions of the District Court's order are overly broad." 138 S. Ct. at 445. Second, the Ninth Circuit decision is of little persuasive authority, as the panel did not squarely address the questions at issue here. Rather, the question before the panel was whether the government satisfied the standard for mandamus relief, which turns on whether the district court committed "clear error." 875 F.3d at 1205 (citation omitted). But the panel recognized that the Ninth Circuit has "not yet clarified the exact scope of 'indirectly considered'" with respect to the contents of administrative records, *id.* at 1207, meaning that the panel could find no clear error even in the absence of affirmative Ninth Circuit standards. Thus, while the vacated decision discusses other decisions on the topic, it provides no new precedent relevant to the questions at issue here.

the *en banc* D.C. Circuit considered a motion to supplement the administrative record with transcripts of a closed-door meeting of the Nuclear Regulatory Commission discussing the challenged license application. The court rejected that effort, stating that "[j]udicial examination of these transcripts would represent an extraordinary intrusion into the realm of the agency", and that the petitioners must make a "strong showing of bad faith or improper behavior" before the court would be "warranted in examining the deliberative proceedings of the agency." *Id.* (quoting *Overton Park*, 401 U.S. at 420). The court analogized an agency's deliberations to the deliberative processes of a court and stated that, "[w]ithout the assurance of secrecy, the court could not fully perform its functions." *Id.* The D.C. Circuit has subsequently reiterated that "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law" to APA review. *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998), *denial of reh'g en banc* (citing, *inter alia*, *Overton Park*, 401 U.S. at 420; *Camp v. Pitts*, 411 U.S. 138 (1973); *Morgan II*, 313 U.S. 409).

District courts within the D.C. Circuit have adhered to that reasoning in rebuffing requests to compel the inclusion of deliberative materials in administrative records. *See, e.g.*, *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 52-53 (D.D.C. 2009) ("*Oceana I*") (collecting cases), *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011); *Stand Up for Cal. v. U.S. Dep't of Interior*, 71 F. Supp. 3d

12

109, 123 (D.D.C. 2014). As one court explained, "[a]s pre-decisional, deliberative documents are immaterial to the court's decision [under the APA], they are not designated part of the administrative record that forms the basis of the court's decision." *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009); *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 319-20 (D.D.C. 2016) ("*Oceana II*") (extended discussion of rationale for excluding deliberative materials from administrative record). Administrative records do not include "every scrap of paper that could or might have been created" on a subject. *TOMAC*, 193 F. Supp. 2d at 195.

Some courts within this Circuit also have held that deliberative materials are outside the scope of administrative review. *See, e.g.*, *ASSE Int'l v. Kerry*, 8:14-cv-00534-CJC-JPR, Order Deny. Pls.' Mot. to Enforce Compl. with the Court's June 21, 2017, Order (C.D. Cal. Jan. 3, 2018), at 5 ("[P]rivileged materials are not part of the administrative record in the first instance.") (attached as Exhibit A); *Carlsson v. U.S. Citizenship & Immigration Servs.*, No. 2:12-cv-7893-CAS(AGRx), 2015 WL 1467174, at *7 n.5 (C.D. Cal. Mar. 23, 2015); *California v. U.S. Dep't of Labor*, No. 2:13-cv-2069-KJM-DAD, 2014 WL 1665290, at *13 (E.D. Cal. Apr. 24, 2014) (citations omitted). And although the Ninth Circuit has not squarely addressed the issue, it has strongly suggested that deliberative materials are not properly part of administrative records. *Portland Audubon Soc'y*

*v. Endangered Species Comm.*, 984 F.2d 1534 (9th Cir. 1993), involved a request for discovery regarding alleged *ex parte* contacts with the committee charged with granting exemptions from ESA requirements. The Court distinguished the purely internal deliberations at issue in the D.C. Circuit's *Mothers for Peace* case (and at issue here) from "allegedly improper *ex parte* contacts between decisionmakers and outside parties." 984 F.2d at 1549. In so doing, the Court approvingly cited *Mothers for Peace* in suggesting that the administrative record includes "neither the internal deliberative processes of the agency nor the mental processes of individual agency members." *Id.*[5]

Plaintiffs point to a 1999 Department of Justice guidance document as support for including deliberative materials in administrative records. Pl. Mot. at 6 n.2. Precisely because litigants were improperly relying on the 1999 memorandum in such a manner, in 2008, the Department of Justice clarified that the 1999 memorandum does not dictate any requirement for assembly of administrative records - decisions that remain squarely within the discretion of each federal agency. *See* Exhibit B. The Department further clarified:

---

[5] Additionally, in a 2010 unpublished disposition, the Court denied a motion to supplement the administrative record (and provide a privilege log) to include various documents, including internal, deliberative and predecisional materials. The Court stated that it will "assume that an agency properly designated the Administrative Record absent clear evidence to the contrary," and held that the petitioner had made no such showing. *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (citation omitted).

> The Department of Justice has defended in litigation the legal position that deliberative documents are not generally required in an administrative record, and thus has also defended the position that in such circumstances no privilege log reflecting such documents would need to be prepared. The 1999 document should not be read as casting doubt on this legal position.

*Id.* Furthermore, in 2017, the Department of Justice reaffirmed that its official position is that deliberative documents are not properly considered part of administrative records and that agencies do not need to develop privilege logs for such documents. *See* Exhibit C. As the Department explained in a petition for mandamus pending before the Ninth Circuit,[6] "agency deliberative documents— i.e., documents reflecting the agency's predecisional, deliberative process— generally are not relevant to APA review, and including them in the administrative record would inhibit agency decision-making." *Id.*

In sum, the Supreme Court has repeatedly instructed courts not to "probe the mental processes" of the agency in administrative cases. *Morgan I*, 304 U.S. at 18; *Morgan II*, 313 U.S. at 422. Thus, the types of deliberative materials that Plaintiffs seek to add would not "complete" these administrative records, as they are irrelevant to this Court's judicial review. Plaintiffs' motion should be denied.

---

[6] *In re Thomas E. Price*, Ninth Cir. No. 17-71121.

**C.      The Agencies Are Not Required to Log Deliberative Materials**

Because deliberative materials are outside the scope of the administrative
record in the first instance, the agency is not required to produce a privilege log to
identify them and explain their exclusion. *Oceana II*, 217 F. Supp. 3d at 320
(declining to "requir[e] all predecisional and deliberative documents to be logged
in a *Vaughn*–type index[,] [which] would place a significant burden on agencies
whose decisions are challenged as arbitrary and capricious"); *see also Am.
Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 265
(D.D.C. 2013); *Chain Drug Stores*, 631 F. Supp. 2d at 27.

District courts in the Fourth and Seventh Circuits have reached similar
conclusions. "The law is clear: [since] predecisional deliberative documents are not
part of the administrative record to begin with . . . they do not need to be logged as
withheld from the administrative record.'" *Great Am. Ins. Co. v. United States*, No.
12-C-9718, 2013 WL 4506929, at * 8 (N.D. Ill. Aug. 23, 2013) (citation omitted);
*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, No. CV ELH-16-1015,
2017 WL 3189446, at *21–22 (D. Md. July 27, 2017) ("no privilege log is required
for deliberative materials that are not properly part of the administrative record in
the first instance"); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 801 (E.D. Va. 2008) (no
privilege log required when "internal emails, correspondence, summaries, and

drafts [sought] are not properly part of the administrative record in the first place.").

Although Plaintiffs point to some district court decisions requiring agencies to file privilege logs, the Ninth Circuit has not expressly decided whether deliberative documents are presumptively part of the record, as discussed above. Accordingly, there is no presumption in this Circuit that a privilege log for deliberative materials is required. Indeed, although unpublished and brief, the Ninth Circuit has denied the request for a privilege log at least once. *Cook Inletkeeper*, 400 F. App'x at 240. Furthermore, while the Northern District of California has required privilege logs in some cases, decisions from other courts within this circuit agree with the more prevalent reasoning of the D.C. Circuit. *E.g., Kerry,* Jan. 3, 2018 Order at 6 ("As a corollary to the fact that privileged materials are not part of the administrative record in the first instance, an agency is not required to produce a privilege log to justify its exercise of the privilege."); *Jewell*, 2016 WL 3543203, at *19 (deliberative documents are not properly included in an administrative record, and requiring a privilege log so plaintiffs and court could review agency's record compilation would contravene presumption of regularity and conflate an administrative record case with discovery requirements in a non-record case) (citation omitted); *California*, 2014 WL 1665290, at *13 (citing *Chain Drug Stores* and *Cook Inletkeeper* to deny request to compel a

17

privilege log because internal agency deliberations are properly excluded from the administrative record).

Moreover, courts recognize that it would be highly resource-intensive to require agencies to keep and track all predecisional material and, ultimately, would undermine the review process. *See, e.g.*, *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 372 (D.D.C. 2007) (requiring collection and cataloguing of all internal communications among agency officials and other deliberative documents "would transform the process of judicial review of administrative decisions greatly even if limited to specific instances of claimed deficiencies," and necessitate resolution of the privilege invocation before judicial review of the challenged decision could even begin); *Oceana II*, 217 F. Supp. 3d at 320 (significant agency resources required to review and log deliberative materials, and subsequent judicial resolution of challenge to any withholdings, "would not be well spent, given that those materials 'are immaterial as a matter of law'" (citation omitted).

The same would be true here. FWS estimates that an order to produce a privilege log would require review of over 1,200 emails alone, in addition to their attachments. *See* Second Hines Decl. ¶ 9. Because of the limitations on available staff to conduct these reviews, in addition to internal legal review, FWS anticipates that it would take forty-five business days, or nine weeks, in order to produce a privilege log. *Id.* ¶¶ 9-11. For its part, the State Department estimates that it will

18

take over six years to compile the relevant documents and then review, process, and complete production of a privilege log. *See* Drake Decl. ¶¶ 5-11. This estimate is based on the extensive agency resources required to produce the December 8, 2017 administrative record as well as a similar project of smaller size and scope. *Id.* ¶¶ 5-8, 15. However, it is a conservative estimate, given that the review required for this privilege log is even more complicated. *Id.* ¶ 16. This would be "an extraordinary burden on the Department, and would be the largest and most challenging document review project that we have faced," and the State Department does not have the existing budgetary resources to hire an outside contractor to assist with such a project. *Id.* ¶ 17. Of course, these estimates also assume that these personnel work full time on these productions, to the detriment of their other job responsibilities. Second Hines Decl. ¶ 9; Drake Decl. ¶¶ 6, 7, 17.

At bottom, there is simply no legal justification to require this extensive drain of agency resources. As the Supreme Court held in *Overton Park*, judicial inquiry into the deliberative process is not permitted. And, as the Court reaffirmed in *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007), changes in position are not evidence of arbitrary or capricious decisionmaking. Thus, there is no sound basis for requiring the inclusion of deliberative documents, because they are irrelevant to the Court's task of reviewing whether the agency's stated rationale for its action is reasonable and

19

supported by the record. Consequently, there is no justification to impose the burden of preparing a privilege log.

Accordingly, Plaintiffs' demand for privilege logs is misplaced and should be rejected.

## II.     THE COURT SHOULD RETAIN THE CONFIDENTIALITY DESIGNATION FOR THE GIS DATA

After initially agreeing to the production of GIS data regarding the Keystone XL Pipeline route under a Protective Order (ECF No. 122), the Plaintiffs now seek to lift the protections of the Protective Order with respect to the very same data. The Court should not do so. As an initial matter, the same data are subject to a FOIA lawsuit in the U.S. District Court for the District of Columbia, and the public release of the data in this case could result in the waiver of otherwise applicable FOIA exemptions. Therefore, as a matter of comity, the Court should refrain from resolving the ultimate issue in that case, *i.e.*, whether the data should be publicly disclosed, until the claims in that case are adjudicated. Moreover, good cause exists to protect the GIS data as TransCanada's confidential business information and because the public release of the information could adversely affect public health and safety. Furthermore, Plaintiffs have failed to show that they would be prejudiced in anyway by keeping the GIS data confidential. Accordingly, the GIS data should be kept confidential in accordance with the Protective Order.

The Court should not order the public production of the GIS data because the same data are subject to a FOIA lawsuit pending in U.S. District Court for the District of Columbia. *See Ctr. for Biological Diversity v. U.S. Dep't of State*, No. 1:17-cv-937 (TSC) (filed May 18, 2017). The public release of the GIS data could result in a waiver of applicable FOIA exemptions, thus effectively resolving the FOIA claim. *See Fitzgibbon v. CIA,* 911 F.2d 755, 765 (D.C. Cir. 1990). Keeping the data confidential under the Protective Order should not result in a waiver. *See Stonehill v. IRS*, 558 F.3d 534, 538-40 (D.C. Cir. 2009). Thus, in order to avoid resolving claims pending in front of another court without the benefit of full briefing on these complex and significant legal issues, as a matter of comity, the Court should not order the public disclosure of the GIS data pending the outcome of the FOIA case, which was filed first. *See Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) ("[T]he comity . . . doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." (citation omitted)), *overruled on other grounds by Animal Legal Def. Fund v. FDA.*, 836 F.3d 987 (9th Cir. 2016).

In any event, as evidenced by determinations that have been made by the agencies in the context of the FOIA case, good cause exists to protect the GIS data from disclosure under the terms of the Protective Order. In general, in the preliminary stage of a case, a court must find good cause in order to issue a

protective order to protect documents produced in litigation from being disclosed to the public. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002).[7] In determining whether there is good cause to continue the protections of a protective order, a court should engage in a two part inquiry. *In re Roman Catholic Archbishop of Portland Or.*, 661 F.3d 417, 424 (9th Cir. 2001). First, a court should "determine whether particularized harm will result from disclosure of information to the public." *Id.* (quoting *Phillips*, 307 F.3d at 1211). The party opposing the disclosure must "allege specific prejudice or harm." *Id.* (citations omitted). Second, if the court finds that such harm would occur from the public disclosure of the documents, the court should then "balance the public and private interests to decide whether [maintaining] a protective order is necessary." *Id.* (quoting *Phillips*, 307 F.3d at 1211) (internal quotation marks omitted).[8]

_____

[7] In non-record review cases, the "good cause" standard applies to documents exchanged during discovery, and a higher "compelling reasons" standard applies to "dispositive pleadings, including motions for summary judgment and related attachments." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Here, record documents are akin to discovery documents and are not dispositive pleadings, and therefore the good cause standard should apply. Nevertheless, even if the Court applies a compelling reasons standard, the GIS data should not be publicly released for the reasons stated herein.

[8] In balancing the public and private interests, a court should consider a number of factors, including "whether disclosure will violate any privacy interests" and "whether the sharing of information among litigants will promote fairness and efficiency." *Roman Catholic Archbishop*, 661 F.3d at 424 & n.5 (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

The GIS data should be protected from disclosure both because it is TransCanada's confidential business information and because its release could result in harm to public health and safety. First, the protection of a company's confidential business information is a common basis for the entry of a protective order. *See Phillips*, 307 F.3d at 1211 (citing Fed. R. Civ. P. 26(c)(7)) ("The law, however, gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information."); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

TransCanada has demonstrated that the GIS route data reveal trade secrets that should not be publicly disclosed. With respect to the requested release of the GIS data in light of the District of Columbia FOIA litigation, TransCanada explained that the disclosure of the GIS data, "which reflect detailed and careful routing and facility information developed at great effort and cost to [TransCanada], would allow a competitor to make affirmative use of the data to develop their own pipeline system without incurring the same substantial investment costs that TC Oil has incurred."  Nov. 6, 2017 Letter from TransCanada to the U.S. Department of State at 2, Declaration of Eric F. Stein, Ex. 1; *see also id.* at 4-7.

TransCanada's letter in the context of the FOIA litigation amply demonstrates that the GIS data is confidential business information and that its public release could result in specific harm to TransCanada. The State Department and FWS reviewed TransCanada's letter and agreed that the GIS route data constituted confidential business information and that it should be protected from release under FOIA. Stein Decl. ¶¶ 5-7; Declaration of Cathy Willis ¶¶ 10-13. Therefore, the information should be protected as TransCanada's confidential business information. *See*, *e.g.*, *Takata v. Hartford Comprehensive Emp. Benefit Serv. Co.*, 283 F.R.D. 617, 621 (E.D. Wash. 2012) (entering protective order to protect confidential business information from disclosure); *Todd v. Tempur-Sealy Int'l*, No. 13-cv-04984-JST (MEJ), 2015 WL 1006534, at *7-8 (N.D. Cal. Mar. 6, 2015) (same); *Unilin Beheer B.V. v. NSL Trading Corp.*, No. CV 14-2210 BRO (SSx), 2015 WL 12659918, at *4 (C.D. Cal. Jan. 8, 2015) (same).

Second, the GIS data should be protected from disclosure because the release of the data showing the exact location of the pipeline could endanger lives and physical safety. *See Seattle Time Co. v. Rhinehart*, 467 U.S. 20, 26-29 (1984) (upholding a protective order entered to prevent the harassment and physical harm of the defendants). As TransCanada explained in its submission regarding the FOIA matter, the GIS data "could be useful to persons who desire to disrupt the continued safe operation of the pipeline by identifying how to assess vulnerabilities

24

and to select high-impact locations based on the pipeline's characteristics and operations." Nov. 6, 2017 Letter at 6. TransCanada has reason to be concerned about attacks on its pipeline facilities because an attack on the Keystone Pipeline's shutoff valves occurred in November 2016. *Id.* at 6-7. Any such attack would not only result in harm to property and potentially the release of oil, but could endanger lives and physical safety. *Id.* at 7. Based on this information, the State Department determined that the information was protected from disclosure under FOIA exemption 7.[9] *See* Stein Decl. ¶¶ 8-9.

Having established that specific harm to TransCanada and the public could occur if the information is released, the Court should then balance the public and private interests offered by Plaintiffs to determine whether the GIS data should be released. *See Roman Catholic Archbishop*, 661 F.3d at 424. The grounds offered by Plaintiffs for releasing the data are insufficient to overcome the specific harm from their release. Plaintiffs complain that the terms of the Protective Order will make it more difficult for them to file briefs. *See* Pl. Mot. at 12-13 n.5. Putting aside that Plaintiffs previously agreed to those terms,[10] the mere fact that Plaintiffs

---

[9] Exemption 7 is not limited to information that is compiled for investigation and prosecution of crimes, but may include information relating to "[c]rime prevention and security measures." *Milner v. Dep't of Navy*, 562 U.S. 562, 582-83 (2011) (Alito, J., concurring opinion). Information collected for multiple purposes may also fall within the exemption. *Id.*

[10] The fact that Plaintiffs originally agreed to the production of the GIS data under the Protective Order should weigh against disclosure. *See In re Adobe Sys. Sec.*

may be required to file sealed briefs is insufficient to overcome the harm to TransCanada as well as public health and safety identified above. Plaintiffs have the information that they requested and will be able to use that information to make their substantive arguments during merits briefing. Therefore their interests will not be prejudiced.

Plaintiffs also claim that the information should not be protected because the general location of the pipeline and related facilities are known and the specific locations will be known when construction begins. *See* Pl. Mot. at 14. But while the general location of the pipeline route is known and is depicted in the Supplemental Environmental Impact Statement, the precise locations of the pipeline and related facilities are not known. And to the extent that the precise location of the pipeline will eventually be public, Plaintiffs have failed to explain why there is no need to publicly disclose that information now. In short, Plaintiffs have failed to show that public and private factors outweigh the potential harm to TransCanada and the public if the GIS data were to be released. *See Todd*, 2015 WL 1006534, at *7 (entering a protective order where the plaintiffs failed to identify "a legitimate purpose for disclosing the challenged materials other than the public's right to know").

---

*Litig.*, 141 F.R.D. 155, 163 (N.D. Cal. 1992) ("Information is also less likely to remain confidential if the person seeking the information did not agree to the original protective order.") (citation omitted).

Accordingly, as originally agreed to by Plaintiffs, the Court should maintain the confidentiality of the GIS data in accordance with the terms of the Protective Order.

## **CONCLUSION**

For the reasons stated above, Federal Defendants respectfully request that the Court deny Plaintiffs' motion.

Respectfully submitted this 22nd day of January, 2018,

JEFFREY H. WOOD, Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

SETH M. BARSKY, Section Chief
        */s/ Bridget K. McNeil*
BRIDGET KENNEDY McNEIL (CO Bar 34299)
Senior Trial Attorney
Wildlife and Marine Resources Section
999 18th St., South Terrace, Suite 370
Denver, Colorado 80202
Ph: 303-844-1484
bridget.mcneil@usdoj.gov

        */s/ Luke Hajek*
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Ph: 303-844-1376
luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2)(E), the foregoing brief is proportionately spaced, has a typeface of 14 points, and contains 6,460 words, excluding the tables, caption, signature, certificate of compliance, and certificate of service.

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, a copy of the foregoing opposition brief was served on all counsel of record via the Court's CM/ECF system.

*/s/ Bridget K. McNeil*
BRIDGET KENNEDY McNEIL
U.S. Department of Justice