Jeffery J. Oven  
Mark L. Stermitz  
Jeffrey M. Roth  
CROWLEY FLECK PLLP  
490 North 31st Street, Ste. 500  
Billings, MT 59103-2529  
Telephone: 406-252-3441  
Email: joven@crowleyfleck.com  
    mstermitz@crowleyfleck.com  
    jroth@crowleyfleck.com  

Peter R. Steenland  
Peter C. Whitfield  
Lauren C. Freeman  
SIDLEY AUSTIN LLP  
1501 K Street, NW  
Washington, DC 20005  
Telephone: 202-736-8000  
Email: psteenland@sidley.com  
    pwhitfield@sidley.com  
    lfreeman@sidley.com  

*Counsel for TransCanada Keystone Pipeline, LP and TransCanada Corporation*

IN THE UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF MONTANA  
GREAT FALLS DIVISION

| | |
|---|---|
| INDIGENOUS ENVIRONMENTAL NETWORK, *et al.*,<br><br>and<br><br>NORTHERN PLAINS RESOURCE COUNCIL, *et al.*,<br><br>    Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>    Federal Defendants,<br>and<br><br>TRANSCANADA CORPORATION, *et al.*,<br><br>    Defendant-Intervenors. | CV 17-29-GF-BMM<br>CV 17-31-GF-BMM<br><br>**DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO AMEND THE COURT'S ORDER ON SUMMARY JUDGMENT** |

TransCanada has asked the Court to clarify or amend the scope of its injunction in order to permit TransCanada to resume limited preconstruction activities that should not be impacted by the vacatur of the Record of Decision/National Interest Determination (ROD/NID), have no irreparable environmental consequences, and will not harm Plaintiffs.  The Court held a status conference on November 28, 2018, to address TransCanada's request for relief.  Following the conference, the Court allowed TransCanada to resume activities as described in paragraphs 16 and 17 of the Norrie Ramsay Declaration (Doc. 222-1) and reserved ruling on the activities in paragraph 18 (Paragraph 18 activities).

Northern Plains Resource Council Plaintiffs ("Northern Plains") requests that the Court enjoin TransCanada from resuming Paragraph 18 activities, claiming that the field activities will cause irreparable environmental harm and prejudice the ongoing federal decision-making.[1]  Paragraph 18 of the Ramsay Declaration describes the type of field activities that TransCanada needs to undertake prior to construction in order to be ready to initiate construction should it receive authorization to do so.  Some of these activities, like mowing limited, selected portions of the right-of-way, have been completed and will not be repeated.  Others, like transporting pipe from mills to pipe storage yards and preparing those

---

[1] Northern Plains does not oppose TransCanada's request to perform cultural, biological, civil and other surveys referenced in Paragraph 18 of the Ramsay Declaration. (Northern Plains Br. at 3)

1

pipe storage yards by grading the private property on which they are located, as well as preparing worker camp sites, were underway but not completed at the time of the Court's ruling. And, still others, such as transporting worker camp modules to the camp yards, have not yet begun. None of these remaining activities would produce irreparable environmental harm or prejudice the supplemental environmental review. Thus, Northern Plains' arguments are meritless and do not warrant enjoining these activities.

### I.     Argument

The activities TransCanada seeks to clarify as outside of the permanent injunction should be allowed to go forward because they will not cause irreparable harm to Northern Plains, do not affect the supplemental National Environmental Policy Act (NEPA) review, and are not those authorized by the Presidential Permit. Put simply, there is no merit to Plaintiffs' assertion that mere ground disturbance constitutes irreparable environmental harm, especially when these grounds are required to be remediated and restored. TransCanada is proposing to grade private property so it can store pipe and place worker camp modules on the property to facilitate construction, if construction is allowed to commence. This is not surface mining. Under *The Lands Council v. McNair*, Plaintiffs' clams must be rejected. 537 F.3d 981, 1004-05 (9th Cir. 2008)(en banc), *overruled on other grounds by*

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), *as recognized in Turtle Island Restoration Network v. DOC*, 878 F.3d 725, 739 (9th Cir. 2017).

### A. The Paragraph 18 Activities Do Not Irreparably Harm Plaintiffs

For most of 2018, TransCanada has been conducting preconstruction activities without objection from Plaintiffs. Now, Plaintiffs contend that resumption of this work irreparably harms them. But none of the activities TransCanada will conduct would irreparably change the landscape or permanently impact the environment. Thus, the Paragraph 18 activities will not produce irreparable harm.

To date, TransCanada has prepared 12 pipe yards and will prepare only 2 more for a total of 14 (7 in Montana and 7 in South Dakota). TransCanada has completed surface mowing of limited, selected portions of the right-of-way and the current preconstruction mowing program is complete (i.e. TransCanada will not do more mowing prior to any actual construction). TransCanada has upgraded roads in Montana and has moved some pipe to off right-of-way storage yards. All through this process, TransCanada was transparent and disclosed to the parties and Court that this work was ongoing. *See* Transcript of Hearing on Motions at 136:21 – 137:20; *see also* Doc. 204 at 2; Doc. 216. Plaintiffs never sought to enjoin this work. During summary judgment briefing, none of the Plaintiffs challenged the NEPA or Endangered Species Act (ESA) analysis as being deficient due to an

3

inadequate analysis of impacts associated with preconstruction activities. Thus, there is no finding by this Court that the contested activities are being conducted under a flawed NEPA or ESA analysis. Northern Plains cannot now claim irreparable harm. *Earth Island Inst. v. Carlton,* 626 F.3d 462, 474 (9th Cir. 2010).

The additional work TransCanada seeks to do is similar in kind, if not identical to that already completed. For example, TransCanada has leased four sites off the right-of-way of approximately 40 acres each, which it plans to grade and fence to make suitable for workforce housing in 2019 – none of which are in Nebraska where additional NEPA analysis is ongoing.[2] This is the same type of work as that TransCanada has done on 12 pipe yards to date. TransCanada also seeks to continue with road improvement projects, transporting and storing pipe, and preparing the remaining two pipe yards. Contrary to concerns expressed by Northern Plains, this work would not require construction of private roads, would not cross or be in proximity to water bodies, and would not involve removal of any trees or any application of pesticides or herbicides. The camp sites and pipe yards have already been surveyed for protected species and cultural resources, none of which were found.

---

[2] Contrary to Northern Plains' claim, TransCanada will prepare 14 pipe yards, not 20; and it will prepare 4 work camps, not 8. (Northern Plains Br. at 7). Additionally, the work camps will be 40 acres in size, not 5-100. *Id.*

TransCanada also seeks to patrol limited, selected areas of the right-of-way to discourage migratory bird nesting. Given the relatively small area within the right-of-way, such activity poses no harm to migratory birds as they can easily find nesting areas within a short distance.[3] *See W. Watersheds Project v. BLM*, 774 F. Supp. 2d 1089, 1102 (D. Nev. 2011) (temporary and limited disturbance of sage grouse did not constitute irreparable harm).

None of the Paragraph 18 activities is permanent, as the activities will not produce a lasting impact on the environment. Pipe yards and worker camps will be removed and the land it occupied remediated – the fences will be taken down and the soil and vegetation returned to its original condition. The equipment and machinery will be moved off the project site and sent to its next location. Migratory birds can come back and nest in the locations they choose. Indeed, TransCanada agreed to remediate these areas to return them to their original condition. DOSKXL6937 ("During the final stages of construction, backfilling and grading would restore the *construction ROW* to its approximate previous contours, and restoration and revegetation would ultimately return the ROW to its approximate previous condition except in currently forested areas along the permanent ROW." (emphasis added)); DOSKXL5979 ("Pipe yards and contractor

---

[3] Nor does it constitute prohibited activity under the Migratory Bird Treaty Act, as Northern Plains claims. The definition of "take" under that statute is limited and does not encompass harassment. *See* 16 U.S.C. § 718j(5) (defining take as "to pursue, hunt, shoot, capture, collect, or kill" or to attempt to do the same).

5

yards would be used on a temporary basis and would be reclaimed, as appropriate, upon completion of construction"); DOSKXL5986 ("Each [camp] site would then be restored and reclaimed in accordance with permit requirements and the applicable procedures described in Keystone's CMRP."). If these modest pre-construction activities were as impactful and harmful as alleged by, Northern Plains, one would expect Plaintiffs to point to earlier projects where pipeline yards and worker camps continue to scar the land, long after construction was completed. But they have pointed to no such conditions and provided only unsupported speculation as to the impact of this work. Surely if such activities caused irreparable harm, Northern Plains would have been able to identify such harms.

Contrary to Plaintiffs' belief, these activities are not akin to mining, logging, or any other activity that cannot be undone in a short period of time. *See Mont. Envtl. Info. Ctr. v. U.S. Office of Surface Mining*, No. CV-15-106-M-DWM, 2017 WL 5047901, at *3 (D. Mont. Nov. 3, 2017) (mining irreparable because coal cannot be put back in the ground). The minor impacts from Paragraph 18 activities are the antithesis of "irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (irreparable harm connotes impacts that are "often permanent or at least of long duration"); *Earth Island Inst.*, 626 F.3d at 474 ("Earth Island's argument that logging is per se enough to warrant an injunction because it constituted irreparable environmental harm was squarely rejected by *McNair*

where we declined 'to adopt a rule that *any* potential environmental injury *automatically* merits an injunction'"). As such, they do not constitute irreparable harm.

### B. The Paragraph 18 Activities Do Not Prejudice the NEPA Review

Northern Plains also argues that if TransCanada continues Paragraph 18 activities that it will prejudice the NEPA process. This is not so for two reasons.

First, the NEPA process is being conducted by the Department of State as the federal entity delegated to decide on the national interest question pertaining to TransCanada's application for a Presidential Permit. Moreover, it has already been demonstrated that if the Administration concludes that this permit is not in the national interest, it could again deny a permit to TransCanada.

Second, in vacating the ROD/NID, the Court directed State to consider new information on GHG impacts, oil spills, oil prices, and the revised Nebraska route. It also requested that State supplement information on acres that were not surveyed for cultural resources at the time of the 2014 Final Supplemental Environmental Impact Statement (FSEIS) and provide a more detailed rationale on its policy charge regarding the NID. The Court upheld the heart of the NEPA review – the alternatives analysis – as well as the purpose and need statement, the response to comments, conservation measures, and the analysis of impacts to numerous species. Accordingly, the Court did not charge State with the obligation to re-do

7

its entire analysis on remand. Instead, State must take a hard look at a limited number of issues.

The Paragraph 18 activities do not bear upon the supplemental analysis State is performing. Preconstruction activities are unrelated to potential operational *impacts.* The faults identified by the Court on summary judgment – issues regarding GHG impacts, oil prices, and oil spills – involve impacts alleged from the operation of Keystone XL. The remainder of the issues – analysis of the revised Nebraska route and cultural resource surveys – pertain to physical construction of Keystone XL (i.e., putting the pipeline in the ground). Moreover, all of the camp site and pipe yard acres at issue here have been surveyed.

Clearly, Paragraph 18 activities are temporary in nature and are not part of the operation of Keystone XL. Nor are these activities the same as physical construction of the pipeline. In fact, the activities Northern Plains protests are not even located in the pipeline right-of-way. As stated in the Ramsay Declaration, such activities include:

- preparation of *off-right-of-way* pipe storage and contractor yards;
- transportation, receipt and off-loading of pipe at *off-right-of-way* storage yards;
- preparation of sites for *off-right-of-way* worker camps

Ramsay Decl. ¶18 (Doc. 222-1) (emphasis added).

Northern Plains fails to demonstrate that Paragraph 18 activities would specifically impact any of the analysis the Court requested on remand and suggests only that the activities would further entrench the project and predetermine its route. (Northern Plains Br. at 13). But Northern Plains has offered no basis for why expenses bourn by TransCanada would influence State's decision. Even the case they cite in support of its argument found no basis for assuming the agency would likely alter its analysis if the challenged mineral leases were not voided. *See N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157 (9th Cir. 1988) ("We see no reason to suppose that the Secretary will feel greater commitment to the original project if the leases are not voided but held in abeyance until a new evaluation is made.").[4] In fact, none of the three previous decisions on the Presidential Permit were influenced by the amount of work TransCanada had completed. DOSKXL1157 (2015 ROD); DOSKXL2490 (2017 ROD). As noted earlier, in light of the previous denial of a Presidential Permit, even the amount of time and resources State previously invested in the review of Keystone XL did not create "bureaucratic momentum."[5] Accordingly, Northern Plains' argument that

---

[4] Northern Plains' other cited cases are inapposite as the court either vacated the action at issue and declined to issue an injunction, *High Country Conservation Advocates v. U.S. Forest Serv.*, 67 F. Supp. 3d 1262, 1265 (D. Colo. 2014) ("I do not find that equitable considerations tip the scales in favor of a temporary injunction."), or the court issued a preliminary injunction to preclude substantial completion of the challenged activity until it could reach a decision on the challenged action, *Colo. Wild Inc. v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1221 (D. Colo. 2007).

[5] Moreover, this is not a case where the government agency is expending its own resources in furtherance of a project. *See Bair v. Cal. Dep't of Transp.*, No. C 10-04360 WHA, 2011 WL 2650896, at *9 (N.D. Cal. July 6, 2011).

9

Paragraph 18 activities would create bureaucratic momentum that biases the review process is purely rhetorical.

### C. The Presidential Permit Does Not Govern Pre-Construction Activity

Northern Plains contends that the Court's vacatur of the ROD/NID requires cessation of field activities in Montana and South Dakota. The Paragraph 18 activities at issue here were not authorized under the Presidential Permit. Thus, a narrowly tailored injunction should not encompass those activities.

The only activity before this Court – the only decision the Court reviewed and vacated – is that authorized by the Presidential Permit. The Presidential Permit granted TransCanada permission "to construct, connect, operate, and maintain pipeline facilities *at the international border of the United States and Canada at Morgan, Montana*, for the import of crude oil from Canada to the United States." DOSKXL2485. The permit did not grant TransCanada permission to construct beyond this area, nor did it speak to activities ancillary to construction, such as those TransCanada is requesting here. The Paragraph 18 activities TransCanada seeks to continue are the type authorized by state and local governments and are subject to state and local permitting, as they are on private land. In fact, TransCanada has valid state permits authorizing construction of the

10

pipeline. The Paragraph 18 activities simply are not within the scope of the Presidential Permit. Thus, the Court's order should not extend to these ancillary and otherwise lawful activities.[6] *See Wilderness Watch v. Vilsack*, No. 4:16-CV-012-BLW, 2017 WL 3749441, at *2 (D. Idaho Aug. 30, 2017) (narrowly tailoring injunction to address only the decision challenged in the case), *appeal filed*, No. 17-35882, 2017 WL 3749441 (9th Cir. Oct. 30, 2017); *W. Watersheds Project v. Salazar*, No. 4:08-CV-516-BLW, 2012 WL 5880658, at *4 (D. Idaho Nov. 20, 2012) (holding "a remedy that goes beyond fixing the deficient RMPs [Resource Management Plans] to impose grazing restrictions on all allotments would not be 'tailored to remedy the specific harm alleged'").

### D. Injunctions Must be Narrowly Tailored and based on Balancing of Equitable Factors

A narrowly tailored injunction should not encompass the Paragraph 18 activities, as such restriction is overbroad and imposes substantial harm on TransCanada. "Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion." *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007). A "NEPA injunction predicated on preventing environmental harm can be overbroad if it

---

[6] NEPA does not authorize such activities because NEPA is purely a procedural statute. *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1070 (9th Cir. 2002) ("NEPA is a purely procedural statute. 'NEPA does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions.'").

11

restricts nonharmful actions—even ones that are precursors to other actions that are potentially harmful." *Nat'l Audubon Soc'y v. Dep't of Navy*, 422 F.3d 174, 201 (4th Cir. 2005). *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

While Northern Plains argues that TransCanada's injury is solely attributable to the vacatur of the ROD/NID or the legal deficiencies the Court found, that is not true. The Court did not find that the discussion in the FSEIS regarding the impacts of preconstruction activities was deficient in any way. In fact, Plaintiffs never claimed such analysis was deficient. Instead, the Court upheld a substantial portion of the FSEIS, but nonetheless enjoined all activity.

However, if TransCanada cannot continue preparatory preconstruction activities, it will not be positioned to begin construction of the Keystone XL Pipeline should it receive the requisite permits and clearances that would authorize construction. TransCanada would lose the opportunity to construct portions of Keystone XL in the 2019 construction season even if authorized to do so. This one-year delay threatens a substantial number of jobs, impairs TransCanada's ability to retain qualified contractors, and poses a significant financial injury to the company. (TransCanada Mem. In Supp. at 10-11 (Doc. 222).). Such harm is permanent and irreparable because TransCanada cannot rewind the clock if it

receives new permits to obtain the benefit in order to commence construction in 2019.[7]

Northern Plains' contention that TransCanada's harms are self-inflicted is also misplaced. In 2017, TransCanada received a Presidential Permit supported by nearly a decade of environmental review. After receiving the permit, TransCanada did not jump the gun and immediately begin construction, as Northern Plains contends. Instead, the company took measured steps after weighing risks and was transparent with both the Court and parties on the preconstruction activities it would conduct to ensure they would not cause a significant issue. The activities TransCanada chose to conduct and seeks to continue are not those the Court determined needed more analysis – thus, none of the authorities Northern Plains cites is relevant. (Northern Plains Br. at 20-22).

Northern Plains' argument that the public interest favors an injunction cannot be squared with the record before the Court. Though the Court vacated the ROD/NID, it did not find fault with the conclusions that Keystone XL would promote energy security, contribute to national economy, produce tens of thousands of jobs, or promote strong bilateral relations with Canada. Northern Plains sweeps these findings under the rug and argues that enjoining field activities

---

[7] This harm is compounded by the fact that Plaintiffs were not obligated to post a bond, meaning TransCanada has no mechanism to remedy its financial injury if it ultimately prevails on the issues.

pending additional environmental analysis better serves the public. As noted above, however, the limited Paragraph 18 activities will not prejudice the environmental review or impair a decision on whether to reauthorize Keystone XL. On balance, the public interest favors permitting TransCanada to engage in the Paragraph 18 activities and allowing those currently working on the project to continue to perform their jobs.

## II.   Conclusion

The Court should clarify that its injunction does not cover activities identified in paragraphs 16-18 of Ramsay Declaration.

DATED this 6th day of December, 2018,

/s/ Jeffery Oven
Jeffery J. Oven
Mark L. Stermitz
Jeffrey M. Roth
CROWLEY FLECK PLLP
490 North 31st Street, Ste. 500
P.O. Box 2529
Billings, MT  59103-2529
Telephone: 406-252-3441
Email: joven@crowleyfleck.com
          mstermitz@crowleyfleck.com
          jroth@crowleyfleck.com

/s/ Peter Steenland
Peter R. Steenland
Peter C. Whitfield
Lauren C. Freeman
Sidley Austin LLP
1501 K Street, NW
Washington, DC  20005

                Telephone: 202-736-8000
                Email: psteenland@sidley.com
                      pwhitfield@sidley.com
                      lfreeman@sidley.com

*Counsel for TransCanada Keystone Pipeline, LP and TransCanada Corporation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains 3213 words, excluding caption and certificates of service and compliance, printed in at least 14 points and is double spaced, including for footnotes and indented quotations.

DATED this 6th day of December, 2018.

/s/ Jeffery J. Oven

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2018, a copy of the foregoing motion was served on all counsel of record via the Court's CM/ECF system.

*/s/ Jeffery Oven*